

State of Rhode Island and Providence Plantations

**OFFICE OF THE ATTORNEY GENERAL**
150 South Main Street • Providence, RI 02903
(401) 274-4400

*Peter F. Neronha*
*Attorney General*

June 3, 2020

The Honorable John J. McConnell, Jr.
Chief Judge
United States District Court for the
    District of Rhode Island
One Exchange Terrace
Providence, Rhode Island 02903

    Re: *Liberty, et als. v. Rhode Island Department of Corrections, et als.*
        Case 1:19-cv-00573-JJM-PAS

Dear Chief Judge McConnell:

    Defendants Rhode Island Department of Corrections, Patricia Coyne-Fague, in her official capacity as the Director of the Rhode Island Department of Corrections, Matthew Kettle, in his official capacity as Assistant Director of Institutions and Operations, and Barry Weiner, in his official capacity as Assistant Director of Rehabilitation Services (hereinafter "State") respectfully submit this letter in accordance with the Court's May 28, 2020 instructions directing the parties to file, via ECF, a short letter outlining the dispute regarding the protective order.

    The State was agreeable from the outset to negotiate a protective order that would permit the safe and efficient production of documents during discovery in the above-captioned case. The parties exchanged numerous drafts, communicating their edits and the reasons in a telephone conference and, subsequently, through numerous emails. The State engaged in the process in good faith and with the goal of producing discoverable documents and information to Plaintiffs' counsel without adversely impacting its ability to safely and effectively manage the correctional facilities for the State, the DOC employees and all inmates within its facilities.

For the sake of clarity, the State will mirror the categories identified by Plaintiffs' counsel in their June 2, 2020 letter.

Paragraph 1: Identification of Information/Documents Governed by the Protective Order

The draft of this paragraph identified two categories of documents that would fall under the protective order: "protected health information" and "security information." The language proposed by Plaintiffs defined "Security information" as "all documents that would threaten the safety and/or security of a person or institution or the ability to *safely* manage the facility or department if disclosed without protective conditions as outlined in Paragraph 14." (Emphasis added). The State proposed deleting the word "safely" as a qualifier. There are documents important to the integrity of the administration of the Corrections facilities that are not public and should be governed by the protective order in order to prevent unwarranted dissemination and restrict the potential abuse or manipulation of the system. The State provided examples of such responsive documents (Nursing Assessment Policy, Classification policies and individual inmate's Classification Board minutes). As an example of the State's concern, disclosure of Classification Board minutes would reveal the internal deliberations and factors considered in arriving at the classification recommendation; disclosure of the information to the Plaintiff inmate could influence the integrity of future classification recommendations, create discord between the inmate and the counselor and/ security staff who provide information to the Classification Board and potentially breakdown the rehabilitative relationships. Should Plaintiffs' counsel agree that knowledge or disclosure of such information or administrative processes fall within the "safety and/or security of a person or institution" clause, the issue may be resolved.

Paragraph 5(a) – Acknowledgement Form

The State is encouraged by Plaintiffs' representation in its June 2, 2020 letter that the protective order, as an order of the Court, would be binding on Plaintiff inmates. Even if they are bound by the protective order, we recognize that Plaintiffs may not always follow the advice or instructions of legal counsel. By signing an acknowledgment, they are through their own signature attesting that they have read and agree to abide by the protective order. Discovery is not generally publicly available and Plaintiffs should not be able to publicly disclose discovery throughout the prison. The parties apparent agreement that Plaintiffs must abide by the protective order begs the question why the Plaintiffs should not have to sign an acknowledgment that they have read the protective order that binds them.

Paragraph 5(d)(ii)- Confidential Information

Paragraph 5(d)(ii) provides that "Confidential information may be shown to and reviewed by a prisoner" if the "Plaintiff is the originator of the confidential information (i.e., a written statement by that prisoner)." The plain language of this subsection would encompass not only documents that a Named Plaintiff has written, such as a grievance form the inmate completes, but may also be interpreted to permit disclosure to the inmate of any document where a verbal statement is attributed to a Named Plaintiff, as "the originator," and recorded in a document not authored by a Named Plaintiff. The latter interpretation would create a situation where a document that should otherwise not be disclosed to a plaintiff inmate due to security or administrative concerns is authorized to be "shown to and reviewed." The State has no objection to the former interpretation (written statement created by that inmate) the State does object to the latter (statements written by others attributable to the inmate).

Paragraph 6(e) - Depositions

The State proposed a procedure aimed at: (1) minimizing the need to suspend depositions or continuously involve the Court during a deposition to address whether a confidential document could be the subject of questioning during a deposition; and (2) to seek a protective order in advance of a deposition in order to prohibit the disclosure of confidential information during a deposition. The State proposed language that "Plaintiffs' counsel must notify Defendants' counsel in writing seven (7) days prior to the scheduled deposition the confidential security information it intends or may inquire, discuss, question, etc. a witness during a deposition to permit the Defendant's counsel the opportunity to seek a protective order in advance of the deposition." However, in addition to this language, the State was also amenable to a discussion amongst counsel on a case by case to determine whether agreement could be reached in advance of the deposition.

Paragraph 11 – "Own Information and Documents"

The State requested clarification of "own information and documents" and suggested identifying the categories of documents Plaintiffs were referring to, such as "medical records." The State believes that the phrase "own information and documents" is such that the parties may have different understandings or interpretations of the phrase that are best sorted out at the beginning of discovery, especially given that Plaintiff Disability Rights Rhode Island were provided DOC documents in advance of the filing of this lawsuit.

Paragraph 14(c) – Resolving Disputes

The State is encouraged by Plaintiffs' representation in its June 2, 2020 letter that the protective order should expressly acknowledge the requirements of the federal

3

and local rules and notice that the parties are to meet and confer prior to presenting disputes to the Court. The State sought to include similar language in subsection (c). If this sentiment is expressly referenced in subsection (c), as it is not reflected in Plaintiffs' current draft of the protective order, the dispute appears to be resolved.

Paragraph 16 – Non-Retaliation clause

The inclusion of this statement in the protective order gives the misimpression that there is evidence that the State has engaged or will engage in retaliation against the named Plaintiff inmates for the filing of this lawsuit. The State advised the Plaintiffs' counsel that although it could not speak to their experience with other States it is unfair and inaccurate to assume that retaliation will occur here in Rhode Island. Moreover, Plaintiff inmates are not left without a cause of action, independent of the protective order, should they believe such action has occurred.

Paragraph 21

The State sought clarification of "other legal proceedings."

We will await the Court's direction on the procedure which it decides to address the protective order.

Respectfully submitted,

/s/ *Brenda D. Baum*

Brenda D. Baum (5184)
Assistant Attorney General

Cc: Barbara Barletta, Case Manager for Chief Judge John J. McConnell, Jr. (via email)
Anne M. Mulready, Esq. (via email)
Brian Adae, Esq. (via email)
James S. Rollins, Esq. (via email)
Patrick T. Uiterwyk, Esq. (via email)
Lauren Kuhlik, Esq. (via email)
Amy Fettig, Esq. (via email)
Maria Morris, Esq. (via email)

4