# Exhibit A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CHARLENE LIBERTY, JOHN DAPONTE,
JOHN DAVIS, DUANE GOMES, ADAM HANRAHAN,
and CHARLES KENNER,
on behalf of themselves and all others
similarly situated; and
DISABILITY RIGHTS RHODE ISLAND,
on behalf of its constituents,

**Plaintiffs**,

**Plaintiffs' Request for
Production of Documents,
Set 1**

v.

RHODE ISLAND DEPARTMENT OF
CORRECTIONS;
PATRICIA COYNE-FAGUE,
in her official capacity as the Director of the
Rhode Island Department of Corrections;
MATTHEW KETTLE, in his official capacity as
Assistant Director of Institutions and Operations; and
BARRY WEINER, in his official capacity as
Assistant Director of Rehabilitation Services,

**Defendants**.


PROPOUNDING PARTY: PLAINTIFFS

RESPONDING PARTY: DEFENDANTS

Request for Production of Documents, Set One: Nos. 1-87


Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the above-captioned

Plaintiffs, by and through undersigned counsel, hereby request that Defendants respond, within

thirty (30) days and produce the following documents for inspection and copying at Nelson

Mullins Riley & Scarborough LLP, One Post Office Square, 30th Floor, Boston, Massachusetts,

02109.

## DEFINITIONS

1.      "RIDOC" means the Rhode Island Department of Corrections, including all of its subdivisions, agents, employees, contractors, and attorneys.

2.      "ADULT CORRECTIONAL INSTITUTE" or "ACI" means one of the six detention and correctional facilities on the Pastore Government Center Complex operated by RIDOC.

3.      "CHEMICAL AGENTS" means any chemical means employed by an RIDOC staff member intended to bring a prisoner or detainee into compliance, including but not limited to chemical restraints, medication-induced restraints, mace, and pepper spray or balls, whether such use was authorized or not.

4.      "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a handheld personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers (including share point servers), electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, telegrams, telecopies and telexes, teleconference, web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

5.      "COMPLAINTS" means any DOCUMENTS, formal or informal, REGARDING specific or general problems, issues, deficiencies, unanswered questions, challenges, shortcomings, disagreements, or requests brought to the attention of RIDOC or any RIDOC STAFF.

6. "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

7. "CONTRACTOR" means any person or entity engaged by RIDOC or RIDOC staff to perform services related to RIDOC PRISONERS, including but not limited to "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

8. "CORRECTIONAL STAFF" means staff employed or paid by RIDOC to serve in a security or operational capacity.

9. "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, RIDOC or any personnel working in any capacity for RIDOC or the Rhode Island State Government, including any agents of the foregoing.

10. "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

11. "DEFENDANTS" means collectively RIDOC; Patricia Coyne-Fague, in her Official Capacity as Director of the Rhode Island Department of Corrections; Matthew Kettle, in his Official Capacity as Assistant Director of Institutions and Operations of the Rhode Island Department of Corrections; and Barry Weiner, in his Official Capacity as the Assistant Director of Rehabilitation Services of the Rhode Island Department of Corrections.

12. "DESCRIBE" or "DESCRIPTION" means to provide all available INFORMATION.

13. "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

14. "DOCUMENT" and "DOCUMENTS" shall have the same scope as used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall mean and encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and RIDOC, to which they have access, or of

which they have knowledge, including but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, Blu-Ray, optical disk, or other electronic storage device. The terms "DOCUMENT" and "DOCUMENTS" shall include electronically stored information and shall be construed in their broadest sense and in accordance with Fed. R. Civ. P. 26 and 34.

15. "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or poses a substantial and immediate risk to the life or long-term health of a person.

16. "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at any ACI subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS, including but not limited to Provisionally Licensed Mental Health Practitioners, and Provisionally Certified Master Social Workers.

17. "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by RIDOC. It is immaterial to the definition whether the investigation was conducted at the RIDOC's behest or direction.

18. "GRIEVANCE" OR GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to RIDOC, and the exhaustion of claims raised or stated therein.

19. "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at RIDOC facilities, including but not limited to,

M.D., D.O., D.D.S., Licensed Independent Mental Health Practitioners, and Ph.D. credentialed staff.

20.     "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

21.     "HEALTH CARE STAFF" means all staff employed or paid by RIDOC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE and/or MENTAL HEALTH CARE to RIDOC PRISONERS in RESTRICTIVE HOUSING, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTICIONERS, ENTRY-LEVEL PRACTITIONERS, OTHER PRACTITIONERS, PHARMACISTS, and administrative and support staff.

22.     "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE, including MENTAL HEALTH CARE.

23.     "MENTAL HEALTH GRIEVANCES" means requests for MENTAL HEALTH CARE in RESTRICTIVE HOUSING or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of MENTAL HEALTH CARE in RESTRICTIVE HOUSING made by PRISONERS to RIDOC, including but not limited to the submission of request forms and the exhaustion of claims stated therein.

24.     "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an onsite infirmary or hospital, while in the custody of, or from the custody of the RIDOC.

25.     "HOURS OF OPERATION" means the time periods during which a facility, unit, or other RIDOC facility housing PRISONERS in RESTRICTIVE HOUSING is able to provide HEALTH CARE to PRISONERS by onsite HEALTH CARE STAFF.

