# Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CHARLENE LIBERTY, JOHN DAPONTE,
JOHN DAVIS, DUANE GOMES, ADAM HANRAHAN,
and CHARLES KENNER,
on behalf of themselves and all others
similarly situated; and
DISABILITY RIGHTS RHODE ISLAND,
on behalf of its constituents,

**Plaintiffs**,

**Plaintiffs' Request for Production of Documents, Set 2**

v.

RHODE ISLAND DEPARTMENT OF
CORRECTIONS;
PATRICIA COYNE-FAGUE,
in her official capacity as the Director of the
Rhode Island Department of Corrections;
MATTHEW KETTLE, in his official capacity as
Assistant Director of Institutions and Operations; and
BARRY WEINER, in his official capacity as
Assistant Director of Rehabilitation Services,

**Defendants**.

PROPOUNDING PARTY: PLAINTIFFS

RESPONDING PARTY: DEFENDANTS

Request for Production of Documents, Set Two: Nos. 88-127

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the above-captioned

Plaintiffs, by and through undersigned counsel, hereby request that Defendants respond, within

thirty (30) days and produce the following documents for inspection and copying at Nelson

Mullins Riley & Scarborough LLP, One Post Office Square, 30th Floor, Boston, Massachusetts,

02109.

## DEFINITIONS

1.      "RIDOC" means the Rhode Island Department of Corrections, including all of its subdivisions, agents, employees, contractors, and attorneys.

2.      "ADULT CORRECTIONAL INSTITUTE" or "ACI" means one of the six detention and correctional facilities on the Pastore Government Center Complex operated by RIDOC.

3.      "CHEMICAL AGENTS" means any chemical means employed by an RIDOC staff member intended to bring a prisoner or detainee into compliance, including but not limited to chemical restraints, medication-induced restraints, mace, and pepper spray or balls, whether such use was authorized or not.

4.      "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

5.      "CONTRACTOR" means any person or entity engaged by RIDOC or RIDOC staff to perform services related to RIDOC PRISONERS, including but not limited to "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

6.      "CORRECTIONAL STAFF" means staff employed or paid by RIDOC to serve in a security or operational capacity.

7.      "DEFENDANTS" means collectively RIDOC; Patricia Coyne-Fague, in her Official Capacity as Director of the Rhode Island Department of Corrections; Matthew Kettle, in his Official Capacity as Assistant Director of Institutions and Operations of the Rhode Island Department of Corrections; and Barry Weiner, in his Official Capacity as the Assistant Director of Rehabilitation Services of the Rhode Island Department of Corrections.

8.      "DESCRIBE" or "DESCRIPTION" means to provide all available INFORMATION.

9.      "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

10. "DOCUMENT" and "DOCUMENTS" shall have the same scope as used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall mean and encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and RIDOC, to which they have access, or of which they have knowledge, including but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, Blu-Ray, optical disk, or other electronic storage device. The terms "DOCUMENT" and "DOCUMENTS" shall include electronically stored information and shall be construed in their broadest sense and in accordance with Fed. R. Civ. P. 26 and 34.

11. "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at any ACI subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS, including but not limited to Provisionally Licensed Mental Health Practitioners, and Provisionally Certified Master Social Workers.

12. "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by RIDOC. It is immaterial to the definition whether the investigation was conducted at the RIDOC's behest or direction.

13. "GRIEVANCE" OR GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to RIDOC, and the exhaustion of claims raised or stated therein.

14. "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at RIDOC facilities, including but not limited to,

M.D., D.O., D.D.S., Licensed Independent Mental Health Practitioners, and Ph.D. credentialed staff.

15. "HEALTH CARE STAFF" means all staff employed or paid by RIDOC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE and/or MENTAL HEALTH CARE to RIDOC PRISONERS in RESTRICTIVE HOUSING, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTICIONERS, ENTRY-LEVEL PRACTITIONERS, OTHER PRACTITIONERS, PHARMACISTS, and administrative and support staff.

