UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHARLENE LIBERTY, JOHN DAPONTE, JOHN DAVIS, DUANE GOMES, ADAM HANRAHAN, and CHARLES KENNER, on behalf of themselves and all others similarly situated; and DISABILITY RIGHTS RHODE ISLAND, on behalf of its constituents, <br><br> Plaintiffs, <br> v. <br><br> RHODE ISLAND DEPARTMENT OF CORRECTIONS; PATRICIA COYNE-FAGUE, in her official capacity as the Director of the Rhode Island Department of Corrections; MATTHEW KETTLE, in his official capacity As Assistant Director of Institutions and Operations; And BARRY WEINER, in his as Official capacity as Assistant Director of, Rehabilitation Services <br><br> Defendants. | C.A. No. 19-cv-0573-JJM-PAS |

## DEFENDANTS' OBJECTION TO PLAINTIFFS' REQUEST FOR ENTRY ONTO DEFENDANTS' PREMISES FOR INSPECTION AND TESTING

Defendants object to Plaintiffs' Request for Entry onto the Defendants' Premises for Inspection and Testing ("Request"). The Request as stated is beyond the scope of Fed. R. Civ. P. 26 and 34, is not proportional to the needs of the case, compromises the privacy and health information of nonparties, would interrupt the orderly schedule and work of the RIDOC, impose unnecessary work on RIDOC staff

1

and would adversely impact safety and correctional operations. Understanding the obligations under Rule 34(a)(2), Defendants provide a specific offer of inspection related to the Complaint.

On September 16, 2021, the Plaintiffs' Request for Entry onto the Defendants' Premises for Inspection and Testing to occur on the previously agreed upon dates of September 28, 29 and 30, 2021. The Plaintiffs' request entry for inspection and testing under Fed. R. Civ. P. 26 and 34(a)(2). Specifically, Plaintiffs' request that Plaintiffs' counsel and experts be given access to the six (6) Rhode Island Department of Corrections ("RIDOC") facilities and operations, be granted access to confer with staff and incarcerated persons and be granted unrestricted access to the RIDOC's entire Electronic Medical Records ("EMR") system. Specifically, Plaintiffs' Request seeks:

> to physically walk through, observe, and photograph RIDOC detention and correctional facilities, including but not limited to:
> - Restrictive Housing;
> - Restrictive Housing` Units,
> - the Residential treatment Unit ("RTU");
> - clinical space available for medical and mental health care;
> - medication lines;
> - housing available in the isolation[1] units;
> - intake or screening areas;
> - infirmaries and other inpatient facilities;
> - a sample of general population and isolation;
> - cells in which incarcerated persons are housed during Constant Observation, Crisis Management Status, or Psychological Observation;

---

[1] Isolation is defined as "confinement in Restrictive Housing or Restrictive Housing Unit. Restrictive Housing Unit is defined as

- all areas in which incarcerated persons are housed during Constant Observation, Crisis Management Status, or Psychological Observation; and
- and all areas to which incarcerated persons in isolation are taken or have access, including but not limited to exercise enclosures, counseling/programming areas or offices, visiting areas, law libraries, and suicide watch areas.

Plaintiffs' Request states that they want both Plaintiffs' counsel and experts to be given the right to "confer with and interview mental health care staff[2] and correctional staff, as well as to confidentially meet with incarcerated persons, to discover information regarding the provision of mental health care to incarcerated persons and conditions of confinement in isolation." No deposition notices have been provided.

The Request goes on to demand the ability "to review documents or records, including: mental health needs requests received; grievances received related to the provision of mental health care or the conditions of confinement

---

[2]"Mental Health Care Staff" is defined as "all staff employed or paid by RIDOC, locum tenens contractors, or specialty contractors (other than correctional staff) who are responsible for providing "Mental Health Care" to RIDOC "Incarcerated Persons," including but not limited to "Mental Health Care" clinicians, social workers, mid-level practitioners, entry-level practitioners, other practitioners, pharmacists, and administrative and support staff.
"Mental Health Care" is defined as "the provision of care or services, to "identify" and/or address the mental health needs of a "incarcerated persons", whether those needs arise as a result of injury, illness, disease, or other trauma, or care or services provided for diagnostic or preventive purposes."
"Incarcerated persons" is defined as "a person incarcerated by RIDOC, including individuals who have been sentenced and those detained pretrial or presentencing."

3

in isolation; incident reports; logbooks relating to incarcerated persons" movement and activities within isolation units; logbooks relating to the mental health care of incarcerated persons." No separate document request was provided.

