UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

CHARLENE LIBERTY, JOHN DAPONTE,
JOHN DAVIS, DUANE GOMES, ADAM
HANRAHAN and CHARLES KENNER,
on behalf of themselves and all others
similarly situated; and
DISABILITY RIGHTS RHODE ISLAND,
on behalf of its constituents,
   *Plaintiffs,*

v.                 C.A. No. 19-cv-0573-JJM-PAS

RHODE ISLAND DEPARTMENT OF
CORRECTIONS; PATRICIA COYNE-
FAGUE in her official capacity as the
Director of the Rhode Island Department of
Corrections; MATTHEW KETTLE,
Official Capacity as the Assistant Director of
Institutions and Operations; and BARRY
WEINER in his Official Capacity as the
Assistant Director of Rehabilitation Services
   *Defendants.*

**DECLARATION OF ADMINISTRATOR, HEALTHCARE SERVICES**
**PAULINE M. MARCUSSEN, DHA, RHIA, CCHP**

  I, Dr. Pauline M. Marcussen, DHA, RHIA, CCHP, hereby makes this statement and swears it to be true and complete and based on my own personal knowledge, to the best of my memory and belief.

1. I was appointed Administrator of Health Care Services in May 2019. Prior to that, I was the Interdepartmental Project Manager/Medical Records Unit. I have been employed by the Department of Corrections since September 1997.

2. As Administrator of Health Care Services, I am responsible for the management of all contracts with our healthcare-related vendors; oversight of several units in healthcare

services including the medical records unit and, as such, the Electronic Medical Records system (EMR) is under my purview.

3. Prior to September 2009, medical records were created in paper format. On September 16, 2009, an EMR was instituted at the Rhode Island Department of Corrections. From that time forward, any and all patient encounters were maintained in an electronic format. An electronic file was created for every active person on the date of implementation; a new file was created for all new commitments from that date onward. When someone is recommitted to the DOC, the electronic file is reactivated (if they have an electronic file dated between September 2009 to present). The old records are dated prior to August 2009 and are in paper format, the records are not available for review.

4. The first EMR system was provided by NextGen 9/16/2009 through 8/26/2017; the second system was provided by GE/Centricity by Fusion Healthcare which was implemented on or about 8/26/2017 and is presently used. The total number of inmate records contained in the EMR as of 3/31/22 @ 3:16 p.m. was 52,804.

5. An electronic medical record file is maintained for each individual and contains the following information:
   a. Patient demographics (name, date of birth, ID#, facility, mod, bed assignment, photo);
   b. Past medical history, social history, family history (to include comments about substance use and mental health issues for parents and siblings), review of systems, any complaints, current medications, dental history, mental health history, substance use history, any sexually transmitted diseases and/or other infectious diseases such as HIV, Hep C, gonorrhea, chlamydia, syphilis, and genital warts.
   c. Vaccinations.
   d. Lab results (from East Side Clinical Lab and RI Department of Health);
   e. Detailed provider notes by medical doctors, nurse practitioners, physician assistants, psychiatrists, social workers, dentists, dental hygienists, dental assistants;
   f. Detailed nurses notes as well as treatment and care provided by other healthcare professionals such as physical therapy, occupational therapy, substance use counselors, dieticians, and pharmacists; and
   g. Specialty consults to include notes from (not all inclusive): dermatologist, ENT, HIV/Infectious Disease, eye care, podiatric care, urologist, cardiologist, neurologist, general surgeon, oral surgeon, pain management specialist, gastroenterologist. These notes are received from the consultant's office, RI Hospital clinics, Kent Hospital, and other service provides.

6. The RIDOC EMR has interfaces with East Side Clinical Laboratory who processes all lab specimens and sends reports electronically and available in the EMR. There is also an

interface with the pharmacy vendor who receives orders for new medication orders, renewed meds and refills on a real-time basis and ships the medications via courier within 18-24 hours. There is also an interface with Current Care (state-wide health information exchange).

7. Access to the RIDOC EMR is permitted for State employees with RI licenses providing care to the patient population and all vendor staff also have role-based access to the EMR. All individuals who will have access must go through New Employee Orientation (RIDOC), EMR training, and complete all required documentation prior to using the EMR in order to document patient encounters.

8. The RIDOC presently has 120 licenses (only 120 users can be on the system at any given time). All passwords are controlled through the RI Department of Information Technology and the system is Windows-based.

9. Current access to the EMR is provided to the following (presently 230 individuals):
   a. Addiction Services: 19
   b. Behavioral Health Social Workers: 19
   c. Dental Assistants: 4
   d. Dentists: 5
   e. Dental Hygienists: 2
   f. Dietitian: 1
   g. Discharge Planners: 4
   h. MAT Therapy: 17
   i. Medical Records Staff: 9
   j. Non-Formulary Managers: 3
   k. Nurse Practitioners: 4
   l. PT/OT/ST: 17
   m. Physicians: 24
   n. Physician's Assistant: 1
   o. Psychiatrists/PCNS: 8
   p. RN/LPN/CNA: 71
   q. Researchers: 7
   r. System Administrators: 6
   s. View Only: 9

10. The Medical Director does not require a diagnosis for medications ordered for the patient population and, therefore, it is not possible to produce a report showing psychotropic medication with correlating diagnosis, however, a report can be generated of patients on a particular psychotropic medication OR a report can be generated by diagnosis.

11. The documentation generated to transport a patient to the emergency room contains information related to signs and symptoms and there is no such label for identification as a "result of self-harm."

12. The EMR does not ask particular questions about whether a patient has been "admitted to any inpatient mental health facility in the last two years" and any question about a prior admission is answered simply by checking a box which means there was a prior admission (to a facility)   Any specific information related to this, if available, would likely be written as a narrative and not searchable for reporting purposes.

13. The medical records unit at the RIDOC is not staffed to its full FTE allotment.

14. The RIDOC abides by all federal and state laws regarding confidentiality of personal health information (see policy RIDOC 18.59-6 Confidentiality of Healthcare Information).  A signed authorization must be obtained from the patient prior to disclosure of PHI unless the patient poses a threat to himself, others, or the institution (such as staff, vendors, visitors) at which time an authorization is not required.   There are restrictions on access and disclosure of HIV status as well as strict regulations on access to information for patients involved in a substance use disorder clinic (42CFR Part2).  There is a limited list of people who have access to PHI based on their role at the RIDOC (Access List attached to RIDOC Policy 18.59-6).

Under 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 6th day of April, 2022

*Pauline M. Marcussen*

Dr. Pauline M. Marcussen, DHA, RHIA, CCHP
Administrator
Healthcare Services