UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLENE LIBERTY, *et al.*,              :
          Plaintiffs,                   :
                              :
          v.                            :         C.A. No. 19-573JJM
                              :
RHODE ISLAND DEPARTMENT            :
OF CORRECTIONS, *et al.*,               :
          Defendants.                   :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      This putative class action addresses the constitutional and federal statutory limitations on the use of placement in restrictive housing/solitary confinement by the Rhode Island Department of Corrections ("RIDOC") to sanction and manage the conduct of prisoners/detainees who have been identified as suffering from serious and persistent mental illness ("SPMI"). Now pending before the Court on referral to me for determination is Plaintiffs' motion to compel. ECF No. 43.

      The motion challenges Defendants' redactions of what they contend is irrelevant, marginally relevant and/or not requested information in certain produced documents – restrictive housing reports, prescription lists, minutes of meetings attended by health care staff at which restrictive housing was discussed, and documentation of the use of force. Invoking Fed. R. Civ. P. 26(b)(1), Defendants argue that the challenged redactions conceal personal identifying information, highly confidential medical/mental health information and other sensitive information regarding persons who are outside the scope of what is relevant and proportional to the needs of the case; Defendants contend that the redactions are appropriately based on substantial privacy and institutional safety and security concerns. Defendants also point out that

the discovery Plaintiffs seek would vastly expand the scope (and therefore the expense and complexity) of this case far beyond the claims asserted in the Class Action Complaint for Declaratory and Injunctive Relief and the defenses raised in their Amended Answer.  See ECF No. 1 ("Complaint" or "Compl."); ECF No. 19 ("Answer" or "Ans.").

Having carefully reviewed the parties' unusually extensive filings[1] and having held a lengthy hearing on the motion, I find that Plaintiff's Complaint raises an important issue (the allegedly inappropriate use by prison officials of solitary confinement to sanction and manage the non-volitional conduct that is caused by identified SPMI), albeit one that has been at stake in other cases that were already pending when this case was filed.  I further find that this case has not launched a roving audit of every aspect of the Rhode Island prison system generally or of how the Rhode Island prison system addresses mental illness in all its manifestations, as Plaintiffs' experts have mistakenly described it.  See ECF No. 60-3 ¶ 10 (Plaintiffs' prison conditions expert avers that the scope of his engagement is to "gather information about how corrections is administered in restrictive housing units and in RIDOC generally"); ECF No. 60-2 ¶ 8 (Plaintiffs' mental health expert avers that his task is to "gather information about how mental health care is provided in restrictive housing units and in RIDOC generally").  Based on my findings and for the reasons stated below, to the extent that Plaintiffs seek the unredaction of information that is within the scope of their Complaint, their motion to compel is granted.  To the extent that the information sought strays beyond what is both squarely relevant to the claims in the Complaint and the defenses in the Answer and proportional to the needs of the case, considering the limited issue at stake in the action, the very significant privacy and institutional

---

[1] Plaintiffs filed a total of more than 250 pages of material in support of their motion to compel.  Defendants presented almost 250 pages in opposition.

security concerns in play, as well as the other factors listed in Fed. R. Civ. P. 26(b)(1), the motion is denied.

**I.      Background**

Plaintiffs' Complaint targets the existing policies, procedures and practices of RIDOC in seeking declaratory relief.  It is forward-looking in seeking injunctive relief.  It does not request money damages.  The pleading alleges that the claims are maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1-2), although Plaintiffs have not yet filed a motion for class certification.