26.     "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER's full name, RIDOC identification number,

date of birth, current or most recent mental health score, medical score, public risk score, institutional risk score, and current housing location (if still in RIDOC custody) or last known address and telephone number (if no longer in RIDOC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been a RIDOC STAFF member and, if so, to state the staff member's position title, facility location, work schedule, responsibilities, date RIDOC employment began, date RIDOC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by RIDOC, the person's last known address and telephone number; (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (e.g., corporation, partnership, etc.); its address and telephone number; and any persons who are known to have acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of RIDOC.

27.    "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically state as much in YOUR response.  When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

28.    "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit, study, interview notes, videos, or audio recordings, whether formal or informal, conducted by RIDOC.

29.     "JOB PERFORMANCE EVALUATION" means any evaluation, whether formal or informal, of the work of a RIDOC STAFF member or CONTRACTOR performing services for RIDOC.

30.     "LOCUM TENENS CONTRACTOR" means any person or entity contracting with RIDOC to provide HEALTH CARE to RIDOC PRISONERS.

31.     "MASTER FILE" has the same meaning as the file referenced in R.I. Gen. Laws § 42-56-32 and shall include records of all data concerning each PRISONER sentenced to an ACI as well as all equivalents for individuals held pretrial.

32.     "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care or services provided for diagnostic or preventive purposes. "MENTAL HEALTH CASELOAD" means the list of all PRISONERS who have been identified as in need of MENTAL HEALTH CARE, or suffering from mental illness, regardless of whether they are currently receiving MENTAL HEALTH CARE.

33.     "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at RIDOC under supervision by HEALTH CARE CLINICIANS, such as Nurse Practitioners and Physician Assistants.

34.     "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

35.     "ORGANIZATIONAL STRUCTURE" means the structure of who reports to whom within RIDOC up to and including defendant Patricia Coyne-Fague, including specifically all HEALTH CARE STAFF and each individual's job title and DESCRIPTION of duties.

36.     OTHER PRACTITIONERS means licensed professionals who provide HEALTH CARE to PRISONERS at RIDOC such as Psychologists, Advanced Practice Registered Nurses Registered Nurses, Licensed Practical Nurses, Medication Aides, Mental Health Counselors, Clinical Social Workers, and Independent Clinical Social Workers, and Marriage and Family Therapists.

37.     "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

38.     "PHARMACIST" means a professional who practices pharmacy.

39.     "PROGRAMS" OR "PROGRAMMING" means a program available to PRISONERS in the custody of RIDOC, including but not limited to rehabilitative, therapeutic, educational, vocational, substance abuse treatment, recreational, re-entry, and faith-based PROGRAMS; early release PROGRAMS; and prison job assignments whether paid or unpaid.

40.     "POLICIES AND PROCEDURES" means policies, procedures, criteria, standard operating procedures, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, department-wide, as well as facility or institution-specific policies and procedures, and any other DOCUMENTS designed to direct the actions of RIDOC personnel, RIDOC contractors, and/or PRISONERS.

41.     "PRISONER" means a person incarcerated by RIDOC, including individuals who have been sentenced and those detained pretrial or presentencing.

42.     "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

43.     "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE from HEALTH CARE STAFF at RIDOC or non-RIDOC facilities, whether or not such HEALTH CARE was in fact ever provided.

44.     "REFERRED CARE" means HEALTH CARE provided pursuant to a REFERRAL.

45.     "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of RIDOC.

46.     "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns,

constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is any way relevant to the particular subject matter identified.

47.     The "RESIDENTIAL TREATMENT UNIT" or "RTU" shall have the same meaning as in RIDOC POLICY 12.27, "Conditions of Confinement" and means the unit into which prisoners or detainees with SPMI are placed under that policy.

48.     "RESPONSE DATE" means the date upon which YOU respond to these discovery requests or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

49.     "RESTRICTIVE HOUSING" means "Any type of detention that involves removal of an inmate from general population, voluntarily or involuntarily; placement in a locked room or cell, whether alone or with another inmate; and the inability to leave the room or cell for the vast majority of the day, typically 22 hours or more" regardless of whether the individual is confined in a facility dedicated to this purpose, a separate unit within a facility, or a cell within a general population unit.

50.     "RESTRICTIVE HOUSING UNIT" means any unit in which at least one PRISONER is confined in RESTRICTIVE HOUSING, regardless of whether the unit is designated for that purpose.

51.     "SEVERE AND PERSISTENT MENTAL ILLNESS" or "SPMI" has the same definition as that used by RIDOC and includes those conditions affecting individuals eighteen years of age or older who have been diagnosed with a mental illness such as schizoaffective disorder, schizophrenia, other specified schizophrenia spectrum and other psychotic disorders, bipolar disorder(s), delusional disorder, major depressive disorder, panic disorder, agoraphobia, post-traumatic stress disorder, obsessive-compulsive disorder, and borderline personality disorder.

52. "SPECIALTY CONTRACTOR" means any person or entity contracting with RIDOC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

53. "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF or CORRECTIONAL STAFF was scheduled to work, including overtime, on call and call-in coverage.

54. "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

55. "SUICIDE WATCH" means the CONDITIONS OF CONFINEMENT imposed on PRISONERS who, in RIDOC's determination, pose a risk of suicide.

56. "USE OF FORCE" means employment by any RIDOC staff member of any physical or chemical method intended to bring a PRISONER into compliance, including CHEMICAL AGENTS, handcuffs, shackles, other restraints, pressure technique holds, placement in stress positions, tasers, or use of an object to strike a PRISONER, whether such actions are authorized or not.

57. "YOU," "YOUR," and "YOURSELF" means the DEFENDANTS.