16. "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER's full name, RIDOC identification number, date of birth, current or most recent mental health score, medical score, public risk score, institutional risk score, and current housing location (if still in RIDOC custody) or last known address and telephone number (if no longer in RIDOC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been a RIDOC STAFF member and, if so, to state the staff member's position title, facility location, work schedule, responsibilities, date RIDOC employment began, date RIDOC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by RIDOC, the person's last known address and telephone number; (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (e.g., corporation, partnership, etc.); its address and telephone number; and any persons who are known to have acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of RIDOC.

17. "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware,

all regardless of the source. When INFORMATION YOU provide is based solely on inference or speculation, specifically state as much in YOUR response. When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request. When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

18.     "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit, study, interview notes, videos, or audio recordings, whether formal or informal, conducted by RIDOC.

19.     "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care or services provided for diagnostic or preventive purposes. "MENTAL HEALTH CASELOAD" means the list of all PRISONERS who have been identified as in need of MENTAL HEALTH CARE, or suffering from mental illness, regardless of whether they are currently receiving MENTAL HEALTH CARE.

20.     "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at RIDOC under supervision by HEALTH CARE CLINICIANS, such as Nurse Practitioners and Physician Assistants.

21.     "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

22.     "ORGANIZATIONAL STRUCTURE" means the structure of who reports to whom within RIDOC up to and including defendant Patricia Coyne-Fague, including specifically all HEALTH CARE STAFF and each individual's job title and DESCRIPTION of duties.

23.     OTHER PRACTITIONERS means licensed professionals who provide HEALTH CARE to PRISONERS at RIDOC such as Psychologists, Advanced Practice Registered Nurses Registered Nurses, Licensed Practical Nurses, Medication Aides, Mental Health Counselors,

Clinical Social Workers, and Independent Clinical Social Workers, and Marriage and Family Therapists.

24. "PHARMACIST" means a professional who practices pharmacy.

25. "PROGRAMS" OR "PROGRAMMING" means a program available to PRISONERS in the custody of RIDOC, including but not limited to rehabilitative, therapeutic, educational, vocational, substance abuse treatment, recreational, re-entry, and faith-based PROGRAMS; early release PROGRAMS; and prison job assignments whether paid or unpaid.

26. "POLICIES AND PROCEDURES" means policies, procedures, criteria, standard operating procedures, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, department-wide, as well as facility or institution-specific policies and procedures, and any other DOCUMENTS designed to direct the actions of RIDOC personnel, RIDOC contractors, and/or PRISONERS.

27. "PRISONER" means a person incarcerated by RIDOC, including individuals who have been sentenced and those detained pretrial or presentencing.

28. "PSYCHIATRIC MEDICATION" means any MEDICATION prescribed to a PRISONER in order to treat causes or symptoms of any mental illness, including but not limited to a SEVERE AND PERSISTENT MENTAL ILLNESS, and regardless of whether the MEDICATION is prescribed "off-label."

29. "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is any way relevant to the particular subject matter identified.

30. The "RESIDENTIAL TREATMENT UNIT" or "RTU" shall have the same meaning as in RIDOC POLICY 12.27, "Conditions of Confinement" and means the unit into which prisoners or detainees with SPMI are placed under that policy.

31.     "RESPONSE DATE" means the date upon which YOU respond to these discovery requests or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

32.     "RESTRICTIVE HOUSING" means "Any type of detention that involves removal of an inmate from general population, voluntarily or involuntarily; placement in a locked room or cell, whether alone or with another inmate; and the inability to leave the room or cell for the vast majority of the day, typically 22 hours or more" regardless of whether the individual is confined in a facility dedicated to this purpose, a separate unit within a facility, or a cell within a general population unit.

33.     "RESTRICTIVE HOUSING UNIT" means any unit in which at least one PRISONER is confined in RESTRICTIVE HOUSING, regardless of whether the unit is designated for that purpose.

34.     "SEVERE AND PERSISTENT MENTAL ILLNESS" or "SPMI" has the same definition as that used by RIDOC and includes those conditions affecting individuals eighteen years of age or older who have been diagnosed with a mental illness such as schizoaffective disorder, schizophrenia, other specified schizophrenia spectrum and other psychotic disorders, bipolar disorder(s), delusional disorder, major depressive disorder, panic disorder, agoraphobia, post-traumatic stress disorder, obsessive-compulsive disorder, and borderline personality disorder.