Plaintiffs also want RIDOC to create lists for each facility, of inmates who "fit the below criteria, and a subset of these incarcerated persons' records" will be selected for review:

a.  incarcerated persons who currently are prescribed psychotropic medications, including for each incarcerated person the mental health diagnoses and the medications and dosages;

b.  incarcerated persons who currently are on the mental health caseload, including each incarcerated person the mental health diagnoses;

c.  incarcerated persons in isolation who have mental health diagnoses, including for each incarcerated person the mental health diagnosis;

d.  incarcerated persons who were placed on Constant Observation, Crisis Management Status, or Psychological Observation in the last year;

e.  incarcerated persons who were admitted to outside hospitals and emergency rooms in last two years as a result of self-harm;

f.  incarcerated persons who were admitted to any inpatient mental health facility in the last two years;

g.  Documents listing the duration of isolation for incarcerated persons."

Not limiting it to the creation of such lists, Plaintiffs' request also demands to be able to inspect "[o]ther records of selected incarcerated persons will also be inspected. Plaintiffs want unfettered access to the RIDOC's Electronic Medical Record ("EMR") to be able to review any medical records and also a RIDOC employee to operate the

4

EMR for them.

This request is wildly overbroad, intrusive, and well beyond the parameters of Rule 34(c)(2), including but not limited to "confer with and interview mental health care staff[3] and correctional staff, as well as to confidentially meet with incarcerated persons." This request seeks to subvert the protections afforded to a party through Fed. R. Civ. P. 30, by permitting informal roving depositions. This request seeks the physical review of facilities beyond what is alleged in the Complaint, restrictive housing and its alleged effect on a certain subset of the inmate population. This request seeks confidential information and records of inmates who are neither parties or putative class members that is protected from disclosure by:

> Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 CFR Parts 160 and 164, Standards for Privacy of Individually Identifiable Health Information, Final Rule 4/13/01; NCCHC Standard #J-59 (Confidentiality of Health Records) JH02, JH03, JH04, JH06; JH01 J-58, Health Record Format and Contents; J-61, Availability and Use of Health Records; P-44, Continuity of Care; J-63, Retention of Health Records ACA Standard 4-4396, Confidentiality of Health Records Files; 4-4413, Contents of Health Record Files; 4-4415, Transferred and Inactive Records; the most recent versions of RIDOC Policies #5.01 DOC, Management of Semi-Active and Archival Records;

---

[3]"Mental Health Care Staff" is defined as "all staff employed or paid by RIDOC, locum tenens contractors, or specialty contractors (other than correctional staff) who are responsible for providing "Mental Health Care" to RIDOC "Incarcerated Persons," including but not limited to "Mental Health Care" clinicians, social workers, mid-level practitioners, entry-level practitioners, other practitioners, pharmacists, and administrative and support staff.

"Mental Health Care" is defined as "the provision of care or services, to "identify" and/or address the mental health needs of a "incarcerated persons," whether those needs arise as a result of injury, illness, disease, or other trauma, or care or services provided for diagnostic or preventive purposes."

5

#6.06 DOC, Research; #9.49 DOC, PREA (Prison Rape Elimination Act) Policy; #18.05 DOC, Continuous Quality Improvement and Physician Peer Review; #18.30 DOC, Receiving Screening and Mental Health Evaluation of New Commitments; RIGL § 5-37.3-1 et seq., Confidentiality of Health Care Communications and Information Act; § 23-6-17 Confidentiality – Disclosure of (HIV) Test Results; § 38-3-5.1, Reproduction of Public Records – Destruction of originals; § 38-3-6, Public records custody and disposal; 42 CFR Part 2 Drug and Alcohol Abuse Information; Federal Register Vol. 65, No. 250, 12/28/00, Definitions, page 82803 (§ 164.501); 45 CFR Parts 160 and 164 – Standards for Privacy of Individually Identifiable Health Information Final Rule – 12/28/00 – Updated, 08/03; Rhode Island Department of Health Rules and Regulations for the Licensure and Discipline of Physicians as amended 01/2000 (Medical Records, 11-2); DOJ Final PREA Standards 115.81 Medical and Mental Health Screenings; history of sexual abuse

Additionally, mental health records have a cloak of confidentiality pursuant to R.I. Gen. Laws 40.1-24.5-11. This precise issue is currently the subject of a discovery dispute.[4] Given that the inspection was scheduled to occur within the next week, the issue of redacting individuals' names and identity will not be resolved by the Court and, RIDOC, would not have sufficient time to prepare the "lists" or documents identified in Plaintiffs' Request.