A concept that is pivotal to the case (and to the Court's determination of Plaintiffs' motion to compel) is "Serious and Persistent Mental Illness" or "SPMI."  Compl. ¶ 2.  "SPMI," as used in this case, is defined in the Complaint: "For purposes of this Complaint, the term 'SPMI' refers to the definition used by RIDOC."  Compl. ¶ 77 (emphasis added).  The pleading acknowledges that SPMI as defined by RIDOC is more limited than what Plaintiffs allege to be "the commonly used definition of 'serious mental illness' (SMI) that is generally utilized in the community, correctional institutions, mental health standards and court cases."  Id. ¶ 78.  As framed by the pleadings, RIDOC's definition of SPMI looks at an individual's diagnoses (e.g., schizophrenia, other psychotic disorders, bipolar disorder, major depressive disorder and borderline personality disorder) and the extent and duration of functional limitations due to the diagnosed impairment, without regard to whether the limitation is attenuated by treatment.  Ans. ¶ 77.

Named as Plaintiffs are six individuals who claim that each of them was known to be suffering from SPMI while in the custody of RIDOC, yet each was placed in solitary

confinement[2] in violation of the Eighth and Fourteenth Amendments of the Constitution, as well as in contravention of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act.  Compl. ¶¶ 2, 18-29, 79.  These six are suing both individually and on behalf of a putative class of "RIDOC prisoners and detainees identified as SPMI by RIDOC who now, or will in the future be, subject to solitary confinement."  Id. ¶ 9 (emphasis added).  As to four of the six, RIDOC admits that the individual was identified by RIDOC as SPMI.  Ans. ¶¶ 18, 22, 24, 26.  As to two of the six, RIDOC denies that it identified the individual as SPMI.  Ans. ¶¶ 20, 28.

Also joined as a Plaintiff is a not-for-profit Rhode Island corporation known as Disability Rights Rhode Island ("DRRI"); it brings this action on behalf of constituents with SPMI for the purpose of both eliminating the use, and ameliorating harmful conditions, of solitary confinement for people with SPMI.  Compl. ¶¶ 30, 39.  To establish standing, DRRI alleges that it is designated by federal law (42 U.S.C. § 10801, et seq.) to pursue legal remedies "to ensure that the rights of individuals with mental illness are protected" without the participation of its individual constituents.  42 U.S.C. § 10801(b)(1); see Compl. ¶¶ 30-43.  DRRI is focused on the "ongoing needs and conditions of confinement of prisoners and detainees with SPMI," alleged to include the individual Plaintiffs and a group of "constituents" identified in the Complaint by initials as "individual . . . prisoners or detainees who have SPMI."  Compl. ¶ 38.  DRRI alleges that it "brings this matter on behalf of individuals with SPMI."  Compl. ¶ 41.

Defendants are RIDOC and senior prison officials, who are sued in their official capacities.  Compl. ¶¶ 44-47.

---

[2] RIDOC uses "restrictive housing" to refer to what the Complaint labels as "[s]olitary [c]onfinement."  Compl. ¶ 9.  As used in this case, the terms appear to be synonymous.  Id.

As pled, the Complaint is laser focused on RIDOC's alleged practice of using solitary confinement to punish and manage the behavior of individuals identified by RIDOC with SPMI, which behavior is alleged to be symptomatic of the mental illness.  Compl. ¶ 149.  The Complaint relies on 42 U.S.C. § 1983 to allege that RIDOC's approach to solitary confinement (including isolation, lack of exercise, fresh air and sunlight, sensory deprivation and lack of meaningful activity) for individuals with SPMI violates the Eighth and Fourteenth Amendments of the United States Constitution, amounting to cruel and unusual punishment, because it is well known that such treatment undermines these individuals' health and exacerbates the illness that is the root cause of the conduct.  Id. ¶¶ 124-33.  The Complaint also invokes the ADA to claim that prisoners/detainees with SPMI are disabled; instead of appropriate treatment, persons with SPMI are excluded from services and programming that are made available to those who are not disabled due to the use of solitary confinement to respond to their disability-related behaviors. Id. ¶¶ 134-52.  The Complaint relies on § 504 of the Rehabilitation Act to claim that RIDOC deprives incarcerated individuals with SPMI of an integrated setting appropriate to their needs by placing them instead in solitary confinement, which is used as a management technique to address disability-related conduct.  Id. ¶¶ 153-62.