## INSTRUCTIONS

1. YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of YOUR (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates. Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the DEFENDANTS, including but not limited to email accounts, FTP servers, portable storage

media such as USB drives, cloud storage services such as Dropbox or SharePoint, and online workspaces such as WebEx.

2.      All non-identical copies of every DOCUMENT for which production is sought shall be separately produced.

3.      Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation. DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-It note. The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the DOCUMENTS.

4.      DEFENDANTS shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations. The author(s) of all hand-written notes should be identified.

5.      YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

6.      Responsive DOCUMENTS that exist only in paper form shall be organized as they have been kept in the ordinary course of business and shall be produced according to the following protocol:

a. Paper DOCUMENTS shall be scanned and produced in TIFF image form at a resolution sufficient to enable the generation of searchable text using Optical Character Recognition ("OCR").

7. Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

a. Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT-level load files wherein the full text was extracted directly from the native file where possible.

b. For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT. The production number shall contain at least six digits. There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction. In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner of the DOCUMENT.

c.      Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif". File names should not be more than 20 characters long or contain spaces.

d.      For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file. If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.      TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j & k) of these Instructions, below.  The load file shall be produced in one of the following industry-standard formats: (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv").  TIFF images shall also be accompanied by an Opticon delimited cross-reference file (".opt") showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.      In addition to TIFF images, each production of unredacted electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT.  The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text").   Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding DOCUMENT followed by the extension ".txt".  YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files.  Searchable text files shall be generated from Extracted Text where available,

except where the DOCUMENT contains redactions. Redacted documents shall have text files based on OCR.

g. To the extent they are determined to be responsive, spreadsheet DOCUMENTS, including but not limited to Microsoft Excel or .csv file extensions, must be produced in native format ("Native Format Documents"). Similarly, files that are not amenable to conversion to TIFF format will be produced in their native form and shall be considered Native Format Documents for purposes of production under this paragraph. All Native Format Documents that are data complications in spreadsheets, Microsoft Excel, or in delimited text formats, must contain all underlying data un-redacted with all underlying formulas and algorithms intact unless they are redacted.

h. DOCUMENTS shall be produced through a secured FTP site, on optical media (CD or DVD), external hard drives, or similar, readily accessible electronic media (the "Production Media"). Information that shall be identified in conjunction with the Production Media shall include a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RIDOC 001"), as well as the volume of the material in that production (e.g., "- 001", "-002"). For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RIDOC 001-001", "RIDOC 001-002", and "RIDOC 001-003." The face of each piece of Production Media shall also IDENTIFY: (1) the production date; and (2) the production number range of the materials contained on the Production Media. For all DOCUMENTS the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
|---|---|
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| All Custodians | The name of all individuals or sources from which the DOCUMENT was obtained |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Confidentiality | A tag to indicate whether the producing party is invoking the confidentiality provisions of the protective order. |

        i.       The following metadata fields shall be included in the load file (if they exist):

| Metadata Fields | Description |
|---|---|
| Author | The person or source that originated the DOCUMENT |
| FileName | Original file name |
| FilePath | Original file path |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| DateCreated | Date file was created |

| Metadata Fields | Description |
|---|---|
| To: | Email field |
| From: | Email field |
| CC: | Email field |
| BCC: | Email field |
| DateSent | Email field |
| DateReceived | Email field |
| Subject | Email field |

8.      If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.      The following rules of construction shall be applied herein:

a.      the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope;

b.      the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural;

c.      the words "ANY," "ALL," "EACH" and "EVERY" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and

d.     the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request.

11.     If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.     the subject matter of the DOCUMENT;

b.     the title, heading or caption of the DOCUMENT, if any;

c.     the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.     the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.     the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f.     the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.     the identity of each person who has custody of a copy of each such DOCUMENT.

12. If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected. When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.

13. All redactions shall also be included on the privilege log.

14. If YOU object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

15. If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever INFORMATION or knowledge YOU have REGARDING the portion to which YOU have not responded.

16. If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in YOUR possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

17. These requests are sequentially numbered and each numbered paragraph constitutes a single request. Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

18. Except where expressly stated, these requests are not limited in any way by geography.

19. These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Supplemental responses are required if additional

responsive information is acquired or discovered between the time of responding to this request and the time of trial.

20.     Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2015, up to and including the RESPONSE DATE.

## DOCUMENTS REQUESTED

### I. PLAINTIFF FILES

**REQUEST FOR PRODUCTION NO. 1**

All DOCUMENTS contained in RIDOC's custodial records, otherwise known as the "master file," for each plaintiff named in this litigation.

**REQUEST FOR PRODUCTION NO. 2**

All DOCUMENTS contained in RIDOC's health care records, including DOCUMENTS pertaining to MENTAL HEALTH, for each plaintiff named in this litigation.

### II. MENTAL HEALTH CARE

**REQUEST FOR PRODUCTION NO. 3**

All POLICIES AND PROCEDURES REGARDING MENTAL HEALTH CARE for RIDOC PRISONERS in RESTRICTIVE HOUSING in effect from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 4**

All POLICIES AND PROCEDURES REGARDING MENTAL HEALTH CARE for RIDOC PRISONERS in RESTRICTIVE HOUSING in draft form or that have not been approved or implemented created from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 5**

All POLICIES AND PROCEDURES REGARDING the provision of medications to RIDOC PRISONERS in RESTRICTIVE HOUSING, including both formulary and non-formulary medications.