35.     "SPECIALTY CONTRACTOR" means any person or entity contracting with RIDOC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

36.     "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

37.     "SUICIDE WATCH" means the CONDITIONS OF CONFINEMENT imposed on PRISONERS who, in RIDOC's determination, pose a risk of suicide.

38.     "USE OF FORCE" means employment by any RIDOC staff member of any physical or chemical method intended to bring a PRISONER into compliance, including CHEMICAL AGENTS, handcuffs, shackles, other restraints, pressure technique holds, placement in stress positions, tasers, or use of an object to strike a PRISONER, whether such actions are authorized or not.

39.     "YOU," "YOUR," and "YOURSELF" means the DEFENDANTS.

## INSTRUCTIONS

1.     YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of YOUR (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates. Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the DEFENDANTS, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint, and online workspaces such as WebEx.

2.     All non-identical copies of every DOCUMENT for which production is sought shall be separately produced.

3.     Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation. DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-

It note. The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the DOCUMENTS.

4.      DEFENDANTS shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations. The author(s) of all hand-written notes should be identified.

5.      YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

6.      Responsive DOCUMENTS that exist only in paper form shall be organized as they have been kept in the ordinary course of business and shall be produced according to the following protocol:

a.      Paper DOCUMENTS shall be scanned and produced in TIFF image form at a resolution sufficient to enable the generation of searchable text using Optical Character Recognition ("OCR").

7.      Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

a.      Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT-level load files wherein the full text was extracted directly from the native file where possible.

b.      For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT. The production number shall contain at least six digits.   There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner of the DOCUMENT.

c.      Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.      For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file. If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.      TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j & k) of these Instructions, below.  The load file shall be produced in one of the following industry-standard formats: (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv").  TIFF images shall also be

accompanied by an Opticon delimited cross-reference file ("opt") showing DOCUMENT breaks and appropriate DOCUMENT unitization.

      f.     In addition to TIFF images, each production of unredacted electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT.  The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text").   Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding DOCUMENT followed by the extension ".txt".  YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files.  Searchable text files shall be generated from Extracted Text where available, except where the DOCUMENT contains redactions.  Redacted documents shall have text files based on OCR.

      g.     To the extent they are determined to be responsive, spreadsheet DOCUMENTS, including but not limited to Microsoft Excel or .csv file extensions, must be produced in native format ("Native Format Documents").  Similarly, files that are not amenable to conversion to TIFF format will be produced in their native form and shall be considered Native Format Documents for purposes of production under this paragraph.   All Native Format Documents that are data complications in spreadsheets, Microsoft Excel, or in delimited text formats, must contain all underlying data un-redacted with all underlying formulas and algorithms intact unless they are redacted.

h.      DOCUMENTS shall be produced through a secured FTP site, on optical media (CD or DVD), external hard drives, or similar, readily accessible electronic media (the "Production Media"). Information that shall be identified in conjunction with the Production Media shall include a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RIDOC 001"), as well as the volume of the material in that production (e.g., "- 001", "-002").  For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RIDOC 001-001", "RIDOC 001-002", and "RIDOC 001-003." The face of each piece of Production Media shall also IDENTIFY: (1) the production date; and (2) the production number range of the materials contained on the Production Media. For all DOCUMENTS the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| All Custodians | The name of all individuals or sources from which the DOCUMENT was obtained |

| Fields for all DOCUMENTS | Description |
|---|---|
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Confidentiality | A tag to indicate whether the producing party is invoking the confidentiality provisions of the protective order. |

            i.        The following metadata fields shall be included in the load file (if they exist):

| Metadata Fields | Description |
|---|---|
| Author | The person or source that originated the DOCUMENT |
| FileName | Original file name |
| FilePath | Original file path |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| DateCreated | Date file was created |
| To: | Email field |
| From: | Email field |
| CC: | Email field |
| BCC: | Email field |
| DateSent | Email field |
| DateReceived | Email field |
| Subject | Email field |

8.      If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.      The following rules of construction shall be applied herein:

a.      the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope;

b.      the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural;

c.      the words "ANY," "ALL," "EACH" and "EVERY" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and

d.      the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request.