---

[4] On September 17, 2021, Plaintiffs' counsel advised Magistrate Judge Sullivan's clerk "Could you please inform Judge Sullivan that the parties were unable to agree to a process for testing whether RIDOC is redacting the names of people who in fact have a mental health condition that meets the definition of SPMI? Therefore, as discussed during the discovery conference on September 2, 2021, Plaintiffs request that the Court set a briefing schedule for a motion to compel unredacted documents." On September 20, 2021, Magistrate Judge Sullivan's clerk advised the parties that "Instead of the Court setting the filing date, Judge Sullivan suggests that Plaintiffs proceed with filing the motion when it is ready, as soon as reasonably possible. After the Court has reviewed the motion, Judge Sullivan will set the schedule for the remaining sequence of briefs. As always, the schedule is subject to adjustment, preferably based on the agreement of the parties."

The Plaintiffs' proposed areas to physically walk through, observe, and photograph not only reasonably exceeds the allegations in the Complaint, but the Request also compromises the privacy of inmates other than the Named Plaintiffs. The unfettered taking of photographs could not only compromise security but also infringe on the privacy rights of individual inmates. The meeting by counsel and experts with inmates could adversely impact that non-party inmate. In addition, RIDOC must be mindful of protecting the inmates within its custody from the potential for unnecessary exposure to Covid-19. The lists Plaintiffs desire in advance and the access to documents and the EMR are an unnecessary and undue burden on the RIDOC and not proportional under a Rule 26 analysis. Also, the Requests demand for documents ignore the time periods set forth in Rule 34. The Request to Inspect seeks to circumvent the protections for Rule 34(a)(1)(A) document requests that have been propounded and the subject of prior meet and confers.

Plaintiffs' request was not in accord with the timelines set forth in Rule 34. Plaintiffs' Request is not relevant or proportional under Rule 26. For these reasons and for those that may be subsequently articulated, Defendants object to Plaintiffs' Request.

To fulfill its obligations under Fed. R. Civ. P. 34(a)(2), Defendants are

willing to provide at a subsequently agreeable date a guided tour[5] in which Plaintiffs' experts (Dr. Metzner and Prof. Horn) and two counsel are permitted to walk through, observe, view and take notes regarding:

1. Restrictive Housing cells and recreation areas in the following facilities:

    • The Anthony P. Travisono Intake Service Center (ISC);
    • The Gloria McDonald Women's Facility;
    • The High Security Center (HSC);
    • The Maximum Security facility; and
    • The John J. Moran Medium Security Facility

2. Cells in which incarcerated persons are housed during Constant Observation, Crisis Management Status, or Psychological Observation occur in the following facilities:
    • The Anthony P. Travisono Intake Service Center (ISC);
    • The Gloria McDonald Women's Facility;
    • The High Security Center (HSC);
    • The Maximum Security facility; and
    • The John J. Moran Medium Security Facility

3. the Residential treatment Unit ("RTU");

4. clinical space available for mental health care in the following facilities:
    • The Anthony P. Travisono Intake Service Center (ISC);
    • The Gloria McDonald Women's Facility;
    • The High Security Center (HSC);
    • The Maximum Security facility; and
    • The John J. Moran Medium Security Facility

5. Should the Plaintiffs' experts desire a photograph of any of #1-4, they would make the request for a photograph to the designated RIDOC representative on the tour and a photograph will be taken. RIDOC does not agree to include any inmate or employee in a photograph. Should the photograph requested implicate security concerns, the photograph can be taken and the release of it to Plaintiffs' counsel and experts be

---

[5] Included also would be Defendants' expert Dr. Penn and designated legal counsel.

> discussed or litigated thereafter.

6. The RIDOC would set the time frame for the respective days.

7. If any of the above conditions or policies/procedures of the RIDOC are violated, the RIDOC reserve the right to immediately terminate the Rule 34 inspection.

Inspection of records, electronic or other format, wandering tours of areas not mentioned above and engaging in questioning found objectional by RIDOC counsel are prohibited.

Given the differences in the Rule 34(a)(2) inspections, the need for Court intervention and resolution and serious security concerns that arose recently, alternative dates would need to be obtained and court intervention to resolve the issue of the Rule 34 Inspection in the interim.

Respectfully submitted,

STATE DEFENDANTS
RHODE ISLAND DEPARTMENT OF CORRECTIONS, PATRICIA COYNE-FAGUE, in her official capacity of the Director of the Rhode Island Department of Corrections; MATTHEW KETTLE, in his official capacity as Assistant Director of Institutions and Operations; and BARRY WEINER, in his official capacity as Assistant Director of Rehabilitation Services,

By:

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Brenda D. Baum*

Brenda D. Baum #5184
Assistant Attorney General
R.I. Office of the Attorney General
150 South Main Street
Providence, RI  02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-2995
bbaum@riag.ri.gov

## **CERTIFICATION**

I hereby certify that on this 22nd day of September 2021, the within document was electronically mailed to Plaintiffs' counsel of record.

*/s/ Brenda D. Baum*