In reliance on the Constitution, ADA and § 504, Plaintiffs ask the Court to declare that solitary confinement is *per se* prohibited for an individual with SPMI; to alter conditions of confinement for individuals with SPMI to eliminate isolation, sensory deprivation, and lack of contact; to expand RIDOC's residential treatment unit ("RTU")[3] to accommodate all individuals with SPMI who otherwise would be placed in solitary confinement; and to appoint independent experts and retain jurisdiction until future compliance is reasonably assured.  Compl. at 56-58;

---

[3] Since 2018, RIDOC has maintained the RTU to treat mental illness for "a limited number of male prisoners with SPMI."  Compl. ¶ 87.  The Complaint alleges that this mental health treatment unit is not adequate.  Id. at ¶¶ 87-94.

see ¶ 150 ("Solitary confinement is inappropriate for prisoners and detainees with SPMI because it undermines their mental health and well-being – making it far less likely that they will ever be able to comply with prison rules and other requirements.").

Before discovery began (and requiring significant involvement of the Court because the initial protective order proposals were unworkable), a Protective Order was entered permitting the designation of documents as confidential and confidential/attorneys and experts only.  ECF No. 30.  Since discovery began, Plaintiffs have propounded 145 document requests in three separate sets.  ECF No. 53-1 at 2.  Defendants have been responding to Plaintiffs' extensive document requests by producing (as of mid-January 2022) more than 40,000 pages of material.  Id. at n.1.

## II.    The Motion to Compel

The motion to compel targets Defendants' production of documents pursuant to the following Document Requests:

- Document Request 2 seeks health care records for the named Plaintiffs.

- Document Request 12 seeks minutes of meetings attended by any health care staff at which the mental health of RIDOC prisoners/detainees in restrictive housing and RIDOC procedures regarding the use of restrictive housing for prisoners/detainees with mental health issues was discussed, among other topics.

- Document Requests 57, 70 and 74 seek documents sufficient to show the number of all prisoners/detainees in restrictive housing, as well as the number and the duration of confinement for those in restrictive housing with SPMI.

- Document Requests 58-59 seek documents related to the use of force on the named Plaintiffs and the use of force in any restrictive housing unit or the RTU.

- Document Request 102 seeks documents sufficient to show the total number of prisoners/detainees receiving mental health treatment.

ECF Nos. 43-1 at 3-4; 53-1 at 2-3, 17.  In response to each, Defendants have produced a substantial set of responsive documents.

A.   __Prescription Lists__

As relevant to the motion to compel, for Document Requests 2 (as to the named

Plaintiffs)[4] and 102, the production includes RIDOC's prescriptions lists, which have the patient

names, identifying numbers, the name of the prescribing physician and the specific medication

and dosage for each prescription for all persons in RIDOC's custody.  Apart from the named

Plaintiffs, Defendants correctly point out that Plaintiffs have not propounded a request

specifically asking for production of these prescription lists.  ECF No. 53-1 at 17.  The lists were

produced in response to Document Request 102, which sought documents sufficient to show the

number of prisoners/detainees receiving mental health treatment and medication.  Id.  In

producing them as documents sufficient to show the requested information, Defendants redacted

the lists to conceal the personal identifying information regarding all patients other than those

who are designated as SPMI.  Thus, Plaintiffs can see every prescription, ranging from nasal

spray to testosterone, at the same time that the privacy of the non-SPMI patients who were

prescribed a specific medication is protected.