**REQUEST FOR PRODUCTION NO. 6**

All POLICIES AND PROCEDURES REGARDING management of RIDOC

PRISONERS in RESTRICTIVE HOUSING who are prescribed psychotropic medications,

including but not limited to the required frequency of contact with HEALTH CARE STAFF,

monitoring of the therapeutic effects and adverse side effects of medication, and protection of the

PRISONERS from heat injury.

**REQUEST FOR PRODUCTION NO. 7**

All POLICIES AND PROCEDURES REGARDING QUALITY ASSURANCE of MENTAL

HEALTH CARE for RIDOC PRISONERS in RESTRICTIVE HOUSING, including but not

limited to required reports, meetings, in-service trainings, audits, evaluations, and/or peer review

systems.

**REQUEST FOR PRODUCTION NO. 8**

All POLICIES AND PROCEDURES REGARDING the manner in which CORRECTIONAL

STAFF and/or HEALTH CARE STAFF respond to a non-responsive RIDOC PRISONER in

RESTRICTIVE HOUSING in their cell for whom HEALTH CARE assistance has been

requested or appears necessary.

**REQUEST FOR PRODUCTION NO. 9**

All DOCUMENTS REGARDING RIDOC PRISONER requests for MENTAL HEALTH CARE

in RESTRICTIVE HOUSING, other than DOCUMENTS containing personal health information

of specific PRISONERS, including but not limited to DOCUMENTS REGARDING actual

timeframes for processing requests and the necessary qualifications of personnel, including

HEALTH CARE STAFF, responsible for processing requests for MENTAL HEALTH CARE

made by PRISONERS.

**REQUEST FOR PRODUCTION NO. 10**

All POLICIES AND PROCEDURES REGARDING CORRECTIONAL STAFF assisting RIDOC PRISONERS in RESTRICTIVE HOUSING with completing requests for MENTAL HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 11**

All POLICIES AND PROCEDURES applicable to RESTRICTIVE HOUSING REGARDING RIDOC PRISONERS' requests for second opinions regarding an individual's MENTAL HEALTH CARE, whether the first opinion was given by HEALTH CARE STAFF or any external provider.

**REQUEST FOR PRODUCTION NO. 12**

All MINUTES from meetings attended by HEALTH CARE STAFF, and any other meetings at which the MENTAL HEALTH CARE of RIDOC PRISONERS in RESTRICTIVE HOUSING, MENTAL HEALTH CARE POLICIES AND PROCEDURES in RESTRICTIVE HOUSING, HEALTH CARE STAFFING in RESTRICTIVE HOUSING, or any issue related to MENTAL HEALTH CARE in RESTRICTIVE HOUSING was discussed.

**REQUEST FOR PRODUCTION NO. 13**

All DOCUMENTS REGARDING any statistical analysis of MENTAL HEALTH CARE in RIDOC RESTRICTIVE HOUSING, including but not limited to DOCUMENTS ranking psychiatric condition prevalence, outcomes, delays in service, care provided, suicide attempts, suicide risk assessments, self-harm incidents and/or costs.

**REQUEST FOR PRODUCTION NO. 14**

All DOCUMENTS REGARDING MENTAL HEALTH CARE COST CONTAINMENT in RESTRICTIVE HOUSING for RIDOC, including but not limited to any changes in POLICIES AND PROCEDURES relating to COST CONTAINMENT.

**REQUEST FOR PRODUCTION NO. 15**

All DOCUMENTS REGARDING HEALTH CARE STAFF and CORRECTIONAL STAFF who have filed COMPLAINTS REGARDING the provision of MENTAL HEALTH CARE in RIDOC RESTRICTIVE HOUSING from January 1, 2015 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 16**

All POLICIES AND PROCEDURES REGARDING classifying or identifying PRISONERS as "seriously and persistently mentally ill," "seriously mentally ill," "severely mentally ill," having "major mental illness," or any other mental health classification employed by RIDOC.

**REQUEST FOR PRODUCTION NO. 17**

All POLICIES AND PROCEDURES REGARDING transitioning PRISONERS between different levels of MENTAL HEALTH CARE, whether provided by the RIDOC or by some other entity.

**REQUEST FOR PRODUCTION NO. 18**

All POLICIES AND PROCEDURES REGARDING assessing PRISONERS for suicide risk.

**REQUEST FOR PRODUCTION NO. 19**

All DOCUMENTS REGARDING HEALTH CARE STAFFING at each RIDOC RESTRICTIVE HOUSING UNIT for each fiscal year from January 1, 2015, through the RESPONSE DATE, including but not limited to DOCUMENTS sufficient to show the total number of HEALTH CARE STAFF, the existing positions for HEALTH CARE STAFF, whether staff members are permanent RIDOC employees or CONTRACTORS, the total number of full-time employees for each position, the number of vacancies and the duration of vacancies, the organizational structure, and the total hours worked by HEALTH CARE STAFF and CONTRACTORS who provided MENTAL HEALTH CARE to PRISONERS.