11.     If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.  the subject matter of the DOCUMENT;

b.  the title, heading or caption of the DOCUMENT, if any;

c.  the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.  the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.  the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f.  the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.  the identity of each person who has custody of a copy of each such DOCUMENT.

12.  If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected. When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.

13.  All redactions shall also be included on the privilege log.

14.  If YOU object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

15.  If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever INFORMATION or knowledge YOU have REGARDING the portion to which YOU have not responded.

16.     If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in YOUR possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

17.     These requests are sequentially numbered and each numbered paragraph constitutes a single request. Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

18.     Except where expressly stated, these requests are not limited in any way by geography.

19.     These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Supplemental responses are required if additional responsive information is acquired or discovered between the time of responding to this request and the time of trial.

20.     Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2015, up to and including the RESPONSE DATE.

## DOCUMENTS REQUESTED

### REQUEST FOR PRODUCTION NO. 88

DOCUMENTS SUFFICIENT TO SHOW, for each RIDOC housing unit, the name of that unit, its security designation, its capacity, and the current PRISONER population.

### REQUEST FOR PRODUCTION NO. 89

DOCUMENTS SUFFICIENT TO SHOW the current population of PRISONERS in each security classification at RIDOC, including administrative segregation and disciplinary

segregation, and the number and percentage of PRISONERS with each classification who are on the MENTAL HEALTH CASELOAD.

**REQUEST FOR PRODUCTION NO. 90**

All POLICIES AND PROCEDURES relevant to the provision of MENTAL HEALTH CARE to PRISONERS in the custody of RIDOC.

**REQUEST FOR PRODUCTION NO. 91**

All DOCUMENTS describing MENTAL HEALTH PROGRAMS available to any PRISONERS in the custody of RIDOC.

**REQUEST FOR PRODUCTION NO. 92**

Any and all DOCUMENTS, including internal and external reports, evaluations, or investigations, regarding any review of the mental health system generated since January 1, 2017.

**REQUEST FOR PRODUCTION NO. 93**

The mental health system organization chart for RIDOC, including, for each position, the name of the person filling that position and their credentials, including the highest relevant degree obtained and licensure status.

**REQUEST FOR PRODUCTION NO. 94**

DOCUMENTS SUFFICIENT TO SHOW all RIDOC mental health positions that have been authorized or funded, and, for each such position, the population or unit that the person filling the position would work in, including whether they work with PRISONERS housed in any kind of RESTRICTIVE HOUSING or in general population. For each position, IDENTIFY the person, including the person's name, professional degree, start date, and whether they are full time or, if

part-time, what percent of full-time equivalent the person works for.  If the position is vacant, provide the date it became vacant. For any staff on leave, indicate the date the leave began.

## REQUEST FOR PRODUCTION NO. 95

For each mental health clinician and each psychiatrist providing mental health care at RIDOC, whether employed by RIDOC or working as a contractor, DOCUMENTS sufficient to show the number of patients on their caseload.

## REQUEST FOR PRODUCTION NO. 96

DOCUMENTS SUFFICIENT TO IDENTIFY every contract clinician who provided mental health care services to prisoners in the custody of RIDOC every month for the 12 months preceding the RESPONSE DATE, including the name and professional title of the contract clinician, the population or area in which that person worked, and the number of hours worked each month.

## REQUEST FOR PRODUCTION NO. 97

DOCUMENTS SUFFICIENT TO SHOW the number of PRISONERS engaging in any type of MENTAL HEALTH PROGRAMMING offered by RIDOC, including intermediate care, general practice mental health care, infirmary mental health care, and any other relevant mental health level of care.

## REQUEST FOR PRODUCTION NO. 98

DOCUMENTS SUFFICIENT TO SHOW the average daily census in each mental health treatment unit on a monthly basis during the six months preceding the RESPONSE DATE.

## REQUEST FOR PRODUCTION NO. 99

DOCUMENTS SUFFICIENT TO SHOW the monthly average of the percentage of the total prison population who are receiving mental health treatment (i.e., the average MENTAL HEALTH CASELOAD) for each of the six months preceding the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 100**

The patient roster for each PRISONER on the MENTAL HEALTH CASELOAD including name, number, diagnosis, and list of medications one week prior to each of Plaintiffs' experts' Rule 34 inspection.