In seeking to unredact everything on the prescription lists, Plaintiffs sidestep their failure

to ask for such records and contend that all of the content is relevant by pointing out that some of

the medicines prescribed for non-SPMI patients are antipsychotics that are "predominantly used

to treat persons with a serious mental illness."  ECF No. 43-5 ¶ 10 (Decl. of Dr. Jeffrey

Metzner).  They buttress the argument with declarations of six non-SPMI inmates who aver that

they were prescribed antipsychotic medication to treat diagnosed mental health conditions.  ECF

---

[4] One matter addressed in Plaintiffs' motion is Defendants' redaction of responsive health care information as requested by Document Request 2 regarding the two named Plaintiffs who RIDOC contends are not SPMI.  In its opposition and again during the hearing, Defendants agreed that any such redactions will be removed.  Similarly, to the extent that identifying or related information for these named Plaintiffs appears in other documents, such as the restrictive housing reports, the Court finds that all such references are relevant, and the Protective Order is more than sufficient to protect privacy.  As Defendants agreed, all information related to the named Plaintiffs will be unredacted.

Nos. 44-10; 43-1 at 15.  Defendants counter that there are many complex and individualized

reasons why a RIDOC prescriber might write such a prescription for a patient who nevertheless

does not meet RIDOC's criteria for SPMI.  Defendants also lay out in summary fashion the

factually complex and individualized circumstances underpinning the non-SPMI designation of

the six inmates who submitted declarations.  ECF No. 54-2 ¶¶ 4-38 (Decl. of RIDOC Acting

Clinical Director of Behavioral Health, Caitlin Bouchard); ECF No. 53-7 ¶¶ 17-22 (Decl. of Dr.

Joseph Penn).

### B.    Meeting Minutes

For Document Request 12, Defendants produced the minutes of meetings at which the

RIDOC warden, deputy warden and various medical staff had individualized discussions of the

intensely private medical circumstances of prisoners/detainees discussed by name.  For example,

the minutes of one meeting include a discussion of how to manage an individual with SPMI who

had become distraught regarding a recent family event, which is specifically referenced.  ECF

No. 44-6; see also ECF No. 53-1 at 20-21.  These meeting minutes are redacted to cover up such

discussions of the health care and related private concerns of non-SPMI prisoners and detainees.[5]

### C.    Restrictive Housing Reports

For Document Requests 57, 70 and 74, Defendants produced restrictive housing reports.

The reports contain a detailed catalog of every instance of placement in restrictive housing

during a backward-looking period, including the identifying number, name and race of the

individual, the date and length of the placement, a description of the precipitating conduct (e.g.,

"[p]rovoking a fight," "SMUGGLING Category 1 Contraband INTO the Facility") and how the

---

[5] Plaintiffs' brief is not clear whether meeting minute redactions cover information related to named Plaintiffs who RIDOC alleges are not SPMI.  To the extent that they do, Defendants have already agreed to remove those redactions.  See n.4 supra.

conduct was characterized under RIDOC's conduct code (e.g., "HIGHEST(PREDATORY)").
ECF No. 44-1.  While the requests asked only for documents sufficient to show the number of all
prisoners/detainees in restrictive housing and the number and the duration of confinement for
those with SPMI, Defendants appear to have provided far more information than Plaintiffs had
requested.  In so doing, they generally[6] redacted all personal identifying information on the
restrictive housing entries that pertain to prisoners and detainees who are not SPMI, although in
some instances identifying information for those with SPMI was also redacted.

   **D.    Use of Force**

   For Document Request 58, Defendants produced videos and documents pertaining to the
use of force on the named Plaintiffs, redacting only the names and identifying and other
information (including gang affiliation, social security numbers and medical information)
regarding other inmates and RIDOC staff involved in the incident.  ECF No. 53-1 at 22.  For
Document Request 59, which asked for documents related to the use of force in the restrictive
housing unit or the RTU, Defendants produced responsive records for individuals classified as
SPMI but redacted all names and identifying and other information for the SPMI inmate who is
the target of the use of force in these settings, as well as for any other inmate and RIDOC staff
involved in the incident.  For use of force in the restrictive housing unit or the RTU pertaining to
individuals who are not SPMI, Defendants produced nothing.