**REQUEST FOR PRODUCTION NO. 20**

DOCUMENTS SUFFICIENT TO SHOW RIDOC's HEALTH CARE STAFFING plan for each RESTRICTIVE HOUSING UNIT, including but not limited to DOCUMENTS REGARDING (a) the minimum qualifications (e.g., M.D., R.N., L.P.N., etc.) for each position, whether (i) HEALTH CARE STAFF, (ii) non-patient care-giving staff (such as medical file clerks), or (iii) CORRECTIONAL STAFF, required in the infirmary within a facility; (b) a general DESCRIPTION of the function of each position listed; (c) the training required of each position (e.g., pre-service or in-service trainings); (d) the number of hours required per week for each position; (e) any difference in coverage on holidays or weekends for any staff position; (f) whether each position is filled or vacant as of the RESPONSE DATE; and (g) the identity of the staff members currently filling each position, with provider number (if applicable), shift, duties and degrees for each staff member identified.

**REQUEST FOR PRODUCTION NO. 21**

All JOB PERFORMANCE EVALUATIONS of HEALTH CARE STAFF or CONTRACTORS working in any RIDOC RESTRICTIVE HOUSING UNIT REGARDING whether the staff member or contractor provided insufficient, inappropriate, or suboptimal MENTAL HEALTH CARE services and/or resulting in DISCIPLINE being taken against the staff member or contractor.

**REQUEST FOR PRODUCTION NO. 22**

All JOB PERFORMANCE EVALUATIONS of CORRECTIONAL STAFF finding that the staff member or CONTRACTOR provided insufficient, inappropriate, or suboptimal EMERGENCY HEALTH CARE SERVICES in any RIDOC RESTRICTIVE HOUSING UNIT and/or resulting in DISCIPLINE being taken against the staff member or CONTRACTOR due to the EMERGENCY HEALTH CARE SERVICES provided in any RIDOC RESTRICTIVE HOUSING UNIT.

**REQUEST FOR PRODUCTION NO. 23**

All DOCUMENTS REGARDING COMPLAINTS, from January 1, 2015 through the RESPONSE DATE REGARDING HEALTH CARE STAFFING or the STAFFING SCHEDULE at each RIDOC RESTRICTIVE HOUSING UNIT, including but not limited to COMMUNICATIONS from RIDOC personnel that refer to or comment on any aspect of the adequacy of RESTRICTIVE HOUSING HEALTH CARE STAFFING.

**REQUEST FOR PRODUCTION NO. 24**

DOCUMENTS SUFFICIENT TO SHOW the names and contact INFORMATION for each agency or entity providing RIDOC with temporary or long-term HEALTH CARE CONTRACTORS in its RESTRICTIVE HOUSING UNITS.

**REQUEST FOR PRODUCTION NO. 25**

DOCUMENTS SUFFICIENT TO SHOW each contract or agreement that has been fully executed REGARDING each agency, entity or contracting individual providing RIDOC with temporary or long-term HEALTH CARE CONTRACTORS.

**REQUEST FOR PRODUCTION NO. 26**

DOCUMENTS SUFFICIENT TO SHOW the amounts paid to each agency, entity, or contracting individual providing RIDOC with temporary or long-term HEALTH CARE CONTRACTORS in its RESTRICTIVE HOUSING UNITS, with sufficient detail to ascertain the number, type, and credentials of each temporary or long-term CONTRACTOR provided to the RIDOC, and the duration of each CONTRACTOR's work for RIDOC.

### III. TRAINING

**REQUEST FOR PRODUCTION NO. 27**

All DOCUMENTS REGARDING formal and informal MENTAL HEALTH CARE training provided to HEALTH CARE STAFF and CORRECTIONAL STAFF working in RESTRICTIVE HOUSING UNITS, REGARDING (a) the provision of MENTAL HEALTH CARE; (b) administrative responsibilities REGARDING the provision of MENTAL HEALTH CARE; (c) the processing of request forms and/or PRISONER COMPLAINTS or

GRIEVANCES; and (d) the procedures to ensure that PRISONERS have access to MENTAL HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 28**

All DOCUMENTS REGARDING training provided to RIDOC staff that relates to assessment prior to placement in RESTRICTIVE HOUSING.

**REQUEST FOR PRODUCTION NO. 29**

All DOCUMENTS REGARDING training materials provided to RIDOC HEALTH CARE and CORRECTIONAL STAFF who work in RESTRICTIVE HOUSING and have contact with PRISONERS designated as SPMI.

**REQUEST FOR PRODUCTION NO. 30**

All DOCUMENTS REGARDING formal and informal training provided to HEALTH CARE STAFF, CORRECTIONAL STAFF, and any other RIDOC personnel on any and all POLICIES AND PROCEDURES REGARDING PRISONERS with SPMI.

**REQUEST FOR PRODUCTION NO. 31**

All DOCUMENTS REGARDING formal and informal training provided to HEALTH STAFF, CORRECTIONAL STAFF, and any other RIDOC personnel who work in the RESIDENTIAL TREATMENT UNIT or with PRISONERS housed in the RESIDENTIAL TREATMENT UNIT.

IV. **RESIDENTIAL TREATMENT UNIT**

**REQUEST FOR PRODUCTION NO. 32**

All POLICIES AND PROCEDURES REGARDING transfer of PRISONERS to the RESIDENTIAL TREATMENT UNIT or any other residential mental health facility, whether operated by RIDOC or by some other entity.

**REQUEST FOR PRODUCTION NO. 33**

All POLICIES AND PROCEDURES REGARDING the RESIDENTIAL TREATMENT UNIT.

**REQUEST FOR PRODUCTION NO. 34**

DOCUMENTS SUFFICIENT TO SHOW the location, capacity, and average number of

PRISONERS housed per month in the RESIDENTIAL TREATMENT UNIT.