**REQUEST FOR PRODUCTION NO. 101**

DOCUMENTS SUFFICIENT TO IDENTIFY, as of 1 week prior to each of Plaintiffs' experts' Rule 34 inspection, each PRISONER on the MENTAL HEALTH CASE LOAD by: (1) level of care, (2) housing, and (3) PRISONER'S last name.

**REQUEST FOR PRODUCTION NO. 102**

DOCUMENTS SUFFICIENT TO SHOW the total number of PRISONERS who are currently receiving mental health treatment and are prescribed medication.

**REQUEST FOR PRODUCTION NO. 103**

For PRISONERS admitted to the infirmary for mental health purposes since January 1, 2019, DOCUMENTS SUFFICIENT TO SHOW the average and median lengths of stay in the infirmary.

**REQUEST FOR PRODUCTION NO. 104**

DOCUMENTS SUFFICIENT TO DESCRIBE the management information system available and/or used pertinent to MENTAL HEALTH CARE, copies of reports regularly generated from the management information system that are used for mental health system review and/or planning.

**REQUEST FOR PRODUCTION NO. 105**

All serious incident reports and unusual incident reports regarding events in any RESTRICTIVE

HOUSING UNIT from since January 1, 2019.

**REQUEST FOR PRODUCTION NO. 106**

All DOCUMENTS REGARDING DISCIPLINE for PRISONERS involving self-injurious

behavior by the PRISONER since January 1, 2017.

**REQUEST FOR PRODUCTION NO. 107**

DOCUMENTS DESCRIBING, IDENTIFYING, recording, or reporting any medication errors

reported during the six months preceding the RESPONSE DATE, corrective action plans and

reports issued in response to such errors, and any other DOCUMENTS containing similar

information.

**REQUEST FOR PRODUCTION NO. 108**

A list of all PRISONERS receiving psychiatric medications on an involuntary basis in the six

months preceding the RESPONSE DATE.

**Request No. 109**

All POLICIES AND PROCEDURES used to identify PRISONERS taking psychiatric

medications who are transferred or moved within RIDOC and to provide them medication

without significant interruption, and any audits of this procedure.

**REQUEST FOR PRODUCTION NO. 110**

All POLICIES AND PROCEDURES used to identify and manage PRISONERS taking

psychiatric medications who are noncompliant with medications.

**REQUEST FOR PRODUCTION NO. 111**

All DOCUMENTS regarding the suicide or suicide attempt of a PRISONER in RIDOC custody since January 1, 2015, including INTERNAL and EXTERNAL INVESTIGATIONS.

**REQUEST FOR PRODUCTION NO. 112**

All DOCUMENTS related to required training of CORRECTIONAL STAFF relevant to suicide prevention.

**REQUEST FOR PRODUCTION NO. 113**

DOCUMENTS SUFFICIENT TO SHOW the percentage of CORRECTIONAL STAFF currently working at the prison who had completed the required suicide training as of January 1, 2018; January 1, 2019; and January 1, 2020.

**REQUEST FOR PRODUCTION NO. 114**

Minutes of any meeting in which the suicide or suicide attempt of an individual PRISONER was discussed, or in which suicide prevention was discussed, in the twelve months preceding the REPSONSE DATE.

**REQUEST FOR PRODUCTION NO. 115**

A list of PRISONERS placed in restraints and/or seclusion for mental health purposes since January 1, 2019, including the duration and location of each episode of restraint and/or seclusion.

**REQUEST FOR PRODUCTION NO. 116**

DOCUMENTS SUFFICIENT TO SHOW the status of any new construction or remodeling for mental health treatment space.

**REQUEST FOR PRODUCTION NO. 117**

All POLICIES AND PROCEDURES regarding CHEMICAL AGENTS.

**REQUEST FOR PRODUCTION NO. 118**

All training DOCUMENTS pertaining to the administration of RESTRICTIVE HOUSING and/or to the USE OF FORCE, including the use of CHEMICAL AGENTS, including lesson plans, outlines, and handouts.