   **E.    Summary of Arguments**

---

[6] In a few instances, Defendants over- or under-redacted the restrictive housing reports.  During the hearing,
Defendants agreed that any over-redactions would promptly be removed; for example, in some instances the
duration of confinement for non-SPMI prisoners/detainees could not be ascertained because the "confinement end"
column had been redacted.  The under-redactions arose because reports for one month in 2018 and one month in
2019 were produced inadvertently without redaction.  In the interest of expediency, I decline to order a claw back to
cure this error; instead, Plaintiffs may retain these two reports to use as exemplars of what the unredacted reports
look like, provided that they may not be used inappropriately to expand the scope of what is in issue.

Plaintiffs now challenge all redactions, arguing (1) that any such redaction is *per se* improper because the Court has entered a Protective Order, and (2) that the Complaint is not as limited as Defendants contend, but rather that it challenges not just the use of solitary confinement with prisoners and detainees identified as SPMI, but also could be interpreted as challenging RIDOC's approach to mental illness, including how it identifies who has SPMI.  As argued by Plaintiffs, they seek the additional discovery because it is necessary to permit them to perform, on an inmate-by-inmate basis, an analysis of the medical and mental health treatment, diagnoses, medications and symptoms of <u>non</u>-SPMI prisoners/detainees whom they "believe are not properly designated," ECF No. 57 at 2, to determine as to each whether he/she should have been classified as SPMI, as well as to evaluate as to each, the degree with which he/she was subjected to restrictive housing.  To factually support this argument, Plaintiffs rely on the actual number and percentage of RIDOC inmates who were classified as SPMI as of June 1, 2021 (165 persons or approximately 8%), by comparison with estimates in RIDOC's public statements[7] to conclude that RIDOC is failing to designate as SPMI individuals whose mental illness should have been classified as persistent and severe.

Defendants counter that Plaintiffs' proffer that RIDOC has failed properly to identify persons with SPMI is factually unfounded.  More importantly in light of the scope of discovery as limned by Fed. R. Civ. P. 26(b)(1), they point to the language of the Complaint and contend

---

[7] If the question of whose mental illness should be categorized as SPMI had been put in issue by the Complaint, the facts Plaintiffs now marshal are likely sufficient for the Court to find an allegation of under-classification plausible for pleading purposes.  For example, Plaintiffs point to a 2018 purchase order for psychiatric services in which RIDOC stated that "[a]pproximately 25% of inmates" have "serious mental illness" and to a RIDOC website statement that, in the past five years, the number of entering inmates with SPMI has increased, "with the number . . . being approximately 15-20% at any given time."  ECF No. 43-6 at 2; ECF No. 43-9 at 3.  On Reply, Plaintiffs highlight a 2022 RIDOC estimate that 15-20% of persons in RIDOC's custody have "serious mental illnesses."  ECF No. 57 at 5 n.6.  The problem is that under-classification of SPMI is not what this Complaint alleges.  Further, even if Plaintiffs had put under-classification in issue, it is far from clear that such an allegation would open the door to discovery of information sufficient to conduct a mini-trial on the mental status of every RIDOC inmate who conceivably has had mental health issues over a lookback period of many years, which is what Plaintiffs now seek.

that it simply does not assert Plaintiffs' newly concocted claim that RIDOC has under-classified

prisoners/detainees as SPMI.  Focused on proportionality, they argue that such an expansion of

the case would necessitate starting discovery over and lead to an in-depth review of an endless

number of unconsenting inmates' medical diagnoses and treatment, effectively turning the Court

into a reviewing board for RIDOC's approach to mental health and its SPMI designations.  They

ask the Court to find that their redactions are appropriately based on the irrelevancy or marginal

relevancy of what is private and often intensely confidential information, much of which also

implicates institutional safety and security.

## III.    Analysis and Rulings

Rule 26(b)(1) sets the scope of what should be produced in discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  The touchstones for the scope of discovery are relevancy and

proportionality.  Strike 3 Holdings LLC v. Doe, Civil Action No. 21-2621 (RC/RMM), 2021 WL

4965567, at *2 n.2 (D.D.C. Oct. 26, 2021).  This language is incorporated by reference into Fed.