**REQUEST FOR PRODUCTION NO. 35**

A list of all PRISONERS who have been admitted to, removed from, or otherwise failed to

complete the RESIDENTIAL TREATMENT UNIT.

**REQUEST FOR PRODUCTION NO. 36**

All DOCUMENTS REGARDING any criteria for admission to or removal from the

RESIDENTIAL TREATMENT UNIT, including any list of behavior or infraction that will

exclude a PRISONER from admission to the RESIDENTIAL TREATMENT UNIT or cause

such PRISONER to be removed from the RESIDENTIAL TREATMENT UNIT.

## V.  GRIEVANCES

**REQUEST FOR PRODUCTION NO. 37**

All GRIEVANCES and/or COMPLAINTS relating to MENTAL HEALTH CARE for RIDOC

PRISONERS in RESTRICTIVE HOUSING dated January 1, 2015, through the RESPONSE

DATE.

**REQUEST FOR PRODUCTION NO. 38**

ALL POLICIES AND PROCEDURES RELATING TO any and all GRIEVANCE procedures or

any other administrative remedies available to PRISONERS in RIDOC RESTRICTIVE

HOUSING, including those that were in effect during the period from January 1, 2015, to the

RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 39**

ALL DOCUMENTS and COMMUNICATIONS RELATING TO PRISONER complaints of

retaliation by RIDOC STAFF for using the GRIEVANCE process in RESTRICTIVE

HOUSING.

**REQUEST FOR PRODUCTION NO. 40**

DOCUMENTS SUFFICIENT TO SHOW the average duration between the time a PRISONER in RESTRICTIVE HOUSING submits a GRIEVANCE and the time RIDOC responds to that GRIEVANCE at each level of the GRIEVANCE process.

**REQUEST FOR PRODUCTION NO. 41**

The GRIEVANCE LOG for each RIDOC RESTRICTIVE HOUSING UNIT, in a machine-readable form such as Excel or CSV for the period from January 1, 2015, through RESPONSE DATE.

**VI. RESTRICTIVE HOUSING**

**REQUEST FOR PRODUCTION NO. 42**

All DOCUMENTS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS on SUICIDE WATCH.

**REQUEST FOR PRODUCTION NO. 43**

All POLICIES AND PROCEDURES REGARDING the management and treatment of PRISONERS on SUICIDE WATCH, including but not limited to required frequency of contact with psychiatrists and other HEALTH CARE STAFF and CORRECTIONAL STAFF.

**REQUEST FOR PRODUCTION NO. 44**

DOCUMENTS SUFFICIENT TO SHOW the number of PRISONERS who have died by suicide while in RIDOC custody in RESTRICTIVE HOUSING from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 45**

DOCUMENTS SUFFICIENT TO SHOW the number of PRISONERS who have required transport to a hospital following self-harm or a suicide attempt while in RIDOC custody in RESTRICTIVE HOUSING from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 46**

All DOCUMENTS regarding the suicide or suicide attempt of a PRISONER in RIDOC custody housed in RESTRICTIVE HOUSING since January 1, 2015, including INTERNAL and EXTERNAL INVESTIGATIONS.

**REQUEST FOR PRODUCTION NO. 47**

All DOCUMENTS reflecting any review or evaluation of the HEALTH CARE received by a PRISONER who died in RIDOC custody and spent any time within the preceding six months in a RIDOC Restrictive Housing room or cell (whether the death occurred at RIDOC facility or at an offsite or non-RIDOC HEALTH CARE facility), including but not limited to mortality reviews, psychological autopsies, and death investigations, from January 1, 2015 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 48**

DOCUMENTS SUFFICIENT TO SHOW, for each RIDOC RESTRICTIVE HOUSING UNIT, the HOURS OF OPERATION, STAFFING SCHEDULES, staffing vacancies, and HEALTH CARE STAFFING from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 49**

A list of all PRISONERS designated SPMI who have spent any time in any RESTRICTIVE HOUSING UNIT or cell or in the RESIDENTIAL TREATMENT UNIT since January 1, 2017, the date of their admission, the date of their release from RESTRICTIVE HOUSING or the RESIDENTIAL TREATMENT UNIT, and their current classification status.

**REQUEST FOR PRODUCTION NO. 50**

ALL POLICIES AND PROCEDURES related to CONDITIONS OF CONFINEMENT for PRISONERS in RESTRICTIVE HOUSING, including but not limited to supervision in such units, visitation, telephone use, recreation, OUTDOOR EXERCISE, out-of-cell time, health and welfare checks by HEALTH CARE STAFF and cell inspections by CORRECTIONAL STAFF,

and the escorting and restraint of PRISONERS in RESTRICTIVE HOUSING.

**REQUEST FOR PRODUCTION NO. 51**

All COMPLAINTS REGARDING CONDITIONS OF CONFINEMENT or HEALTH CARE

for PLAINTIFFS or PRISONERS in RESTRICTIVE HOUSING, made by current or former

RIDOC personnel; contractors, consultants, or outside entities.