**REQUEST FOR PRODUCTION NO. 119**

All USE OF FORCE reports, extraordinary occurrence reports, and unusual incident reports related to any NAMED PLAINTIFF regarding any USE OF FORCE taking place in a RESTRICTIVE HOUSING unit or in the RESIDENTIAL TREATMENT UNIT produced since January 1, 2019.

**REQUEST FOR PRODUCTION NO. 120**

All codes of conduct and codes of ethics provided to CORRECTIONAL STAFF since January 1, 2017.

**REQUEST FOR PRODUCTION NO. 121**

For each form of RESTRICTIVE HOUSING (including disciplinary segregation, protective custody, administrative segregation, and any other form of RESTRICTIVE HOUSING used in RIDOC), all POLICIES AND PROCEDURES governing any initial classification and subsequent review to determine whether to continue placement in effect since January 1, 2015.

**REQUEST FOR PRODUCTION NO. 122**

For each of the NAMED PLAINTIFFS, all DOCUMENTS providing the basis for their confinement in RESTRICTIVE HOUSING, the process used, any appeals process, and periodic reviews, since January 1, 2015.

**REQUEST FOR PRODUCTION NO. 123**

Any and all reports, including INTERNAL and EXTERNAL INVESTIGATIONS and morbidity reviews, for PRISONERS injured, whether through self-harm or otherwise, while in RESTRICTIVE HOUSING since January 1, 2015.

**REQUEST FOR PRODUCTION NO. 124**

All DOCUMENTS REGARDING environmental conditions at RIDOC, including all POLICIES AND PROCEDURES setting standards and practices for cleanliness, sanitation, and maintenance, and all records of maintenance, and any and all POLICIES AND PROCEDURES specific to RIDOC RESTRICTIVE HOUSING UNITS.

**REQUEST FOR PRODUCTION NO. 125**

DOCUMENTS SUFFICIENT TO SHOW the number of PRISONERS who had been transferred to a higher level of MENTAL HEALTH CARE in the twelve months preceding the RESPONSE DATE and the length of time that each PRISONER spent in each mental health level of care.

**REQUEST FOR PRODUCTION NO. 126**

All POLICIES AND PROCEDURES REGARDING the use of seclusion in response to the mental health needs of PRISONERS in effect from January 1, 2015, to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 127**

DOCUMENTS SUFFICIENT TO SHOW the number of PRISONERS placed in seclusion during the 12 months prior to the RESPONSE DATE, the length of their stay, and the locations of seclusion.

Dated:      May 22, 2020

s/ Lauren Kuhlik
Lauren Kuhlik (D.C. Bar No. 888324779)
   *Admitted Pro Hac Vice*
Amy Fettig (D.C. Bar No. 484883)
   *Admitted Pro Hac Vice*
ACLU NATIONAL PRISON PROJECT
915 15th Street, N.W., 7th Floor
Washington, D.C. 20005-2302
Telephone: (202) 548-6618
Facsimile: (202) 393-4931
Email: lkuhlik@aclu.org
        afettig@aclu.org


s/Anne M. Mulready
Anne M. Mulready (RI Bar No. 4738)
Brian Adae (RI Bar No. 2536)
DISABILITY RIGHTS RHODE ISLAND
33 Broad St., Suite 601
Providence, RI 02903
Telephone: (401) 831-3150
Facsimile: (401) 274-5568
Email:  amulready@drri.org
         badae@drri.org

s/Patrick T. Uiterwyk
Patrick T. Uiterwyk (RI Bar No. 7461)
James S. Rollins (MA Bar No. 569422)
   *Admitted Pro Hac Vice*
NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
One Post Office Square
Boston, MA 02109
Telephone: (617) 417-4700
Facsimile:  (617) 217-4751
Email:  Patrick.uiterwyk@nelsonmullins.com
         James.rollins@nelsonmullins.com
*Cooperating Attorneys, ACLU Foundation of
Rhode Island*

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, the foregoing Plaintiffs' First Set of Requests for Production of Documents was sent electronically to Defendants' attorneys of record at the following address:

Brenda Baum
Assistant Attorney General
Rhode Island Department of Attorney General
Email: bbaum@riag.ri.gov

Michael Field
Assistant Attorney General
Rhode Island Department of Attorney General
Email: mfield@riag.ri.gov

By: *s/ Lauren Kuhlik*