R. Civ. P. 34, which deals with document requests.  Fed. R. Civ. P. 34(a).  District courts have

"'broad discretion to manage discovery matters.'"  Shapiro v. Roger Williams Univ., C.A. No.

011-140-ML, 2012 WL 3581148, at *7 (D.R.I. Aug. 17, 2012) (quoting Heidelberg Americas,

Inc. v. Tokyo Kikai Seisakuscho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003)), aff'd, No. 12-2105 (1st

Cir. Apr. 8, 2013).

### A.      Categorical Ban on Redactions

11

Plaintiffs' motion to compel rests principally on the argument that, once any part of a document is relevant, as long as there is a Protective Order, redactions for any reason except privilege are categorically improper.

I decline to adopt this approach. This Court has routinely permitted redactions of irrelevant or marginally relevant material as long as there is a reason beyond mere irrelevancy to justify the redaction. E.g., Walker v. Wall, C.A. No. 10-178 S, 2010 WL 4903825, at *1-2 (D.R.I. Nov. 24, 2010) (permitting redaction of information in policies that could pose safety and security risks to ACI employees and inmates if disclosed). As Walker notes, "[t]he First Circuit, encouraging the accommodation of the competing interests inherent in discovery disagreements regarding sensitive information, has instructed courts to utilize mechanisms such as redaction or protective orders in ruling on motions to compel." Id. at *2; see McEvoy v. Hillsborough Cty., Civ. No. 09-cv-431-SM, 2011 WL 1813014, at *3, 8 (D.N.H. May 5, 2011) (mindful that requesting party "proposed a protective order," but producing party argued that protective order was not sufficient to protect privacy of non-parties, court orders production of relevant "nonparty inmate medical records, subject to redactions to remove identifying information"), motion for reconsideration on other grounds granted in part and denied in part, No. 09-cv-431-SM, ECF No. 45 (D.N.H. May 31, 2011).

The only case from the District of Rhode Island cited by Plaintiffs to support their categorical argument is Hasbro, Inc. v. Mikohn Gaming Corp., C.A. No. 05-106ML, 2006 WL 8456748 (D.R.I. Mar. 30, 2006), in which the Court overruled extensive redactions in business records that were "based solely on relevancy grounds." Id. at *1. Noting that courts have generally not been receptive to the practice of unilateral document redactions on the basis of relevancy objections alone, the Court found "no justifiable basis under these particular

circumstances for Defendant's unilateral redaction of this document on grounds of irrelevancy."
Id. at *2. Hasbro simply does not apply to the very different circumstances that the Court is
facing here where Defendants have redacted what they contend is not just irrelevant or
marginally relevant material but also is private and personal, as to much of it intensely so (such
as health care information and social security numbers) and/or implicates institutional safety and
security.

To the extent that Plaintiffs' motion to compel relies on the proposition that all of
Defendants' redactions are categorically improper and should be removed, the motion is denied.[8]

### B.   Appropriateness of Redactions/Fed. R. Civ. P. 26(b)(1)

Plaintiffs' Complaint is clearly and crisply anchored in RIDOC's definition of SPMI and
the appropriateness under federal law of RIDOC's use of solitary confinement on the named
Plaintiffs and on the prisoners/detainees RIDOC has identified as SPMI.  As pled, Plaintiffs
avoided a case that would require an individualized mini-trial regarding the seriousness and
persistence of the mental impairments of each of hundreds of prisoners and detainees who are
not designated as SPMI.  By basing their claim on the prisoners/detainees who are known by
RIDOC to be SPMI, Plaintiff's discovery can and should focus on RIDOC's treatment of those
known to suffer from SPMI, supplemented by limited additional information sufficient to allow
Plaintiffs to perform the numeric comparisons called for by their ADA and § 504 claims.  While
it is certainly true, as Plaintiffs contend, that DRRI could have brought a case focused on the