**REQUEST FOR PRODUCTION NO. 52**

All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS or EXTERNAL

INVESTIGATIONS REGARDING CONDITIONS OF CONFINEMENT and/or the delivery of

HEALTH CARE to for PLAINTIFFS or PRISONERS in RESTRICTIVE HOUSING from

January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 53**

All DOCUMENTS REGARDING reports; evaluations; data analysis; criticisms; critiques; or

identification of possible, perceived, or actual deficiencies in CONDITIONS OF

CONFINEMENT or HEALTH CARE in RIDOC RETRICTIVE HOUSING from January 1,

2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 54**

All POLICIES AND PROCEDURES REGARDING the confinement of PRISONERS in

RESTRICTIVE HOUSING, including, but not limited to, descriptions of classifications and

categories of confinement, as well as placement in, retention in, or removal from RESTRICTIVE

HOUSING in effect from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 55**

DOCUMENTS SUFFICIENT TO SHOW the housing schema for each RIDOC RESTRICTIVE

HOUSING UNIT, including (1) the location and designation of RESTRICTIVE HOUSING cells

or rooms; (2) the custody level and/or other classification-specific designation for each such

housing unit, (3) the number of fixed beds in each unit, and (4) the type of housing (e.g., single cells, two-person cells, open dormitory).

**REQUEST FOR PRODUCTION NO. 56**

All DOCUMENTS describing or depicting the layout, common areas, cell size, plan, furniture, fixtures, doors, and windows in the units and areas of the RIDOC facilities where PRISONERS are held in RESTRICTIVE HOUSING.

**REQUEST FOR PRODUCTION NO. 57**

DOCUMENTS SUFFICIENT TO SHOW the number of all RIDOC PRISONERS confined in RESTRICTIVE HOUSING units each month from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 58**

All DOCUMENTS, including but not limited to, pictures, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, or any form of digitized footage describing or depicting the USE OF FORCE, including but not limited to CHEMICAL AGENTS and restraints on PLAINTIFFS Charlene Liberty, John DaPonte, John Davis, Duane Gomes, Adam Hanrahan, and Charles Kenner from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 59**

All DOCUMENTS, including but not limited to, pictures, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, or any form of digitized footage describing or depicting the USE OF FORCE, including but not limited to CHEMICAL AGENTS and restraints, in any RESTRICTIVE HOUSING UNIT or the RESIDENTIAL TREATMENT UNIT from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 60**

All POLICIES AND PROCEDURES REGARDING the use of force or restraint by RIDOC STAFF on PRISONERS in effect from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 61**

All MINUTES from RIDOC meetings during which PLAINTIFFS or PRISONERS with SPMI

in RESTRICTIVE HOUSING were discussed from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 62**

All RIDOC Post Orders, including both general Post Orders that apply across RIDOC and

facility-specific Post Orders, REGARDING the CONDITIONS OF CONFINEMENT and

operation of RESTRICTIVE HOUSING in effect from January 1, 2015, to the RESPONSE

DATE.

**REQUEST FOR PRODUCTION NO. 63**

All DOCUMENTS REGARDING the provision of OUTDOOR EXERCISE to PRISONERS in

RESTRICTIVE HOUSING, including but not limited to POLICIES AND PROCEDURES;

schedules for the provision of OUTDOOR EXERCISE; DOCUMENTS SUFFICIENT TO

SHOW when and for how long PRISONERS actually receive OUTDOOR EXERCISE,

including any DOCUMENTS REGARDING cancellation or truncation of scheduled

OUTDOOR EXERCISE; plans of the areas in which OUTDOOR EXERCISE is provided; and

exercise equipment in the OUTDOOR EXERCISE areas.

**REQUEST FOR PRODUCTION NO. 64**

All POLICIES AND PROCEDURES REGARDING the provision of HEALTH CARE and/or

MENTAL HEALTH CARE to PRISONERS classified as SPMI employed by RIDOC while

housed in RESTRICTIVE HOUSING, including but not limited to required frequency of contact

with psychiatrists or other HEALTH CARE STAFF; monitoring of PRISONERS for adverse

mental health or other health effects of RESTRICTIVE HOUSING; and the removal of

PRISONERS suffering adverse mental health or other health effects of RESTRICTIVE

HOUSING.

**REQUEST FOR PRODUCTION NO. 65**

All DOCUMENTS provided to PLAINTIFFS REGARDING POLICIES AND PROCEDURES, including all versions of the prisoner handbook(s) from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 66**

All DOCUMENTS authored, reviewed by, or sent by DEFENDANTS Coyne-Fague, Kettle, or Weiner REGARDING PLAINTIFFS or RIDOC PRISONERS with SPMI in RESTRICTIVE HOUSING.

**REQUEST FOR PRODUCTION NO. 67**

DOCUMENTS SUFFICIENT TO SHOW the out-of-cell group PROGRAMS including Mental Health Care Groups available to RIDOC PRISONERS in RESTRICTIVE HOUSING including the number of RIDOC PRISONERS who participated in such out-of-cell group PROGRAMS on a weekly basis from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 68**

DOCUMENTS SUFFICIENT TO SHOW the monthly and/or weekly schedules for PRISONERS in each of the RESTRICTIVE HOUSING units in RIDOC facilities for the period January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 69**

A copy of the unit log book for each of the RESTRICTIVE HOUSING units in RIDOC facilities for the period January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 70**

DOCUMENTS SUFFICIENT TO SHOW the duration of confinement in RESTRICTIVE HOUSING, including but not limited to the mean, median, and maximum length of confinement in RESTRICTIVE HOUSING for RIDOC PRISONERS with SPMI.

**REQUEST FOR PRODUCTION NO. 71**

All DOCUMENTS, POLICIES AND PROCEDURES REGARDING the number and duration of non-legal visits allowed for PRISONERS in RESTRICTIVE HOUSING; the conditions of those non-legal visits, whether contact or non-contact with visitors; and the conditions under which the visits take place, e.g., by telephone; video; through glass; through wire mesh; etc.