---

[8] During the argument on the motion to compel, Plaintiffs supplemented their contention that redaction is
categorically improper with a lengthy recitation of all of the reasons why, with a Protective Order in place, the Court
could order RIDOC to strip away all redactions despite the state and federal laws that protect the redacted material.
Plaintiffs are right in arguing that the Court's discretion in managing discovery clearly encompasses the authority to
order highly confidential, sensitive and intensely private matters to be exposed during litigation especially when
such matters are squarely relevant to the case.  The question here is whether such an order is appropriate in the
circumstances of this case.  Having considered the parties' arguments, the Court concludes that it is not.

prisoners and detainees who DRRI believes should be identified as SPMI, that claim is not present in the case that is now pending before the Court.

During argument on the motion to compel, the Court asked Plaintiffs to explain how this Complaint renders relevant the extensive discovery they seek regarding prisoners and detainees who <u>might be</u> SPMI or who Plaintiffs believe <u>should be</u> SPMI.  In response, Plaintiffs pointed to a single phrase in a sentence in one paragraph of the Complaint, buried in Count III (ADA).[9]  Compl. ¶ 149.  It states that Plaintiffs challenge RIDOC's "mechanism of assessing prisoners' and detainees' mental health or other disability-related needs and designating them for placement in solitary confinement."  <u>Id.</u>  However, the balance of the sentence that begins with this phrase, and the paragraph in which this phrase is embedded, clearly links this allegation to Plaintiffs' core claim that RIDOC overuses "solitary confinement" for "<u>prisoners and detainees with SPMI</u>."  <u>Id.</u> (emphasis added).  This phrase simply does not profoundly alter what this case is about.

Based on the scope of the claims in the Complaint and the defenses in the Amended Answer, as well as what is proportional to the needs of this action, the Court finds that individualized identifying information, health care and mental health information, use of force reports and other potentially intensely personal information (such as matters that impact institutional safety and security, like gang affiliation, or that relate to potentially criminal conduct, like drug trafficking) about non-SPMI prisoners and detainees is not relevant.  Because of its highly sensitive nature, it is appropriately redacted from Defendants' production.  By

---

[9] Plaintiffs' brief lists many more paragraphs, but all of them are focused on "SPMI," in the limited sense as defined by the Complaint.  ECF No. 43-1 at 17 n.9.  On Reply, Plaintiffs sought to overcome the limits of the claims stated in their Complaint by pointing not just to ¶ 149, but also to ¶¶ 123 and 142.  ECF No. 57 at 2.  Neither supports Plaintiffs' argument.  Paragraph 123 is expressly limited in scope to the claims of "people with SPMI."  Compl. ¶ 123.  While ¶ 142 does not expressly mention SPMI, it is a foundational statement that supports the claims stated in the subsequent paragraphs (¶¶ 145-48), which are expressly focused on "prisoners and detainees with SPMI."  <u>Id.</u>

contrast, information related to mental health treatment, the use of solitary confinement and the use of force while in solitary confinement regarding those identified by RIDOC as SPMI (in addition to the named Plaintiffs) is squarely relevant; to the extent that such information was requested but has been redacted, the redactions should be removed.

A somewhat closer call is Defendants' redaction of the names and identifying indicia of RIDOC staff and other inmates who appear in the produced use of force reports. The identities of these staffers and other involved inmates are marginally relevant in that the Complaint is focused on the use of force to manage behavior of named Plaintiffs and of prisoners/detainees with SPMI who have been placed in restrictive housing. Compl. ¶¶ 84, 86, 109, 119. While such persons are certainly potential witnesses to each individual use-of-force incident, this case does not seek damages based on the use of force by specific individuals nor does it call for individualized fact finding on the appropriateness of the force used in each individual situation. Rather, it examines the appropriateness of the use of force, despite SPMI, on the named Plaintiffs and those with SPMI while in restrictive housing or in the RTU. While it is conceivable that the identity of a RIDOC staffer or other inmate may become relevant, for example, so that Plaintiffs can pursue an exemplar deposition, Defendants have committed to providing appropriate information in that circumstance upon request. Otherwise, the use of force is an emotionally fraught event and the exposure of the identities of the RIDOC staff and other inmates who are involved in these difficult incidents creates a serious concern regarding institutional safety and security. See Walker, 2010 WL 4903825, at *1 (permitting redaction of information that may be relevant but also could pose safety and security risks to ACI employees and inmates if disclosed). In light of the borderline relevancy of this information, balanced against the safety