## VII.   AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT

**REQUEST FOR PRODUCTION NO. 72**

All POLICIES AND PROCEDURES REGARDING identifying and tracking PRISONERS with SPMI and any reasonable modifications and/or their disability accommodations they need as a result of their disabilities in order to access RIDOC PROGRAMS or services (including but not limited to housing and health care accommodations) and regarding serving PRISONERS with SPMI in the most integrated setting in effect from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 73**

All POLICIES AND PROCEDURES REGARDING identifying and tracking PRISONERS with SPMI and any reasonable modifications and/or accommodations they need as a result of their disabilities in order to access RIDOC PROGRAMS or services (including but not limited to housing and health care) and regarding serving PRISONERS with SPMI in the most integrated setting in draft form or that have not been approved or implemented from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 74**

DOCUMENTS SUFFICIENT TO SHOW the number of PRISONERS with SPMI housed in RESTRICTIVE HOUSING for each month from January 1, 2017, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 75**

All LOGS or other DOCUMENTS of any kind used by YOU to track which PRISONERS have

SPMI and the disability accommodations that these PRISONERS require, from January 1, 2015,

through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 76**

All DOCUMENTS and COMMUNICATIONS REGARDING YOUR compliance with federal

disability law, including the Americans with Disabilities Act and Section 504 of the

Rehabilitation Act, from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 77**

All POLICIES AND PROCEDURES REGARDING the housing assignments and/or placements

for PRISONERS with SPMI, in effect from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 78**

All POLICIES AND PROCEDURES REGARDING the housing assignments and/or placements

for PRISONERS with SPMI in draft form or that have not been approved or implemented from

January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 79**

All POLICIES AND PROCEDURES REGARDING the DISCIPLINE and/or use of force or

restraint against PRISONERS with SPMI by CORRECTIONAL STAFF and/or HEALTH

CARE STAFF in effect from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 80**

All POLICIES AND PROCEDURES REGARDING the DISCIPLINE and/or use of force or

restraint against PRISONERS with SPMI by CORRECTIONAL STAFF and/or HEALTH

CARE STAFF in draft form or that have not been approved or implemented from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 81**

All DOCUMENTS and COMMUNICATIONS REGARDING the DISCIPLINE and/or use of force or restraint against PRISONERS with SPMI by CORRECTIONAL STAFF and/or HEALTH CARE STAFF from January 1, 2015, through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 82**

All POLICIES AND PROCEDURES used in determining classification status or placement in any type of RESTRICTIVE HOUSING, including all POLICIES AND PROCEDURES indicating what role SPMI status or behavior related to mental health plays in assessment of risk.

**REQUEST FOR PRODUCTION NO. 83**

All POLICIES AND PROCEDURES REGARDING restrictions or limitations on housing of PRISONERS classified as having "severe and persistent mental illness," being "seriously mentally ill," or "severely mentally ill," having "major mental illness," or any other mental health classification employed by RIDOC.

**REQUEST FOR PRODUCTION NO. 84**

All POLICIES AND PROCEDURES REGARDING the consideration of mental illness in the disciplinary hearing process.

**REQUEST FOR PRODUCTION NO. 85**

All POLICIES AND PROCEDURES REGARDING disciplinary infractions and/or the disciplinary hearing process.

**REQUEST FOR PRODUCTION NO. 86**

All DOCUMENTS including but not limited to reports REGARDING the consideration of

mental illness in the disciplinary hearing process.

**REQUEST FOR PRODUCTION NO. 87**

For each custodian for whom you produce DOCUMENTS, produce an image of the folder structure, including all sub-folders, of any email accounts for that custodian.

Dated:        February 21, 2020

s/ Lauren Kuhlik
Lauren Kuhlik (D.C. Bar No. 888324779)
    *Admitted Pro Hac Vice*
Amy Fettig (D.C. Bar No. 484883)
    *Admitted Pro Hac Vice*
ACLU NATIONAL PRISON PROJECT
915 15th Street, N.W., 7th Floor
Washington, D.C. 20005-2302
Telephone: (202) 548-6618
Facsimile: (202) 393-4931
Email: lkuhlik@aclu.org
        afettig@aclu.org


s/Anne M. Mulready
Anne M. Mulready (RI Bar No. 4738)
Brian Adae (RI Bar No. 2536)
DISABILITY RIGHTS RHODE ISLAND
33 Broad St., Suite 601
Providence, RI 02903
Telephone: (401) 831-3150
Facsimile: (401) 274-5568
Email:  amulready@drri.org
        badae@drri.org

s/Patrick T. Uiterwyk
Patrick T. Uiterwyk (RI Bar No. 7461)
James S. Rollins (MA Bar No. 569422)
    *Admitted Pro Hac Vice*
NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
One Post Office Square
Boston, MA 02109
Telephone: (617) 417-4700
Facsimile:  (617) 217-4751
Email:  Patrick.uiterwyk@nelsonmullins.com
        James.rollins@nelsonmullins.com
*Cooperating Attorneys, ACLU Foundation of
Rhode Island*

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, the foregoing Plaintiffs' First Set of Requests for Production of Documents was sent electronically to Defendants' attorneys of record at the following address:

Brenda Baum
Assistant Attorney General
Rhode Island Department of Attorney General
Email: bbaum@riag.ri.gov

Michael Field
Assistant Attorney General
Rhode Island Department of Attorney General
Email: mfield@riag.ri.gov


By: *s/ Lauren Kuhlik*