and security concerns that are presented when such information is produced, the Court exercises its discretion to find that, as of now, these redactions are appropriate.

To summarize, the Court finds that Defendants' redactions to conceal irrelevant material (pertaining to non-SPMI prisoners/detainees) and marginally relevant material (the names of RIDOC staff and other involved inmates that appear in use of force reports) are appropriate because the redacted information implicates substantial privacy considerations, exacerbated because they arise in the prison setting where the identities and characteristics (for example, gang affiliation and drug trafficking behaviors) also implicate safety and security.  On the other hand, information pertaining to the named Plaintiffs and to prisoners and detainees who RIDOC identifies as SPMI is highly relevant and, despite its sensitive character, should be unredacted to the extent that it has been concealed.  Finally, Defendants have largely produced the non-identifying information from the restrictive housing reports that will permit Plaintiffs to compare the number of instances, the duration of each instance and the reason for each instance when restrictive housing is used for non-SPMI prisoners/detainees by comparison with the same data for those with SPMI.  To the extent that any such information has been redacted, it should be provided.

Based on the foregoing, the Court grants in part and denies in part Plaintiffs' motion to compel as follows:

- For the minutes of meetings, Defendants shall unredact all information (including identifying information) regarding individuals identified as SPMI and the named Plaintiffs and may leave redactions that conceal all material related to the identities, health care and other information related to all other non-SPMI prisoners/detainees.

- For restrictive housing reports, Defendants shall unredact all identifying information pertaining to prisoners/detainees who are SPMI and the named Plaintiffs, as well as information sufficient to calculate the number of instances and the duration of each instance of the use of restrictive housing pertaining to prisoners/detainees who are not SPMI.  The produced reports shall reflect information sufficient to permit Plaintiffs to

16

numerically compare the use of restrictive housing for prisoners/detainees with SPMI and prisoners/detainees without SPMI.  All identifying information pertaining to prisoners/detainees who are non-SPMI shall remain redacted.

- For the use of force documents pertaining to the named Plaintiffs, Defendants may leave redacted the names and identifying and other information (including gang affiliation, social security numbers and medical information) regarding other inmates and the RIDOC staff involved in each incident.  To the extent that Plaintiffs deem the identity of an inmate or a RIDOC staffer involved in a specific incident to be relevant, the parties shall meet and confer regarding whether it should be unmasked.

- For the use of force in restrictive housing or the RTU on prisoners/detainees who are identified by RIDOC as SPMI, Defendants shall remove redactions concealing the name and identifying information for the SPMI inmate who is the target of the use of force. Information pertaining to the identities of any other inmates and RIDOC staff involved in the incident may remain redacted.  To the extent that Plaintiffs deem the identity of an inmate or RIDOC staffer involved in a specific incident to be relevant, the parties shall meet and confer regarding whether it should be unmasked.

- For RIDOC's prescriptions lists, Defendants shall remove redactions that conceal personal identifying information regarding any named Plaintiffs.

## IV.    Conclusion

Based on the foregoing, Plaintiffs' motion to compel (ECF No. 43) is granted to the extent that redactions covering requested information pertaining to prisoners/detainees with SPMI should be removed.  Otherwise, the motion is denied.  The parties are directed to meet and confer regarding the timing of Defendants' production as required by this Order.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 26, 2022