# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CHARLENE LIBERTY, JOHN DAPONTE,
JOHN DAVIS, DUANE GOMES,
ADAM HANRAHAN,  and CHARLES KENNER,
on behalf of themselves and all others
similarly situated; and
DISABILITY RIGHTS RHODE ISLAND,
on behalf of its constituents,

                                                    C.A. No. 19-cv-0573-JJM-PAS

                            *Plaintiffs,*

           v.

RHODE ISLAND DEPARTMENT OF
CORRECTIONS;
PATRICIA COYNE-FAGUE,
in her official capacity as the Director of the
Rhode Island Department of Corrections;
MATTHEW KETTLE, in his official capacity as
Assistant Director of Institutions and Operations; and
BARRY WEINER, in his official capacity as
Assistant Director of Rehabilitation Services,

                            *Defendants.*

## PLAINTIFFS' OBJECTION TO THE MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL UNREDACTED VERSIONS OF DOCUMENTS

# Table of Contents

INTRODUCTION ................................................................................................................. 1

PROCEDURAL AND FACTUAL BACKGROUND.................................................................. 2

LEGAL STANDARD AND ARGUMENT ................................................................................ 4

I.    THE ORDER IMPROPERLY DISMISSES MUCH OF DRRI'S CLAIMS ........................ 5

II.   THE ORDER'S ANALYSIS OF RELEVANCE IS CLEARLY ERRONEOUS AND
      CONTRARY TO LAW ................................................................................................. 12

   A. For Discovery, a Requesting Party Need Only Show a Possibility of Relevance.............. 12

   B. The Order's Finding that Information about People with SPMI Is Irrelevant Is Clearly
      Erroneous and Contrary to Law .............................................................................. 14

      1. Plaintiff DRRI explicitly brought claims "on behalf of individuals with SPMI", not just
         those designated as SPMI by RIDOC ....................................................................... 14

      2. Because evidence about people with SPMI would tend to strengthen or weaken Plaintiffs'
         claims, these individuals' experiences are relevant ........................................................ 15

   C. The Order's Relevance Analysis of Other Matters Is Also Contrary to Law ................... 19

      1. Identifying information in the Restrictive Housing Reports is relevant for identifying
         people who may have an SPMI and are in restrictive housing, for comparing the
         circumstances of people with SPMI and people without SPMI in restrictive housing, and
         for identifying witnesses ................................................................................................ 20

      2. Mental health information, including identifying information, is relevant for identifying
         people who may have an SPMI, tracking them across different types of documents, and
         for comparing the circumstances leading to solitary confinement of people with and
         without SPMI ................................................................................................................ 22

      3. The names of staff members in use of force reports from restrictive housing are relevant
         for identifying witnesses. ............................................................................................... 23

      4. The Order's reference to "other potentially intensely personal information" is extraneous
         to any of the issues in dispute. ...................................................................................... 24

III.  THE ORDER'S ANALYSIS OF THE PROPRIETY OF REDACTIONS IS CONTRARY
      TO LAW ....................................................................................................................... 25

   A. Responsive Documents Should Be Produced in Full Unless There Is a Basis in Federal
      Law for Redacting ......................................................................................................... 26

   B. Federal Law Specifically Allows Production of Medical Information in Litigation Under a
      Protective Order ............................................................................................................ 32

   C. Federal Law Does Not Allow for the Redaction of Sensitive but Non-Privileged
      Information on Relevance Grounds ................................................................................ 34

   D. Defendants Did Not Assert Security or Safety Concerns to Justify Withholding............. 38

   E. Defendants Did Not Justify Withholding on Proportionality Grounds ............................ 44

CONCLUSION.................................................................................................................... 45

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amica Mut. Ins. Co. v. Whois Priv. Prot. Serv., Inc.*,
No. CA 11-70 L, 2012 WL 12838308 (D.R.I. Feb. 3, 2012)...................................................41

*ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*,
No. 1:10-CV-00362, 2010 WL 5230862 (N.D. Ohio Dec. 16, 2010) ........................26, 28, 37

*Aronstein v. Massachusetts Mut. Life Ins. Co.*,
No. 15-12864-MGM, 2017 WL 2818993 (D. Mass. June 29, 2017) .........................38, 42, 44

*Ass'n for Reduction of Violence v. Hall*,
734 F.2d 63 (1st Cir. 1984)......................................................................................................31

*Bartholomew v. Avalon Cap. Grp., Inc.*,
278 F.R.D. 441 (D. Minn. 2011)........................................................................................26, 28

*Bonnell v. Carnival Corp.*,
No. 13-22265-CIV-WILLIAMS/GOODMAN, 2014 WL 10979823 (S.D. Fla.
Jan. 31, 2014)....................................................................................................................26, 28

*BPP Retail Properties, LLC v. N. Am. Roofing Services, Inc.*,
300 F.R.D. 59 (D.P.R. 2014) ...................................................................................................34

*Braggs v. Dunn*,
317 F.R.D. 634 (M.D. Ala. 2016)...............................................................................................8

*Cont'l W. Ins. Co. v. Opechee Constr. Corp.*,
No. 15-CV-006-JD, 2016 WL 1642626 (D.N.H. Apr. 25, 2016)...............................38, 42, 44

*Cooks v. Town of Southampton*,
No. 13-3460 (LDW)(AKT), 2015 WL 1476672 (E.D.N.Y. March 31, 2015) ......................36

*Diaz-Garcia v. Surillo-Ruiz*,
45 F. Supp. 3d 163 (D.P.R. 2014)............................................................................................36

*Duling v. Gristede's Operating Corp.*,
266 F.R.D. 66 (S.D.N.Y. 2010) ...............................................................................................37

*Dunn v. Dunn*,
219 F. Supp. 3d 1100 (M.D. Ala. 2016) ..................................................................................41

*E.E.O.C. v. Electro-Term, Inc.*,
  167 F.R.D. 344 (D. Mass. 1996)............................................................................13, 19, 21, 23

*Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*,
  No. 12-CV-00787 (FLW)(LHG), 2017 WL 3624262 (D.N.J. Apr. 26, 2017) ......................28

*Evon v. Law Offices of Sidney Mickell*,
  Civ. No. S-0900760 JAM GGH, 2010 WL 455476 (E.D. Cal. Feb. 3, 2010) ........................28

*Farry v. City of Pawtucket*,
  No. C.A. No. 08-325S, 2009 WL 792900 (D.R.I. Mar. 24, 2009) .........................................31

*Ferring Pharms. Inc. v. Braintree Lab'ys, Inc.*,
  168 F. Supp. 3d 355 (D. Mass. 2016) .....................................................................................5

*Fiorentine v. Sarton Puerto Rico, LLC*,
  Civ. No. 20-1491(GAG-GLS), 2021 WL 2070535 (D.P.R. May 20, 2021) ..........................14

*G.D. v. Riley*,
  No. 2:05-CV-980, 2007 WL 2206559 (S.D. Ohio July 30, 2007)..........................................36

*Gagne v. Reddy*,
  104 F.R.D. 454 (D. Mass. 1984)............................................................................................13

*Garrity v. Thompson*,
  81 F.R.D. 633 (D.N.H. 1979) ...............................................................................................36

*Graff v. Haverhill N. Coke Co.*,
  No. 1:09-CV-670, 2011 WL 13078603 (S.D. Ohio Aug. 8, 2011) ........................................26

*Green v. Cosby*,
  152 F. Supp. 3d 31 (D. Mass. 2015)*, modified on other grounds on
  reconsideration*, 160 F. Supp. 3d 431 (D. Mass. 2016)....................................................13, 14

*Guadalupe v. City of New York*,
  No. 15 Civ. 0220 (CM), 2016 WL 3570545 (S.D.N.Y. June 24, 2016)................................44

*Hasbro, Inc. v. Mikohn Gaming Corp.*,
  C.A. No. 05-106 ML, 2006 WL 8456748 (D.R.I. Mar. 30, 2006) ............................27, 29, 30

*HealthEdge Software, Inc. v. Sharp Health Plan*,
  No. 19-cv-11020-ADB, 2021 WL 1821358 (D. Mass. May 6, 2021)....................................42

*In re HIPAA Subpoena*,
  961 F.3d 59 (1st Cir. 2020).................................................................................................4, 5

*HR Technology, Inc. v. Imura Int'l U.S.A., Inc.*,
  No. 08-2220-JWL, 2011 WL 836734 (D. Kan. Mar. 4, 2011) ..............................................27

*Kallas v. Carnival Corp.*,
   No. 06-20115-CIV, 2007 WL 2819385 (S.D. Fla. Sept. 25, 2007)........................................36

*Martin v. Evans*,
   No. 16-CV-11362-PBS, 2018 WL 10247394 (D. Mass. Feb. 6, 2018)............................12, 14

*McEvoy v. Hillsborough Cty.*,
   Civ. No. 09-cv-431-SM, 2011 WL 1813014 (D.N.H. May 5, 2011) ....................................31

*Metro. Prop. & Cas. Ins. Co. v. Advanced Spine Centers, Inc.*,
   No. CV 1:07-CV-10746-RCL, 2009 WL 10692662 (D. Mass. Jan. 30, 2009) ......................13

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015)........................................................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)......................................................................................................... *passim*

*Orion Power Midwest, L.P. v. American Coal Sales Co.*,
   No. 2:05-cv-555m 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008) .........................................26

*Overton v. Bazzetta*,
   539 U.S. 126 (2003)..........................................................................................................39, 41

*Parker Waichman LLP v. Salas LC*,
   328 F.R.D. 24 (D.P.R. 2018) ............................................................................12, 13, 15, 25

*Pesce v. Coppinger*,
   355 F. Supp. 3d 35 (D. Mass. 2018) ....................................................................................39

*In re Porsche Automobil Holding SE*,
   No. CV 19-MC-91129-LTS, 2020 WL 813710 (D. Mass. Feb. 19, 2020),
   aff'd, No. 20-1239, 2021 WL 140638 (1st Cir. Jan. 15, 2021)...........................................4, 13

*Roger Edwards, LLC v. Fiddes & Son, Ltd.*,
   216 F.R.D. 18 (D. Me. 2003)................................................................................................21

*Satanic Temple, Inc. v. City of Bos., MA*,
   No. 21-CV-10102-AK, 2022 WL 1028925 (D. Mass. Apr. 6, 2022)....................................14

*Sexual Minorities of Uganda v. Lively*,
   No. 3:12-30051-MAP, 2015 WL 4750931 (D. Mass. Aug. 10, 2015) .......................27, 29, 35

*Smith v. Turbocombustor Tech., Inc.*,
   338 F.R.D. 174 (D. Mass. 2021)......................................................................................44, 45

*Soto v. City of Concord*,
   162 F.R.D. 603 (N.D. Cal. 1995).........................................................................................13

*In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*,
   Nos. 08 md 1945(RJH)(DFE), 08 Civ. 0333(RJH)(DFE), 2009 WL 1026013
   (S.D.N.Y. Apr. 8, 2009).........................................................................................29

*Stoudemire v. Michigan Dep't of Corr.*,
   705 F.3d 560 (6th Cir. 2013) ...............................................................................41

*Torres v. Johnson & Johnson*,
   No. CV 3:18-10566-MGM, 2018 WL 4054904 (D. Mass. Aug. 24, 2018) ...............38, 42, 44

*United States v. Davis*,
   No. 85 Civ. 6090, 1988 WL 96843 (S.D.N.Y. Sept. 13, 1988)...............................27

*VanValkenburg v. Or. Dep't of Corrections*,
   No. 3:14–cv–00916–BR, 2015 WL 421426 (D. Or. Feb. 2, 2015) ...................37, 38

*Walker v. Wall*,
   No. C.A. No. 10-178 S, 2010 WL 4903825, at *2 (D.R.I. Nov. 24, 2010) ...............31, 42, 43

*Wallace v. Pharma Medica Rsch., Inc.*,
   No. 4:18cv01859 PLC, 2021 WL 22593 (E.D. Mo. Jan. 4, 2021) .........................36

**Rules**

Fed. R. Civ. P. 5.2.........................................................................................27, 28

Fed. R. Civ. P. 26 ....................................................................................... *passim*

Fed. R. Civ. P. 34 ....................................................................................... *passim*

Fed. R. Civ. P. 72 .........................................................................................1, 4, 5

**Statutes**

28 U.S.C. §636(c)(1)...........................................................................................5

Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191,
   110 Stat. 1936 (1996)..........................................................................................32

**Other Authorities**

45 C.F.R. § 164.502 ...........................................................................................32

45 C.F.R. § 164.504 ...........................................................................................32

45 C.F.R. § 164.506 ...........................................................................................32

45 C.F.R. § 164.508 ...........................................................................................32

45 C.F.R. § 164.510 ............................................................................................................32

45 C.F.R. § 164.512 ...........................................................................................29, 32, 33, 34

45 C.F.R. § 164.514 ............................................................................................................32

# INTRODUCTION

Pursuant to Fed. Rule of Civil P. 72, Individual Plaintiffs Charlene Liberty, John DaPonte, John Davis, Duane Gomes, Adam Hanrahan, and Charles Kenner ("Individual Plaintiffs") and Disability Rights Rhode Island ("DRRI") (collectively, "Plaintiffs") respectfully object to the Magistrate Judge's Memorandum and Order on Plaintiffs' motion to compel Defendants Rhode Island Department of Corrections ("RIDOC"), Patricia Coyne-Fague, Matthew Kettle, and Barry Weiner (collectively, "Defendants") to produce unredacted documents.

Plaintiffs brought a motion to compel the removal of redactions from specific documents previously produced in discovery.  In response to this discovery dispute, the Magistrate Judge dismissed a significant portion of the case.  Plaintiff DRRI brought claims on behalf of people with a serious and persistent mental illness ("SPMI") and the Individual Plaintiffs had brought claims on behalf of a class of people RIDOC has designated as having an SPMI.  The Magistrate Judge exceeded her authority by deciding that, contrary to the allegations in the Complaint, Plaintiff DRRI brought claims only on behalf of people RIDOC designated as SPMI.

Additionally, the Magistrate Judge used a cramped construction of relevance to find that information that will tend to weaken or strengthen even those claims she did not improperly dismiss was not relevant.  Then, the Magistrate Judge ruled that the lack of relevance, when combined with the purported confidentiality, security and proportionality concerns justified the redactions.  However, for many of the redacted documents, there are no apparent confidentiality concerns, and Defendants have not explained what the concerns would be.  Moreover, there is a protective order in place that addresses the confidentiality concerns that are cognizable in federal law.  Also, Defendants did not raise any security or proportionality concerns in their brief on this

discovery dispute.   The analysis of the bases of the Magistrate Judge's ruling – relevance, confidentiality, security and proportionality – was clearly erroneous, contrary to law or both.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed this action on October 25, 2019, bringing claims against Defendants, in their official capacity, for the unlawful practice of keeping people with serious and persistent mental illness ("SPMI") in solitary confinement in violation of the Eighth and Fourteenth Amendments, Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act. Plaintiffs' claims involve not only Defendants' unlawful practice of placing individuals with SPMI in solitary confinement itself, but also the treatment of people with SPMI in solitary confinement, the psychological, emotional and physical harms solitary confinement causes them, and Defendants' failure to provide equal access to RIDOC's programs, services and activities to individuals with SPMI, and Defendants' failure to provide access to services for individuals with SPMI in the most integrated setting. *See* Doc. 43-1 at 2; *see generally* Doc. 1.   The Individual Plaintiffs brought claims on their own behalf and on behalf of a putative class of people who had been identified as SPMI by RIDOC.  Doc. 43-1 at 17 n.9.  Plaintiff DRRI brought claims on behalf of people with SPMI in RIDOC custody.  *Id*.; Doc. 1 at ¶¶ 4, 41.

On February 21, 2020, and May 22, 2020, respectively, Plaintiffs served their first and second sets of requests for production of documents seeking documents related to the allegations in the Complaint. Docs. 43-1 at 2, 43-2, 43-3.

Relevant for purposes of this Objection, Plaintiffs First and Second Requests sought the following documents:

1. Request No. 12: All minutes from meetings attended by health care staff, and any other meetings at which the mental health care of RIDOC prisoners in restrictive housing, mental health care policies and procedures in restrictive housing, health

care staffing in restrictive housing, or any issue related to mental health care in restrictive housing was discussed.

2. Request No. 57: Documents sufficient to show the number of all RIDOC prisoners confined in restrictive housing units each month from January 1, 2015, to the response date.[1]

3. Request No. 58: Documents and materials, including, but not limited to, video describing or depicting the use of force, including, but not limited to, chemical agents and restraints on Plaintiffs from January 1, 2015, through the response date.

4. Request No. 59: Documents and materials, including, but not limited to, video, describing or depicting the use of force, including, but not limited to, chemical agents and restraints, in any restrictive housing unit or the residential treatment unit from January 1, 2015, through the response date.

5. Request No. 70: Documents sufficient to show the duration of confinement in restrictive housing, including, but not limited to, the mean, median, and maximum length of confinement in restrictive housing for RIDOC prisoners with SPMI.

6. Request No. 74: Documents sufficient to show the number of prisoners with SPMI housed in restrictive housing for each month from January 1, 2017, through the response date.

7. Request No. 102: Documents sufficient to show the total number of prisoners who are currently receiving mental health treatment and are prescribed medication.

Doc. 43-1 at 3-4; Doc. 53-1 at 17.

Defendants served their first responses to Plaintiffs' discovery requests for documents on June 11, 2020 and June 22, 2020 respectively, followed by continuing supplemental responses. *Doc.* 43-1 at 4. As part of Defendants' rolling production of documents, and in response to Requests No. 12, 57, 58, 59, 70, 74 and 102, Defendants produced redacted copies of restrictive housing reports, pharmacy invoices, meeting minutes, and use of force reports. *Id*. Defendants objected to the production of the redacted information on the grounds that the redacted information was not relevant to Plaintiffs' claims, production was overly burdensome and disproportionate,

---

[1] Plaintiffs agreed in a July 2020 meet and confer to, at least preliminarily, limit the time frame for most document requests to 2018 through the present. Doc. 43-1 at 3 n.2.

and because the information contained private and confidential information. *Id.*; Ex. A (Excerpts of Defendants' Responses to Plaintiffs' First Set of Request for Production of Documents)

Plaintiffs raised the issue of Defendants' unilateral redaction of information within these responsive documents by letter on August 10, 2021, and the parties conferred about the discovery dispute on August 31, 2021. Doc. 43-1 at 4. The parties subsequently attended a discovery dispute conference on September 2, 2021. *Id.* at 5.

Following the discovery conference, Plaintiffs moved to compel production of the documents without redactions. Doc. 43-1. Defendants opposed the motion. Doc. 53-1. Plaintiffs filed a reply (Doc. 57), and the Magistrate Judge held a hearing on February 22, 2022.

The Magistrate Judge issued her order on April 26, 2022. Doc. 71.

Plaintiffs object to the Magistrate Judge's order as clearly erroneous and contrary to law.

## LEGAL STANDARD AND ARGUMENT

When a magistrate judge issues a ruling on a dispositive motion, such ruling is reviewed *de novo*. *In re Porsche Automobil Holding SE*, No. CV 19-MC-91129-LTS, 2020 WL 813710, at *2 (D. Mass. Feb. 19, 2020), *aff'd*, No. 20-1239, 2021 WL 140638 (1st Cir. Jan. 15, 2021); Fed. R. Civ. P. 72(b)(3).

"A district court may reconsider an order on a pretrial matter designated to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) if the magistrate judge's order is clearly erroneous or contrary to law." *In re HIPAA Subpoena*, 961 F.3d 59, 64 (1st Cir. 2020)[2]; *see also* Fed. R. Civ. P. 72(a). A district court "reviews the magistrate judge's factual findings for clear error." *In re HIPAA Subpoena*, 961 F.3d at 64. Accordingly, the district court accepts "the magistrate judge's findings of fact and the conclusions drawn therefrom unless, after analyzing the entire record, [it]

---

[2] Citations and quotations omitted unless otherwise noted.

form[s] a strong, unyielding belief that a mistake has been made." *Id*.  "[F]or the fact-finder's inferences to stand, they must be reasonable and drawn from the evidence in the record."  *Id*. at 66.

On purely legal questions, the district court reviews *de novo* whether an order is contrary to law. *Id*. at 64.

"Mixed questions of law and fact invoke a sliding scale of review pursuant to which [t]he more fact intensive the question, the more deferential the level of review (though never more deferential than the clear error standard); the more law intensive the question, the less deferential the level of review." *Ferring Pharms. Inc. v. Braintree Lab'ys, Inc*., 168 F. Supp. 3d 355, 359 (D. Mass. 2016) (citing *In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013).

# I.  THE ORDER IMPROPERLY DISMISSES MUCH OF DRRI'S CLAIMS

A magistrate judge can conduct any proceeding in a civil matter and even enter orders of judgment, if the parties consent.  28 U.S.C. §636(c)(1).  There has been no such consent in this litigation.  Nonetheless, in ruling on a discovery dispute, the Magistrate Judge dismissed a significant portion of Plaintiff DRRI's claims, specifically the constitutional and statutory claims brought on "behalf of individuals with SPMI" who fall outside of the class definition because RIDOC has failed to designate them as SPMI.  Doc. 1 at ¶ 41. This ruling is not permissible and should be overruled solely on the basis of the procedural impropriety of dismissing a portion of the case *sua sponte* and outside of the authority of the Magistrate Judge.

In the alternative, if the Court does not vacate the portion of the Magistrate Judge's order dismissing DRRI's claims on behalf of those individuals who meet the definition of SPMI but have not been so designated, the Court should review that portion of the Magistrate Judge's order *de novo*.  Fed. R. Civ. P. 72(b)(3).

The allegations and claims in the Complaint repeatedly, clearly and explicitly relate to persons with SPMI without limitation as to the whether they have been so designated by RIDOC. Just in the first three pages of the Complaint, Plaintiffs state twelve times that the case is brought on behalf of people with SPMI, with no discussion of any limitation as to whether RIDOC has decided to identify the person as SPMI:

¶ 2:
- "Defendants systematically subject *persons with Serious and Persistent Mental Illness (SPMI)* to these conditions of prolonged solitary confinement despite knowing the serious risk of harm these conditions pose."
- "the RTU is insufficient to ameliorate the negative impacts of solitary for *people with SPMI* and only has the capacity to enroll eight men at a time despite the scores of *individuals with SPMI* in solitary confinement on any given day in RIDOC."
- "there are no alternatives – however insufficient – to solitary confinement for *women with SPMI*."
- "Defendants continue to subject hundreds of *people with SPMI* to severe, debilitating isolation."

¶ 3:
- "Defendants, by statewide policy and practice of isolating *people with SPMI* in these inhumane conditions, subject individuals to serious psychological harm and increasingly acute symptoms."

¶ 4:
- Plaintiff, Disability Rights Rhode Island (DRRI), on behalf of itself and in its representative capacity *on behalf of its constituents who are people with SPMI*, and the Individual Plaintiffs, on behalf of themselves and the Class they represent (collectively with DRRI, "the Plaintiffs") bring this case to remedy violations of the Eighth and Fourteenth Amendments to the United States Constitution involving the use of solitary confinement on *people with SPMI* and the great harm and risk of harm it creates for them."
- "the highly deficient mental health care Defendants provide to *people with SPMI* in the isolation units"
- Plaintiffs seek to remedy Defendants' discrimination against *people with SPMI* in their use of solitary confinement and their failure to provide *people with SPM*I equal access to RIDOC's programs, services and activities, and failure to provide access to services in the most integrated setting, to which Plaintiffs are entitled under the Americans with Disabilities Act and section 504 of the Rehabilitation Act of 1973."
- "Plaintiffs seek declaratory and injunctive relief on behalf of *prisoners with SPMI*."

Doc. 1 at ¶¶ 2-4 (emphasis added).  The same language is used throughout the Complaint.  *See*

Doc. 1 at ¶¶ 38, 39, 40, 41, 62, 66, 72, 73, 74, 75, 79[3], 83, 84, 86, 87, 88, 89, 90, 92, heading

between ¶¶ 94 and 95, ¶¶ 97, 98, 102, 105, 106, 108, 109, 110, 111, 113, 114, 120, 123, 125, 126,

127, 128, 131, 145, 146, 147, 148, 149, 150, 151, 152, 158, 159, 160, 161, 162, Prayer for Relief.

Both Plaintiffs and Defendants informed that Court that, in the Complaint, the allegations are made

on behalf of people with an SPMI.  Doc. 43-1 at 2 and 17 n.9 (stating that DRRI's claims are not

limited to the treatment of only those people designated as SPMI); Doc. 53-1 at 5 ("The Complaint

filed in this case contains claims against the Defendants 'for the unlawful practice of keeping

people with serious and persistent mental illness ("SPMI") in solitary confinement in violation of

the Eighth and Fourteenth Amendments, Americans with Disabilities Act ("ADA"), and Section

504 of the Rehabilitation Act.  [Plaintiffs'] Motion continues, describing their claims as limited to

'individuals with SPMI.'"); Doc. 57 at 2-7 ("Plaintiffs seek injunctive relief requiring

implementation of policies, practices, and conditions that require the proper identification of

individual's with SPMI. *See* Doc 1 at 56-57 (seeking necessary actions to ensure incarcerated

persons with SPMI are properly treated")); *see also* Ex. B (Hearing Transcript, Feb. 25, 2022) at

37:19-40:19.

As pled, the putative class consists of "all RIDOC prisoners and detainees identified as

SPMI by RIDOC, who are now, or will in the future be, subject to solitary confinement." Doc. 1

at ¶ 9; Doc. 43-1 at 17 n.9.  Thus, the class, as described in the Complaint, would be limited to

those persons who RIDOC has recognized as SPMI.  This limitation of the class definition is

appropriate in that it renders the class "readily ascertainable based on objective criteria."  *In re*

---

[3] In ¶ 79 of the Complaint, the Individual Plaintiffs and DRRI constituents are described as "SPMI as defined by RIDOC".  As discussed below at 11, the use of RIDOC's definition for determining what is an SPMI does not mean that these individuals have been designated as SPMI by RIDOC, a distinction the Magistrate Judge's order elides.

*Nexium Antitrust Litig*., 777 F.3d 9, 19 (1st Cir. 2015) (quoting *Carrera v. Bayer Corp*., 727 F.3d 300, 306 (3d Cir. 2013) and collecting cases regarding ascertainability); *see also* Doc. 1 at ¶ 11. Moreover, because RIDOC does have certain policies that relate to people it has designated as SPMI, the inclusion of persons with SPMI who are not so designated could create unnecessary difficulties to showing commonality. *See* Doc. 53-1 at 6. Finally, because Plaintiffs believed that each of the Individual Plaintiffs had been designated as SPMI, attempting to represent a class that included those who had not been so designated could have been subject to a challenge on typicality grounds.[4]

But the case was not brought solely by and on behalf of the Individual Plaintiffs and the putative class. It was also brought by DRRI on behalf of "individuals with SPMI." Doc. 1 at ¶¶ 30, 38-41[5]; Doc. 43-1 at 2 and 17 n.9; Doc. 53-1 at 5; Doc. 57 at 2-6; Ex. B at 40:6-19. In contrast to the class definition, the description of which constituents DRRI represents in this litigation does

---

[4] In the course of discovery, Plaintiffs have learned that Defendants do not consider two of the Individual Plaintiffs to have an SPMI.

[5] The Magistrate Judge's Order expresses concern that if the case included claims on behalf of people who have SPMI but are not so designated, it would require "a mini-trial on the mental status of every RIDOC inmate who conceivably has had mental health issues over a lookback period of many years, which is what Plaintiffs now seek." Doc. 71 at 10 n.7; *see also id*. at 13. This issue was not raised by either party, and thus there is no record regarding this point. This demonstrates the risk of the Magistrate Judge treating this discovery dispute *sua sponte* as a vehicle for issuing a dispositive order.

The inclusion of claims for these individuals does not require mini-trials or individualized determinations of "every RIDOC inmate who conceivably has had mental health issues". Rather, what is required is to prove that there are some people who meet the criteria who have not been so designated and whose rights have been violated by RIDOC solitary confinement practices. In a systemic injunctive relief case such as this, the relief would be to enjoin the use of policies that fail to ensure people are in fact designated if appropriate; it would not be for the Court to individually decide who should be so designated. *See, e.g*., *Braggs v. Dunn*, 317 F.R.D. 634, 667-69 (M.D. Ala. 2016).

Moreover, the issue before the Magistrate Judge regarding people with SPMI but not so designated was simply a discovery dispute over certain specific redactions to documents that had been produced. It was not about a request for or a motion seeking "discovery of information sufficient to conduct a mini-trial on the mental status of every RIDOC inmate who conceivably has had mental health issues over a lookback period of many years." Doc. 71 at 10 n.7. Had it been, Defendants would presumably have raised and argued proportionality objections, which they did not. *See generally* Doc. 53-1.

not include any limitation to persons that RIDOC has designated as SPMI – rather it covers all persons with SPMI.  Doc. 1 at ¶ 41; Doc. 43-1 at 17 n.9; Ex. B at 40: 6-19.

Additionally, several allegations reflect that the putative class and the set of people on behalf of whom DRRI brings its claims are not identical, though they overlap.  For example, the Complaint alleges that "Defendants subjected each of the Individual Plaintiffs, the putative Class, and the constituents of DRRI with SPMI to substantial periods in solitary confinement, including months and even years of isolation."  Doc. 1 at ¶ 74.  If the putative class and "the constituents of DRRI with SPMI" were identical, there would be no need for the inclusion of "the constituents of DRRI with SPMI" in this allegation.  Similarly, in the statement of each of the claims, the Complaint specifies that the claim is brought by the Individual Plaintiffs and DRRI on behalf of the Individual Plaintiffs, the putative class, and DRRI's constituents.  Doc. 1 at headings for Counts I-IV and ¶¶ 129, 133, 135 and 155.

Defendants were on notice that DRRI's constituents with SPMI are not limited to people who RIDOC has identified as SPMI.  The Complaint includes allegations about several DRRI constituents with SPMI, each of whom is referenced by pseudonym, Mr. A, Mr. B, Ms. C, *et cetera*.  Ex. C (Declaration of Brian Adae), at ¶ 2.  Defendants have been provided the names of each of these individuals.  *Id*. at ¶ 3.  As of the time of filing, of the eleven constituents discussed in the Complaint, four had not been identified by RIDOC as SPMI.  *Id*. at ¶¶ 4-5.

Further, in the Complaint, Plaintiffs distinguish between the few allegations that specifically relate to people designated as SPMI and allegations about people "with SPMI."  There are allegations about people designated as SPMI in the allegations about the class, specifically the definition and allegations about numerosity.  Doc. 1 at ¶¶ 5, 10.  Most of the other allegations that mention designation as SPMI relate to specific individuals who RIDOC had so designated Doc. 1

at ¶¶ 18, 20, 22, 24, 26, 28, 80, 92, 113.   There are just three other allegations about people designated as SPMI.  Two relate to RIDOC's knowledge that people with SPMI were in solitary confinement and were at risk of harm.  Doc. 1 at ¶ 75 ("Defendants knowingly hold prisoners and detainees designated as SPMI in solitary despite the serious known risks associated with this practice . . . .Defendants knowingly hold prisoners and detainees designated as SPMI in solitary despite the serious known risks associated with this practice."), ¶ 76 ("Caitlin Bouchard, RIDOC's Acting Clinical Director of Behavioral Health Services testified that up to 23 percent of the people held in solitary confinement by RIDOC over the course of a fifteen month period were designated SPMI."). Because these allegations are specifically about what Defendants knew, they reference the evidence of that knowledge: the designation.  The only other allegation about people designated as SPMI, as opposed to those with SPMI, is that from February 2018 through December 2018, "RIDOC housed over 100 people it identifies as SPMI in solitary confinement."   Doc. 1 at ¶ 94.  This reflects the information Plaintiffs had at the time.  Prior to discovery, Plaintiffs had no way of estimating in good faith the number of people in solitary confinement with an SPMI.  The only information available was RIDOC reports, which would naturally report only those RIDOC had designated as SPMI.

Finally, the Complaint specifically alleges that "Defendants' mechanism of assessing prisoners' and detainees' mental health or other disability-related needs and designating them for placement in solitary confinement perpetuates the overuse of solitary confinement and prevents prisoners and detainees with SPMI from accessing a wide variety of services, programs and benefits enjoyed by prisoners and detainees without disabilities…"  Doc. 1 at ¶ 149; Doc. 57 at 2-6; Ex. B at 36:17-37:18. The Complaint continues: "Defendants place these prisoners and detainees in solitary confinement as a routine management technique to respond to disability-related

behaviors and failures to comply, treating the effects of serious mental illness as a disciplinary or classification matter rather than as a mental health matter." Doc. 1 at ¶ 149; Doc. 57 at 2-6; Ex. B at 36:17-37:18. This allegation places the failure to recognize mental health needs of people with SPMI squarely within the claims of the case.

Despite the Complaint's many allegations about harms to people with SPMI and sparse references to people identified by RIDOC as SPMI, the Magistrate Judge's Order states that "[a]s pled, the Complaint is laser focused on RIDOC's alleged practice of using solitary confinement to punish and manage the behavior of individuals identified by RIDOC with SPMI, which behavior is alleged to be symptomatic of the mental illness." Doc. 71 at 5. In support of this statement, the Order cites only ¶ 149, the paragraph discussed above that alleges that Defendants' inadequate assessment practices result in the overuse of solitary confinement for people who have SPMI. Doc. 1 at ¶ 149; Doc. 71 at 5. The Magistrate Judge's ruling about the scope of the case is directly contrary to the allegations in the paragraph cited, as well as to the allegations throughout the Complaint.

The Order relies on the fact that Plaintiffs have defined SPMI in accordance with RIDOC's definition to find that allegations about the treatment of people with SPMI are inherently allegations of about the treatment of people designated as SPMI. Doc. 71 at 3. But there is nothing in the definition of SPMI that would mean that every person who meets the definition has in fact been designated as SPMI. RIDOC's definition of SPMI includes having a diagnosis of one of a number of specified mental health disorders and evidence of a functional impairment, including reliance on medication for treatment of a functional impairment. Doc. 57-2. It is fully possible, and appears to be the case, that there are people in RIDOC custody who meet the criteria laid out in the RIDOC definition of SPMI who have not been designated as SPMI. *See* Doc. 43-1 at 13-

16; Doc. 71 at 10 n.7.  The allegations in the Complaint about the treatment of people "with SPMI" includes all those who meet the criteria, regardless of whether they have been designated as SPMI by RIDOC.

Because the Magistrate Judge improperly dismissed a significant portion of DRRI's claims in the context of a discovery dispute and without the parties' consent to the Magistrate Judge hearing dispositive motions, the portion of the Order dismissing DRRI's claims on behalf of people with an SPMI who have not been so designated should be vacated.  If the Court does review it, this portion of the Order should be vacated, after a *de novo* review, because the Complaint adequately and explicitly sets out DRRI's claims brought on behalf of all persons with SPMI in RIDOC custody – designated or not.

## II.   THE ORDER'S ANALYSIS OF RELEVANCE IS CLEARLY ERRONEOUS AND CONTRARY TO LAW

### A.  For Discovery, a Requesting Party Need Only Show a Possibility of Relevance

Relevance under the Federal Rules of Civil Procedure "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Parker Waichman LLP v. Salas LC*, 328 F.R.D. 24, 26 (D.P.R. 2018) (relevancy is to be "broadly and liberally interpreted") (citing *Bennett v. La Pere*, 112 F.R.D. 136, 138 (D.R.I. 1986) and *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Further, pursuant to the rules of civil procedure, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc.*, 437 U.S. at 351; *see also Martin v. Evans*, No. 16-CV-11362-PBS, 2018 WL 10247394, at *1 (D. Mass. Feb. 6, 2018). "Rather, the question of relevancy should be construed 'liberally and with common sense' and

discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); *see* Doc. 43-1 at 8-10.

To establish relevance at the discovery stage in litigation, the party requesting information need only show that there is "any possibility" that requested information "might be relevant to the subject matter of the action." *E.E.O.C. v. Electro-Term, Inc*., 167 F.R.D. 344, 346 (D. Mass. 1996); *see also Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015)*, modified on other grounds on reconsideration*, 160 F. Supp. 3d 431 (D. Mass. 2016) (the scope of relevance in discovery is "decidedly broad". . . "encompass[ing] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) ("[r]elevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action." (emphasis in the original)); *see also Metro. Prop. & Cas. Ins. Co. v. Advanced Spine Centers, Inc.*, No. CV 1:07-CV-10746-RCL, 2009 WL 10692662, at *9 (D. Mass. Jan. 30, 2009); Doc. 57 at 3-4.

During the hearing on Plaintiffs' Motion, the Magistrate Judge questioned the continuing applicability of cases stating the standards for relevance prior to the 2015 Amendments to the Federal Rules of Civil Procedure.  Ex. B at 11:2-12:3.[6]  Courts in the First Circuit continue to apply the relevance standards set forth in cases from before the Amendments.  *See In re Porsche Automobil Holding SE*, 2020 WL 813710 at *2-3 (rejecting the argument that the relevance

---

[6] The Magistrate Judge did not identify in the order the standard she applied to determine relevance.  *See generally* Doc. 71.  However, it appears that she imposed a higher standard of relevance than the still applicable standards set forth in caselaw.  She acknowledges that "Plaintiffs challenge RIDOC's "mechanism of assessing prisoners' and detainees' mental health or other disability-related needs and designating them for placement in solitary confinement", but dismisses that allegation with the statement that it was "buried in Count III (ADA)" and that it did not "profoundly alter what this case is about."  *Id*. at 14.  Relevance does not require that an allegation figure prominently in a Complaint or that an allegation be of such a nature that it "profoundly alter[s]" what a case is about.  *See Oppenheimer Fund*, 437 U.S. at 351; *Parker Waichman LLP*, 328 F.R.D. at 26.

standards under *Oppenheimer* were no longer applicable); *Green*, 152 F. Supp. 3d at 34 (decided

December 31, 2015; the Amendments came into effect on December 1, 2015 (Fed. R. Civ. P. 26));

*Satanic Temple, Inc. v. City of Bos., MA*, No. 21-CV-10102-AK, 2022 WL 1028925, at *3 (D.

Mass. Apr. 6, 2022); *Fiorentine v. Sarton Puerto Rico, LLC* , Civ. No. 20-1491(GAG-GLS), 2021

WL 2070535, at *2 (D.P.R. May 20, 2021); *Martin*, 2018 WL 10247394 at *1.

### B.  The Order's Finding that Information about People with SPMI Is Irrelevant Is Clearly Erroneous and Contrary to Law

The Magistrate Judge's determination that information about people with an SPMI who

are not so designated by RIDOC is not relevant is both clearly erroneous and contrary to law.

#### 1.  Plaintiff DRRI explicitly brought claims "on behalf of individuals with SPMI", not just those designated as SPMI by RIDOC

As discussed in detail above in § I, Plaintiffs pled claims by Plaintiff DRRI on behalf of

people with SPMI, regardless of whether they have been so designated by RIDOC.  Because DRRI

brought claims on behalf of these people, information is relevant.  People with SPMI, without

limitation to those who were so designated by RIDOC, were referenced approximately *100 times*

in the Complaint.  Plaintiffs defined the class in terms of identification as SPMI by RIDOC, but

did not limit the allegations, claims or relief to only those people RIDOC had designated as SPMI.

Plaintiffs specifically stated that Plaintiff DRRI brought its claims "on behalf of individuals with

SPMI."  Because these people – people with SPMI, designated or not – are among the subjects of

the litigation, information about them and their experiences with solitary confinement and the use

of force are relevant.[7]  The Magistrate Judge clearly erred in finding that people with SPMI who

RIDOC has failed to identify are not part of this case and that information about them is not

relevant.

---

[7] In this case, discovery was not bifurcated between discovery for class certification and merits discovery.  All discovery is proceeding simultaneously.  *See* Text Order, July 1, 2020.

**2. Because evidence about people with SPMI would tend to strengthen or weaken Plaintiffs' claims, these individuals' experiences are relevant**

The Magistrate Judge's Order regarding the lack of relevance of information about people with an SPMI but not so designated is also contrary to law.

As discussed above, the Complaint is replete with allegations about the treatment of people with SPMI who have not been so designated by RIDOC. As recognized by the Magistrate Judge, information about the people on behalf of whom claims were made is "highly relevant." Doc. 71 at 16. Because claims were made on behalf of people with SPMI but not so designated, information about them is, according to the Magistrate Judge's own statement regarding relevance, "highly relevant." Nonetheless, the Magistrate Judge decided that only people who have been designated as SPMI by RIDOC are people with SPMI, and deemed all information "about non-SPMI prisoners and detainees" irrelevant. *Id*. at 14. Because "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" is relevant, the Magistrate Judge's ruling was contrary to law. *Oppenheimer Fund, Inc*, 437 U.S. at 351; *see also Parker Waichman LLP*, 328 F.R.D. at 26.

Beyond the question whether Plaintiffs adequately alleged claims on behalf of people with un-designated SPMI, the requested information is relevant to the issues the Magistrate Judge recognizes as part of the case: "RIDOC's alleged practice of using solitary confinement to punish and manage the behavior of individuals identified by RIDOC with SPMI." Doc. 71 at 5.

The documents at issue in the discovery dispute that are most germane to the distinction between people with SPMI and people designated as SPMI are the pharmacy invoices that include all the prescriptions in RIDOC, by patient, by month. *See, e.g.*, Doc. 44-5. Defendants redacted the names and, for some months, the RIDOC numbers of the people who are not designated as SPMI. Doc. 43-1 at 7. Many of the people whose identifying information is redacted have

prescriptions, from psychiatric providers, of psychiatric medications that generally only someone with a serious mental illness would be prescribed, such as antipsychotic medications. *See* Doc. 43-1 at 7; *see also* Doc. 44-5; Doc. 43-5 at ¶¶ 9-12; Doc. 43-10.   The primary purpose of these medications is to treat mental illness, and they are usually used to treat people with a serious mental illness.  Doc. 43-5 at ¶ 10.  It is rare for a psychiatric provider to prescribe psychiatric medications for off-label purposes.  *Id*. at ¶ 11.  Thus, many of the people receiving these medications will fall within the definition of SPMI, despite Defendants' failure to designate them as SPMI.  Doc. 43-1 at 16; Doc. 43-5 at ¶ 11. [8]

Even if people who RIDOC has not deemed to have an SPMI did not have claims brought by DRRI on their behalf, they would still be witnesses with material information concerning the mental health treatment of incarcerated persons and how it differs between general population and solitary confinement, how and why people are assessed for SPMI, and conditions in solitary confinement and how they impact people who have an SPMI.  Doc. 43-1 at 16-17.

Additionally, Plaintiffs alleged that Defendants discriminate against people with SPMI in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. Doc. 71 at 3-4; Doc. 1 at ¶¶ 109-123, To prove these claims, Plaintiffs will compare Defendants' use of solitary confinement for people with SPMI and the impact solitary confinement has on them

---

[8] In support of the motion, Plaintiffs submitted declarations from six individuals whose names had been redacted from the pharmacy invoices.  Doc. 44-10. According to Caitlin Bouchard, the Acting Clinical Director of Behavioral Health Services at RIDOC, one of the six people who submitted a declaration met the definition of SPMI and was so designated.  Doc. 54-2 at ¶¶ 1, 23-26; Doc. 57 at 9 n.12.  Ms. Bouchard also noted that another of the six was diagnosed with major depressive disorder – one of the disorders that RIDOC considers an SPMI – for which he is being treated with medication, thereby likely satisfying Defendants' definition of SPMI.  Doc. 54-2 at ¶¶ 33-38; Doc. 57 at 9 n.12. A third suffers auditory hallucinations and has been treated for such hallucinations with an antipsychotic medication since 2016. Doc. 54-2 at ¶¶ 18-22; Doc. 57 at 9 n.12; Ex. B at 44:10-20.  Suffering from hallucinations meets the DSM-5 definition of psychotic disorder, not otherwise specified, which is one of the disorders that may support a finding of SPMI at RIDOC.  Ex. B at 44:10-20; 57-2 at 1.  Although the SPMI definition specifically provides that the functional prong can be satisfied by reliance on medication to address a functional impairment, Ms. Bouchard states he is not SPMI because the medication he takes to treat the hallucinations appears to be effective, relieving him of the hallucinations.  Doc. 57-2 at 2; Doc. 54-2 at ¶ 20.

to Defendants' use of solitary confinement for people who do not have an SPMI and the impact solitary confinement has on them.  Doc. 57 at 5; Doc. 71 at 13.  Without knowledge of who may have an undesignated SPMI, Plaintiffs' ability to make these comparisons will be significantly hampered.

For example, Plaintiffs have alleged that Defendants overuse solitary confinement for people with SPMI.  Doc. 57 at 4-5; Doc. 1 at ¶ 149.  As discussed during the hearing, one way to look at that question would be to compare the amount of time people with an SPMI and people without an SPMI spend in solitary confinement.  To do this, one could find average times in solitary for people with an SPMI and for people without an SPMI.  If there are 100 people in solitary, of who 12 have been designated as SPMI, the comparison would be the average time for the 88 people not designated as SPMI versus the average time for the 12 people designated as SPMI.  If the 88 people not designated as SPMI spend, on average, 45 days in solitary, and the 12 people designated as SPMI spend, on average, 30 days in solitary, that would tend to show that people with SPMI are not being discriminated against in terms of the amount of time they're spending in solitary confinement.  But if it is possible to identify people with SPMI who have not been so designated – or even to use as a proxy people who are on antipsychotic medications – and they have a different average time, that could change both the average for people designated as SPMI and those not designated as SPMI.  For example, if there are 12 such people,[9] and they each spend an average of 90 days in solitary confinement, the average amount of time spent by people designated as SPMI and with an undesignated SPMI would be 60 days and the average for the people without a significant likelihood of SPMI would decrease to about 38 days.[10]  This would

---

[9] The evidence submitted by Plaintiffs suggests that RIDOC may fail to designate as SPMI half or more of the people in its custody who meet the criteria for SPMI.  *See* Doc. 43-1 at 14-15; Doc. 71 at 10 n.7.

[10] If 88 people have an average time of 45 days, but 12 of those people have an average of 90 days, the average of the remaining 76 people in the group decreases to approximately 38.  $((12 \times 90) + (76 \times 38))/88 = 45.09$.

tend to show that people with SPMI are being discriminated against in terms of the amount of time they spending in solitary confinement.  *See* Ex. B at 38:10-39:6.[11]  Information about these individuals is thus highly relevant to the claim by people designated as SPMI that Defendants overuse solitary confinement for people with SPMI.  Doc. 57 at 4-5.

Additionally, as discussed above, Plaintiffs alleged that Defendants' mechanism of assessing prisoners' and detainees' mental health or other disability-related needs and designating them for placement in solitary confinement perpetuates the overuse of solitary confinement, because "disability-related behaviors and failures to comply" are treated as a disciplinary or classification matter rather than as a mental health matter.  Doc. 1 at ¶ 149; Doc. 57 at 2-6; Doc. 71 at 14; Ex. B at 36:17-37:18.  There is no way to assess this allegation without considering people who have not been designated as SPMI: If the only people whose information is discoverable are those who RIDOC had designated as SPMI, the information produced will necessarily show that 100% of all people assessed for SPMI are so designated.

Also, the people who have an undesignated SPMI may, over time, be designated as SPMI. For example, Plaintiffs submitted a declaration a person whose name was redacted from the pharmacy invoices, presumably due to not having been designated as SPMI.  Doc. 44-10 at 5.  The person stated, and pharmacy invoices showed, that this individual was prescribed Olanzapine (an antipsychotic) and Lithium (a medication prescribed for bipolar disorder).  *Id*. Defendants informed the Court that this individual had been designated as SPMI on November 23, 2020, due to a diagnosis of bipolar disorder and a history of inpatient admissions and self-harming behaviors.

---

[11] Plaintiffs are not asserting that this is what the information will show about people with undesignated SPMI. Because this is a discovery dispute in which Plaintiffs are seeking to obtain information, Plaintiffs do not know what the information will show.  Rather, this example is given for the purpose of showing how the information about people with undesignated SPMI is relevant because it can alter the strength of Plaintiffs' case.

Doc. 54-2 at ¶ 23; Doc. 57 at 9 n.12; Ex. B at 42:1-9.[12]  Thus, according to the Magistrate Judge's reasoning, information about this individual was "highly relevant" as of November 23, 2020 (Doc. 71 at 16), but had no relevance as of November 22, 2020 because the person had not yet been designated as SPMI (*id*. at 14).  Defendants did not update their productions pharmacy invoices (or other documents) to remove the redactions of this person's identifying information.  Ex. B at 42:1-16.  Similarly, Plaintiff Liberty was sent to disciplinary confinement in February 2019 for self-harm, three months prior to being designated as SPMI after additional incidents of self-harm.  Ex. B at 41:10-25.  According to the Magistrate Judge's reasoning, were she not an Individual Plaintiff, information about her in February 2019 would be irrelevant, as would other information about self-harm and solitary confinement leading up to her designation as SPMI in May 2019, but once the designation was made, the information becomes highly relevant.  Doc. 71 at 14, 16.[13]  But, if these people, like Plaintiff Liberty, spend time in restrictive housing in the months leading up to their designation as SPMI, information about them during these months is relevant to claims that Defendants respond to symptoms of mental illness primarily as a disciplinary matter.  *See* Doc. 1 at ¶¶ 81, 86, 109-122, 149; Doc. 57 at 2-3 n.2.

Plaintiffs have gone well beyond the requirement of showing that there is "any possibility" that information about people who suffer from an SPMI but have not been so designated by the RIDOC "might be relevant to the subject matter of the action."  *E.E.O.C.*, 167 F.R.D. at 346. Plaintiffs have articulated numerous ways that the information is relevant.  The ruling that information about these individuals is not relevant is contrary to law.

### C.  The Order's Relevance Analysis of Other Matters Is Also Contrary to Law

---

[12] The Magistrate Judge erroneously stated that Defendants said that all of the people who submitted declarations were not designated as SPMI.  Doc. 71 at 8.

[13] The Magistrate Judge did not indicate whether documents of a person who is designated as SPMI that were created prior to that designation are relevant.

The Magistrate Judge ruled that "[b]ased on the scope of the claims in the Complaint and the defenses in the Amended Answer, as well as what is proportional to the needs of this action, the Court finds that individualized identifying information, health care and mental health information, use of force reports and other potentially intensely personal information (such as matters that impact institutional safety and security, like gang affiliation, or that relate to potentially criminal conduct, like drug trafficking) about non-SPMI prisoners and detainees is not relevant."  Doc. 71 at 14.  With regard to the identities of staff and other incarcerated people involved in or witness to uses of force against the Individual Plaintiffs or other people with SPMI in solitary confinement, the Magistrate Judge ruled that these names were "marginally relevant." *Id*. at 15.

This ruling reflects a cramped definition of relevance and does not engage in any way with the discovery dispute before the Court.  Each aspect of this ruling is addressed in turn.

**1. Identifying information in the Restrictive Housing Reports is relevant for identifying people who may have an SPMI and are in restrictive housing, for comparing the circumstances of people with SPMI and people without SPMI in restrictive housing, and for identifying witnesses**

As recognized by the Magistrate Judge, information about who is and is not in solitary confinement at any given time, and details about why they are there and for how long are all relevant to the determination of whether Defendants overuse solitary confinement on people with SPMI.  Doc. 43-1 at 18-19; Doc. 57 at 5; Doc. 71 at 16.[14]

---

[14] The Magistrate Judge stated that "Defendants have largely produced the non-identifying information from the restrictive housing reports that will permit Plaintiffs to compare the number of instances, the duration of each instance and the reason for each instance when restrictive housing is used for non-SPMI prisoners/detainees by comparison with the same data for those with SPMI."  Doc. 71 at 16.  This is not accurate.  Many of the monthly restrictive housing reports were, with the exception of two months, filtered to exclude most information about people who have not been designated as SPMI, resulting in a document that does not even identify how many individuals were in restrictive housing during the reported month.  Doc. 43-1 at 6-7; *compare* Doc. 44-2 (report with most information about people not designated as SPMI redacted) *and* Doc. 44-1 (report filtered to remove all mention of people not designated as SPMI) *with* Doc. 44-3 (report with all people in restrictive housing).  Nonetheless, the Magistrate Judge ordered Defendants to produce all of the information about people in restrictive housing other than the individualized

Identifying information is necessary to track people from one document to another.  For example, if a person is listed in the pharmacy invoices as being prescribed an antipsychotic medication by a psychiatric provider, that may be a person who has an undesignated SPMI.  *See supra* at § II.B.2.  If the person is also included in the restrictive housing reports, DRRI brought claims on behalf of that person in this lawsuit and the information about their experiences with solitary confinement and the use of force is directly relevant to the allegations in the case.  To know whether a person meets both of those criteria, identifying information is needed in both types of documents.

Also, individuals listed in the restrictive housing reports are people who have experienced solitary confinement in RIDOC.  Each one of them is a potential witness who can, as a result of living in solitary confinement, provide evidence about the conditions in solitary confinement, the circumstances faced by incarcerated people who are mentally ill in solitary confinement, the use of force in solitary confinement, and the reasons for and duration of placements into solitary confinement, regardless of whether an individual has an SPMI.  Identifying witnesses is an appropriate avenue of discovery.  *See, e.g., Roger Edwards, LLC v. Fiddes & Son, Ltd*., 216 F.R.D. 18, 20-21 (D. Me. 2003) (granting a motion to exclude testimony of witnesses because they had not been disclosed in response to discovery requests); *see also* Fed. R. Civ. P. 26(a)(1).

Because Plaintiffs have demonstrated that the identifying information of people in solitary confinement has a bearing on the issues in the case, this information is relevant. *E.E.O.C.*, 167

---

identifying information.  Doc. 71 at 16.  The only aspect of this part of the Magistrate Judge's ruling to which Plaintiffs object is the order that identifying information can remain redacted.

Because the redactions of the restrictive housing reports removed all or nearly all information about people in restrictive housing who were not designated as SPMI, the briefing focused more generally on information about the people, as opposed to specifically about identifying information.

F.R.D. at 346.  The ruling that identifying information of people without an SPMI in solitary confinement is not relevant is contrary to law.

>   **2.  Mental health information, including identifying information, is relevant for identifying people who may have an SPMI, tracking them across different types of documents, and for comparing the circumstances leading to solitary confinement of people with and without SPMI**

The health care and mental health information at issue in the discovery dispute are the prescription lists in the pharmacy invoices, discussions of specific individuals in meeting minutes, and potentially a small number of records of medical checks following a use of force included with the use of force reports.  The relevance of the mental health information in the pharmacy invoices is discussed above in § II.B.2.[15]

The discussions of specific individuals in meeting minutes is also relevant in that they are discussions about the mental health of people in restrictive housing.[16]  Given the subject of the meeting minutes, it is highly likely that some of the redacted discussions relate to people who are in restrictive housing and have an SPMI but have not been so designated, as staff are discussing people whose mental health is of concern.  *See* Doc. 43-1 at 20; Doc. 57 at 3.  Only with the removal of redactions from both the pharmacy invoices and the minutes can Plaintiffs determine this.  Further, these redacted discussions will shed light on how mental health is being considered in the placing or maintaining of people in solitary confinement.  *Id*. If the consideration of mental health is greater for people with an SPMI, that would tend to weaken Plaintiffs' claims about the overuse of solitary confinement for people with an SPMI.  On the other hand, if the consideration

---

[15] Plaintiffs do not object to the redaction of names of people who are not prescribed psychiatric medications by a psychiatric provider from the pharmacy invoices.

[16] Request No. 12 seeks: "All minutes from meetings attended by health care staff, and any other meetings at which the mental health care of RIDOC prisoners in restrictive housing, mental health care policies and procedures in restrictive housing, health care staffing in restrictive housing, or any issue related to mental health care in restrictive housing was discussed."  Doc. 43-1 at 3.

of mental health is exactly the same for people with SPMI and those without when discussing placement into solitary confinement, this could strengthen Plaintiffs' claims, as the impact of solitary on people with an SPMI is so great.  *See* Doc. 1 at ¶ 97.

Finally, with regard to small number of the health records included in the use of force reports, these documents are relevant to the allegations that about the excessive use of force on people with SPMI in restrictive housing.  *See* Doc. 43-1 at 21; Doc. 1 at ¶¶ 84-86, 119.  Unredacted records of medical checks following the use of force are relevant to the comparisons between uses of force on those with SPMI and those without SPMI, as they will reveal whether there is different level of physical harm suffered by those two groups.  *See* Doc. 43-1 at 22.

Because Plaintiffs have demonstrated that the health care information included in the redacted documents has bearing on the issues in the case, this information is relevant. *E.E.O.C.*, 167 F.R.D. at 346.  The ruling that this information is not relevant is contrary to law.

### 3. The names of staff members and incarcerated people who have not been designated as SPMI in use of force reports from restrictive housing are relevant for identifying witnesses.

Plaintiffs have alleged that Defendants have a pattern of using force as a first resort in reaction to what is often disability-related behavior on the part of prisoners and detainees with SPMI in the solitary confinement units.  Doc. 43-1 at 21-22; Doc. 1 at ¶¶ 84-86.  The use of force reports, as written, indicate what staff members were involved in or witnessed uses of force, but Defendants have redacted staff names from the reports.  The names of RIDOC personnel contained within the use of force reports are relevant because they are witnesses to the events that are among the allegations of the Complaint.  Doc. 43-1 at 22.  If identified, these individuals can be deposed to seek greater understanding of the circumstances relating to uses of force in solitary confinement,

and whether there are differences in those circumstances, depending on the mental health status of the incarcerated person who is the subject of the use of force.[17]

The Magistrate Judge's Order also permits Defendants to maintain the redactions of the names of incarcerated people who were not the targets of the uses of force or who are not designated as SPMI from use of force reports. Doc. 71 at 17. These people are mentioned in the use of force reports because they are witnesses to the use of force (whether or not they are also the targets of the use of force). If identified, they can describe the circumstances of the use of force.

Because Plaintiffs have demonstrated that the names of staff and of incarcerated people who are not designated as SPMI or the targets of uses of force included in the redacted documents has bearing on the issues in the case, this information is relevant. *E.E.O.C.*, 167 F.R.D. at 346. The ruling that this information is not relevant is contrary to law.

> **4. The Order's reference to "other potentially intensely personal information"**
> **is extraneous to any of the issues in dispute.**

The Magistrate Judge ruled that "other potentially intensely personal information (such as matters that impact institutional safety and security, like gang affiliation, or that relate to potentially criminal conduct, like drug trafficking) about non-SPMI prisoners and detainees is not relevant." Doc. 71 at 14; *see also id*. at 16. Plaintiffs previously stated that they are not seeking the production of gang affiliation or social security numbers. Doc. 57 at 10 n.13. None of the briefs by any of the parties, and no argument made during the hearing, mentioned criminal activity generally or drug trafficking. *See generally* Docs. 43-1, 53-1, 57; Ex. B. This statement is untethered to any facts in dispute and should be disregarded.

---

[17] The Magistrate Judge's order notes that Plaintiffs can request the identification of people involved in or witness to particular uses of force. Doc. 71 at 15. But, if Plaintiffs have no way of knowing whether the same officer is involved in multiple uses of force, there would be little value in seeking the name of the officer for one use of force. Further, Plaintiffs would not be able to properly prepare for the deposition because they would not know which uses of force to examine with the deponent. To reasonably identify which officers Plaintiffs would want to depose and to prepare for any such deposition would require having knowledge about which officers are involved in which incidents.

### III.    THE ORDER'S ANALYSIS OF THE PROPRIETY OF REDACTIONS IS CONTRARY TO LAW

Based on a combination of the erroneous rulings regarding relevance, generalities about "potentially intensely personal information," "emotionally fraught events," and "substantial privacy considerations", assertions of institutional safety and security concerns, and proportionality, the Magistrate Judge ruled that the following redactions were permissible:

1. Meeting minutes – all material related to "non-SPMI prisoners/detainee";

2. Restrictive housing reports – all identifying information of non-SPMI[18];

3. Use of force reports – all identifying information and healthcare information about incarcerated people other than the Individual Plaintiffs or persons designated SPMI and about staff; and

4. Pharmacy invoices – all identifying information about any incarcerated person other than the Individual Plaintiffs or persons designated SPMI.

Doc. 71 at 16-17.

"If there is some legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable—at least in the absence of some countervailing consideration, *e.g.*, that production would be disproportionately onerous or burdensome, that unfair prejudice would result, or the like." *Parker Waichman LLP*, 328 F.R.D. at 26.   As discussed below, Defendants have failed to demonstrate that the confidentiality concerns warrant redaction, and have not even raised security concerns or proportionality as a basis for the redactions.  Because the redacted information is relevant and not privileged, and Defendants have not demonstrated that

---

[18] The Magistrate Judge's order was unclear as to whether Defendants could maintain the redaction of the reasons people without an SPMI were in solitary confinement.  As discussed above in footnote 14, in the body of the order, the Magistrate Judge stated that information that "will permit Plaintiffs to compare … the reason for each instance when restrictive housing is used for non-SPMI prisoners/detainees by comparison with the same data for those with SPMI" should be produced.  Doc. 71 at 16.  However, in the statement at the end of the order setting out what portions of the motion to compel were being granted, with regard to the restrictive housing reports, the Magistrate Judge ordered Defendants to produce "information sufficient to calculate the number of instances and the duration of each instance of the use of restrictive housing pertaining to prisoners/detainees who are not SPMI", dropping the mention of the ability to compare reasons for placements into restrictive housing.  Doc. 71 at 16.

there are countervailing considerations, the rulings on the propriety of redactions are contrary to law. And because the Magistrate Judge explicitly relied on the combination of the relevance, confidentiality, security and proportionality, without any explanation as to how the four bases contribute to the finding, the ruling allowing the redactions should not stand if even one of these bases is found to be erroneous or contrary to law.

## A. Responsive Documents Should Be Produced in Full Unless There Is a Basis in Federal Law for Redacting

In general, the Federal Rules of Civil Procedure require that relevant, non-privileged documents requested in discovery that are proportional to the needs of the case should be produced in the manner in which they are kept in the usual course of business. Doc. 43-1 at 23; Fed. R. Civ. P. 26(b)(1), 34(b)(2)(E); *Bonnell v. Carnival Corp.*, No. 13-22265-CIV-WILLIAMS/GOODMAN, 2014 WL 10979823, at *3 (S.D. Fla. Jan. 31, 2014). Courts have noted in disputes over redactions that "Fed. R. Civ. P. 34 concerns the discovery of 'documents'; it does not concern the discovery of individual pictures, graphics, paragraphs, sentences, or words within those documents." *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451-52 (D. Minn. 2011); *Bonnell,* 2014 WL 10979823, at *2–4; *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2011 WL 13078603, at *7-8 (S.D. Ohio Aug. 8, 2011); *ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-00362, 2010 WL 5230862, at *3-4 (N.D. Ohio Dec. 16, 2010); *see also Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555m 2008 WL 4462301, at *1-2 (W.D. Pa. Sept. 30, 2008) (finding that there is no express or implied support in the Federal Rules of Civil Procedure for a process whereby "a party would scrub responsive documents of non-responsive information.").

A party should not unilaterally redact information it believes to be irrelevant. Doc. 43-1 at 23-24; *Bartholomew*, 278 F.R.D. at 451-52 ("Redaction is an inappropriate tool for excluding

alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information."); *Sexual Minorities of Uganda v. Lively*, No. 3:12-30051-MAP, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015) ("Redaction of documents that are responsive and contain some relevant information should be limited to redactions of privileged information when, as in this case, there is a protective order restricting the use and dissemination of other sensitive information."); *Hasbro, Inc. v. Mikohn Gaming Corp.*, C.A. No. 05-106 ML, 2006 WL 8456748, at *1 (D.R.I. Mar. 30, 2006) ("The substantial redactions are based solely on relevancy grounds. However, courts have generally not been receptive to the practice of unilateral document redactions on the basis of relevancy objections."); *HR Technology, Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2011 WL 836734, *3 (D. Kan. Mar. 4, 2011) ("a party may not redact non-responsive portions from a document that is otherwise responsive."); *United States v. Davis*, No. 85 Civ. 6090, 1988 WL 96843, at *2-3 (S.D.N.Y. Sept. 13, 1988) (unilateral redaction of documents on relevance grounds "unfairly" deprived requesting party of its discovery rights).

Notably, the Federal Rules of Civil Procedure provide guidance on the redaction of purportedly irrelevant portions of responsive, relevant documents. Doc. 43-1 at 24; *see* Fed. R. Civ. P. 5.2, 26, 34. Rule 5.2 provides specific, precise rules about what should be redacted in court filings. Fed. R. Civ. P. 5.2(a). Rule 26 allows privileged information to be withheld from production, but requires that any such withholding be based on an express claim of privilege and that the information be described in such a manner that the claim of privilege can be assessed. Fed. R. Civ. P. 26(b)(1), 26(b)(5)(A); *see also* Fed. R. Civ. P. 34 (allowing requests "within the scope of Rule 26(b)). Courts considering the Federal Rules of Civil Procedure in the context of a

dispute over redactions have found that the Rules do not allow for redaction on relevance grounds. Doc. 43-1 at 23-26; *see Bartholomew*, 278 F.R.D. at 451-52 (analyzing distinction between Rule 5.2 and Rule 34, and deciding that Rule 34 does not permit redaction on relevance grounds); *Evon v. Law Offices of Sidney Mickell*, Civ. No. S-0900760 JAM GGH, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) ("Redaction is, after all, an alteration of potential evidence. The Federal Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ. P. 5.2. Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case."); *Bonnell*, 2014 WL 10979823 at *3 ("Rule 34 requires documents to be produced in a form or forms in which they are ordinarily maintained") *ArcelorMittal Cleveland Inc.*, 2010 WL 5230862, at *3 (finding that Rule 34 does not permit redactions based on relevance grounds).  As explained by one court, Rule 34(a) "permits a party to request that its adversary produce and permit the requesting party to inspect [any responsive documents] in the responding party's possession custody or control[.] … In turn, the responding party may state that it will produce copies of documents...instead of permitting inspection." *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12-CV-00787 (FLW)(LHG), 2017 WL 3624262, at *2-4 (D.N.J. Apr. 26, 2017), *report and recommendation adopted*, No. CV 12787 (FLW)(LHG), 2017 WL 3668391 (D.N.J. Aug. 23, 2017) (citing and Fed. R. Civ. P. 34(b)(2)(B)). The court continued: "The language of the rule plainly intimates that the copy of the document produced would be identical to the document to be inspected. If portions of a document produced did not contain the same content as the document had it been inspected, then it would not be a true copy, and would defeat the purpose of an inspection." *Id*.

The Restrictive Housing Reports, Pharmacy Invoices, Meeting Minutes, and Use of Force reports are responsive to Plaintiffs' discovery requests, which is why the Defendants produced them.[19] Defendants have not shown that any of the information they redacted is in any way privileged,[20] and the Magistrate Judge did not find any of the information to be subject to any privilege. *See generally* Doc. 71. Thus, even to the extent some of the information Defendants redacted is irrelevant—which it is not, as set forth in detail above and in Plaintiffs' Motion—Defendants' unilateral redaction of non-privileged, purportedly irrelevant information contained within responsive documents on the grounds of irrelevancy is improper. *See Sexual Minorities of Uganda*, 2015 WL 4750931 at *4; *Hasbro, Inc.*, 2006 WL 8456748 at *1. Additionally, the redactions deny the full context, resulting in incomplete information and raises suspicions, particularly here, where there is evidence of conflicting information and failure of Defendants to properly designate individuals with SPMI. *See In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, Nos. 08 md 1945(RJH)(DFE), 08 Civ. 0333(RJH)(DFE), 2009 WL 1026013, at

---

[19] Defendants argued that they redacted non-responsive information from otherwise responsive documents. Doc. 53-1 at 6, 13-17. For example, the restrictive housing reports and pharmacy invoices were produced in response to requests seeking only documents sufficient to show the total number of people in restrictive housing and prescribed medications, respectively. Doc. 43-1 at 3; Doc. 53-1 at 17. The Magistrate Judge noted this as well and criticized Plaintiffs' "failure to ask for [the prescription lists]" directly. Doc. 71 at 7. The Magistrate Judge's criticism is not well taken, as Plaintiffs had no knowledge of what documents Defendants had, and were attempting to keep the requests as narrow as possible, while asking for the necessary information. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that at the beginning of discovery "[a] party requesting discovery, for example, may have little information about the burden or expense of responding"). Plaintiffs are merely asking that the responsive documents be produced as they are kept in the usual course of business. *See* Fed. R. Civ. P. 34(b)(2)(E)(i). Further, Defendants had the choice of what documents in their possession would be sufficient to show the requested information. If they had documents that were sufficient to accurately show the requested information, without including names, they could have produced such documents, and there would be no dispute. *See* Doc. 57 at 6 n.7.

There are no rulings in the Magistrate Judge's order that appear to be based on the argument that the redacted information was not responsive.

[20] Defendants assert that they redacted "privileged and confidential health care information about the individuals receiving psychotropic and other medications." Doc. 53-1 at 17. They have not identified what privilege applies. *See generally* Doc. 53-1. To the extent they are describing protection under the Health Insurance Portability and Accountability Act ("HIPAA") as a privilege exempting this information from discovery, they are incorrect. As discussed in greater detail below, where, as here, there is a HIPAA-qualified protective order in place, HIPAA does not preclude discovery. 45 C.F.R. 164.512(e)(1)(ii).

*1 (S.D.N.Y. Apr. 8, 2009) (stating that "[relevance-related] redactions are generally unwise. They breed suspicions, and they may deprive the reader of context.").

Of all the cases cited above and in Plaintiffs' brief (Doc. 43-1 at 23-26) to support Plaintiffs' argument that redaction of purportedly irrelevant material from otherwise relevant documents is improper, the Magistrate Judge considered only *Hasbro*, 2006 WL 8456748. She found it inapplicable to the issues before the Court because it was – as stated in Plaintiffs' brief (Doc. 43-1 at 24) – about redactions solely on the basis of relevance. Doc. 71 at 12-13. She found that that all of the redactions at issues were redacted for lack of relevance and an additional reason, namely privacy, security, or both. *Id.* at 12-13. However, in *Hasbro*, the court addressed what would happen if the purportedly irrelevant material was also confidential: the producing party had to produce it, but could designate the document as confidential under the protective order in the case. *Hasbro*, 2006 WL 8456748 at *2.

The propriety of redacting for stated and justified privacy and security objections are discussed below. However, many of the redactions the Magistrate Judge allowed were not justified by privacy and security objections, meaning that they were indeed, solely on the basis of relevance. Permitting such redactions to remain is contrary to law.

Additionally, the Magistrate Judge explained that she would not "adopt" the approach set forth in the caselaw cited by Plaintiffs that, where there is a protective order, redactions should be limited to privileged information. Doc. 71 at 12. In support of her rejection of this caselaw, the Magistrate Judge stated that the District of Rhode Island "has routinely permitted redactions of irrelevant or marginally relevant material as long as there is a reason beyond mere irrelevancy to justify the redaction." Doc. 71 at 12. For this statement, she cited to a single case, a *pro se* case brought by an incarcerated person who sought the production of policies that "would allow an

inmate to more easily circumvent security procedures." *Walker v. Wall*, No. C.A. No. 10-178 S, 2010 WL 4903825, at *2 (D.R.I. Nov. 24, 2010)[21]; Doc. 71 at 12.   However, there was no protective order in *Walker*. *Id*.   Moreover, because it was a *pro se* case, there was no way to limit the disclosure to attorneys only, as there is here. *Id*.; *see also* Doc. 30.   The Magistrate Judge quoted language from *Walker* that "[t]he First Circuit, encouraging the accommodation of the competing interests inherent in discovery disagreements regarding sensitive information, has instructed courts to utilize mechanisms such as redaction or protective orders in ruling on motions to compel." Doc. 71 at 12.   The two in-Circuit cases cited in *Walker* for this proposition were cases in which the court found that the redacted information was privileged. *Walker*, 2010 WL 4903825 at *2; *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984); *Farry v. City of Pawtucket*, No. C.A. No. 08-325S, 2009 WL 792900, at *1 (D.R.I. Mar. 24, 2009).

The only other case cited by the Magistrate Judge in support for her rejection of the caselaw that, where there is a protective order, only privileged information should be redacted was *McEvoy v. Hillsborough Cty.*, Civ. No. 09-cv-431-SM, 2011 WL 1813014 (D.N.H. May 5, 2011), motion for reconsideration on other grounds granted in part and denied in part, No. 09-cv-431-SM, ECF No. 45 (D.N.H. May 31, 2011). *McEvoy* is another case where there was no protective order. Doc. 71 at 12; *McEvoy*, 2011 WL 1813014 at *3, *6 n.4; Doc. 57 at 7.   Moreover, the *McEvoy* court ordered the defendants to create a numbering system whereby "[e]ach inmate for whom a record is provided is to be identified by a number assigned by defendant prior to production", thereby allowing the tracking of people across documents. *McEvoy*, 2011 WL 1813014 at *10.   Finally, the private information sought – and ordered produced without a protective order – was far more intrusive than the information at issue here.   In that case, the court ordered defendants to produce

---

[21] *Walker* was not cited by either party in the briefing on the motion.

the complete medical records of every incarcerated person who had been treated in the defendants' county jail for "drug detoxification and withdrawal …, and/or (2) dehydration" during a one-year period. *Id*. Here, the most intrusive information sought are invoices from a pharmacy and minutes of meetings attended by correctional and mental health staff.

The cases cited by the Magistrate Judge do not support her rejection of the substantial body of caselaw holding that, where there is a protective order, redactions should be limited to privileged material. Her ruling is contrary to law.

### B. Federal Law Specifically Allows Production of Medical Information in Litigation Under a Protective Order

Some of the information that has been redacted is protected health information. This includes the names of the people prescribed various medications in the pharmacy invoices, presumably some of the information in the meeting minutes, and the documents reflecting medical checks following a use of force in the use of force documentation. Doc. 43-1 at 30.

Medical information is statutorily protected in federal law. *See* Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 (1996). But the implementing regulations for HIPAA address the various circumstances under which information protected by HIPAA can be disclosed. *See* 45 C.F.R. §§ 164.502, 164.504, 164.506, 164.508, 164.510, 164.512, 164.514; Doc. 43-1 at 27. In the context of litigation, protected health information can be disclosed, without notice to the individual whose information is the subject of the request, pursuant to court order or in response to a discovery request if there is a HIPAA-qualified protective order in place. 45 C.F.R. § 164.512(e)(1)(ii)(B)[22]; Doc. 43-1 at 27; Ex. B at 52:14-53:9.

---

[22] The regulation requires that the party from whom information is requested receives "satisfactory assurance" that the requesting party has made "reasonable efforts … to secure a qualified protective order." 45 C.F.R. § 164.512(e)(1)(ii)(B). Satisfactory assurance includes "a written statement and accompanying documentation

To satisfy the requirements of the HIPAA implementing regulations, a protective order must:

> (A) Prohibit[ ] the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Require[ ] the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(1)(v). The existing protective order meets these two requirements. Doc. 30; *see* Doc. 43-1 at 30-31; Ex. B at 52:21-53:9.

The Magistrate Judge acknowledged that the protective order would allow her to order the removal of the redactions, but found that it did not require her to do so.  Doc. 71 at 13 n.8. This ruling is contrary to law.  The provision allowing for disclosure of protected health information pursuant to court order has no bearing on this issue here, as it does not contemplate the existence of a protective order. *See* 45 C.F.R. § 164.512(e)(1)(i).  The relevant section of the regulation is 45 C.F.R. § 164.512(e)(1)(ii), which provides for disclosure in response to a discovery request – without mention of any requirement of a court order – where there is a HIPAA-qualified protective order.

The Federal Rules of Civil Procedure regarding discovery "contemplate that discovery will proceed without judicial intervention unless a party moves for a protective order under Rule 26(c) or an order compelling discovery under Rule 37(a)." *Oppenheimer Fund, Inc.*, 437 U.S.  at 357 n.24.   Under this framework, a party resisting discovery has an obligation to provide requested documents unless there is an appropriate objection.  *See* Fed. R. Civ. P. 34.  The party resisting

---

demonstrating that [ t]he parties to the dispute … have agreed to a qualified protective order and have presented it to the court [ ] with jurisdiction over the dispute."  45 C.F.R. § 164.512(e)(1)(iv)(A).  Here, the protective order has been presented to the Court and entered.  Doc. 30.

discovery has the burden to justify withholding requested information. *See BPP Retail Properties, LLC v. N. Am. Roofing Services, Inc*., 300 F.R.D. 59, 61 (D.P.R. 2014); Doc. 57 at 6, 9.  In other words, responsive information should be produced unless there is a specific, articulated reason why it should not be.   Defendants objected to producing health information about anyone other than the Individual Plaintiffs, citing mostly inapplicable statutes, policies, and standards of private companies, without in any way explaining the import of any of the citations.  Doc. 53-1 at 7. Defendants did not dispute that the protective order satisfies the requirements of the HIPAA implementing regulations.  *See generally* Doc. 53-1. Plaintiffs addressed the legal effect of having a protective order, and the inapplicability of the various authorities cited by Defendants.   Doc. 43-1 at 26-32; Doc. 57 at 7; Ex. B at 52:16-55:7.  The Magistrate Judge, in ruling that the redactions could stand, did not cite to HIPAA, its implementing regulations, or any of the other cited authorities.  *See generally* Doc. 71. Because the objections to the production of health information are – according to the plain language of the regulations for the federal statute that protects health information – fully resolved by the existence of the protective order, the information should have been produced in the first instance and, on the motion to compel, the Magistrate Judge should have ordered it produced pursuant to 45 C.F.R. § 164.512(e)(1)(ii)(B).

### C. Federal Law Does Not Allow for the Redaction of Sensitive but Non-Privileged Information on Relevance Grounds

Based in part on the erroneous ruling that the information Defendants' redacted was irrelevant or only "marginally relevant" (*see supra* §§ II.B.2, II.C), the Magistrate Judge ruled that the information could be redacted because it was "sensitive" (Doc. 71 at 14), "private and personal, [ ] much of it intensely so" (*id*. at 13), or related to "emotionally fraught" events (*id*. at 15).   Doc. 71 at 16. There is no basis in federal law for finding that non-privileged but sensitive, private or "emotionally fraught" information is not discoverable, particularly where there is a protective

order in place.  Doc. 43-1 at 23-32; *see also Sexual Minorities of Uganda*, 2015 WL 4750931 at *4.

In *Sexual Minorities of Uganda*, the court considered a motion to compel unredacted documents from the plaintiff, "an umbrella organization based in Kampala, Uganda, which represents the interests of its member organizations in advocating for the rights of lesbian, gay, bisexual, transgender, and intersex individuals ("LGBTI individuals") in Uganda." *Sexual Minorities of Uganda*, 2015 WL 4750931 at *1.  The plaintiff had alleged that the defendant had, among other things, committed crimes against humanity against sexual minorities in Uganda.  *Id*. The court noted that it was "uncontroverted that on past occasions, revelation of the identity of LGBTI individuals in Uganda has exposed these individuals to economic reprisal, threat of physical coercion and arrest, and other manifestations of public and official hostility."  *Id*. at *4 (internal quotations and alterations omitted).  The court also noted that the Ugandan legislature had enacted "the Ugandan Anti-Homosexuality Bill that … criminalized advocating for the rights of LGBTI individuals" and that "same sex relations have been criminalized" in Uganda  *Id*. at *3.[23] The plaintiff had redacted information, including "personal data" from its production.  *Id*. at *2-4.  The court recognized that, through the redactions, the plaintiff sought "to protect individuals from the type of danger and retribution it assert[ed] Defendant promoted in Uganda." *Id*. at *3. The information at issue was, without question, sensitive, intensely private, and emotionally fraught.  Yet the court found that "[r]edaction of documents that are responsive and contain some relevant information should be limited to redactions of privileged information when, as in this

---

[23] The court noted that the Ugandan Anti-Homosexuality Bill was annulled on technical grounds.  *Id*.

case, there is a protective order restricting the use and dissemination of other sensitive information."   *Id*. at *4[24]; Doc. 43-1 at 23-24.

Many other cases have similarly rejected the notion that a party can avoid disclosure by objecting on the basis of privacy when there is a protective order in place.  Doc. 43-1 at 26-28; *Diaz-Garcia v. Surillo-Ruiz*, 45 F. Supp. 3d 163, 168-69 (D.P.R. 2014) (finding that the protective order was sufficient to safeguard employees' privacy rights relating to the production of personnel files, and order production without redaction); *Wallace v. Pharma Medica Rsch., Inc.*, No. 4:18cv01859 PLC, 2021 WL 22593, at *4-6 (E.D. Mo. Jan. 4, 2021) (finding that the protective order provided sufficient protection for medical "records and reports relating to other study participants testing positive for hepatitis C" and ordering that the documents be re-produced without redaction); *Cooks v. Town of Southampton*, No. 13-3460 (LDW)(AKT), 2015 WL 1476672, at *10 (E.D.N.Y. March 31, 2015) (denying a motion seeking authorization to withhold medical information because there was a protective order already in place); *Garrity v. Thompson*, 81 F.R.D. 633, 636-37 (D.N.H. 1979) (granting plaintiffs access to the medical records of residents of a state school for persons with developmental disabilities, and ordering that access to the records be limited to the named plaintiffs and attorneys for all parties); *Kallas v. Carnival Corp.*, No. 06-20115-CIV, 2007 WL 2819385 at *2 (S.D. Fla. Sept. 25, 2007) (ordering disclosure of the names and contact information of non-plaintiffs who contracted an illness and production of unredacted "Gastrointestinal Illness Surveillance Logs and Questionnaires" because such information was relevant, the persons might be witnesses, and the plaintiff had agreed to the entry of a HIPAA-compliant protective order); *G.D. v. Riley*, No. 2:05-CV-980, 2007 WL 2206559, at *3-4 (S.D. Ohio July 30, 2007) (granting the Protection and Advocacy organization access to HIPAA-

---

[24] Notably, the court also found that the resisting party, there the plaintiff, "espoused an unduly narrow view of relevancy".  *Id.*

protected information of potential class members, subject to a protective order); *VanValkenburg v. Or. Dep't of Corrections*, No. 3:14–cv–00916–BR, 2015 WL 421426, at *2-4 (D. Or. Feb. 2, 2015) (allowing plaintiff in an ADA case to discover protected information about accommodation requests from other incarcerated people in an action for violating federal and state anti-discrimination laws due to a protective order, noting that specific documents may be subject to privilege); *see also Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 72-73 (S.D.N.Y. 2010) (ordering entry of a protective order to address the privacy concerns raised by production of personnel files); *ArcelorMittal Cleveland Inc.*, 2010 WL 5230862 at *3-4 (ordering production of unredacted versions of non-privileged but confidential information with a designation of "Attorneys' Eyes Only").

Due to the complete failure to address the substantial body of law finding that non-privileged but confidential information is discoverable when there is a protective order in place, the Magistrate Judge's ruling that non-privileged but confidential information is not discoverable is contrary to law.[25]

Finally, for two of the categories of redacted information, the Magistrate Judge's order is contrary to law in that she failed to apply the law regarding who carries the burden in a discovery dispute. With regard to the identifying information of people on the restrictive housing reports, Defendants assert that "confidential and personal information [was] redacted." *See* Doc. 53-1 at 14. They do not provide any explanation at all as to why the fact that a person is in restrictive housing is "confidential and personal information." *See id*. at 13-16 *and generally*. Similarly,

---

[25] Plaintiffs' position is not dependent on there being no situation in a protective order would be inadequate to protect privacy interests. *Cf.* Doc. 71 at 10. Here, Plaintiffs presented substantial caselaw, from the First Circuit and throughout the country, showing that the redacted information at issue is squarely within the norm of what is produced routinely and pursuant to court orders, subject to a protective order. Doc. 43-1 at 26-32. The Magistrate Judge's order disregarded – and is contrary to – all of this caselaw.

with regard to the identifying information about staff and non-SPMI incarcerated people in use of force reports, Defendants assert that this information is "personal and private information" without any further elaboration.  *See* Doc. 53-1 at 22-23 *and generally*.

Defendants, as the party resisting discovery, bear the burden of justifying, "with specificity", their objections.  Doc. 57 at 6; Fed. R. Civ. P. 34(b)(2)(B); *Torres v. Johnson & Johnson*, No. CV 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018); *see also Aronstein v. Massachusetts Mut. Life Ins. Co.*, No. 15-12864-MGM, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017); *Cont'l W. Ins. Co. v. Opechee Constr. Corp.*, No. 15-CV-006-JD, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016).  On its face, the fact of being in solitary confinement "is not a 'private' fact because it is readily ascertainable by any person who comes into contact with such an inmate." *See VanValkenburg*, 2015 WL 421426 at *3.  Nor have Defendants explained why the identity of state employees engaging in conduct in the course of their employment or incarcerated people who are the target of or witness to the use of force is private.  *See* Doc. 53-1.  Defendants' bald assertions that the identities of people in solitary confinement and of staff and incarcerated people involved in or witness to the use of force on people in solitary confinement are confidential are insufficient to justify the withholding.  Because she denied Plaintiffs' motion to compel on these grounds with regard to these two categories of information based on, in part, confidentiality, the Magistrate Judge's order is contrary to law.

### D.  Defendants Did Not Assert Security or Safety Concerns to Justify Withholding[26]

The Magistrate Judge relied in part on her assessment that the redacted information "implicates institutional safety and security" for her ruling that redactions could remain.  Doc. 71 at 11; *see also id*. at 2-3, 14, 15, 16.  With regard to her rulings on security and safety, the

---

[26] Because Defendants did not argue that the production of the redacted information implicated safety and security concerns, there is no record from the proceeding before the Magistrate Judge regarding this issue.

Magistrate Judge's order is clearly erroneous because there is nothing in the record about security and safety concerns with regard to the information that has been redacted.  The order is also contrary to law because the Magistrate Judge failed to give deference to the professional judgment of the prison administration, and failed to protect the rights of the Plaintiffs in the discovery process.

Defendants did not make any argument whatsoever about safety and security implications of producing the redacted information.  *See generally* Docs. 53, 53-1.[27]  The only mention of the words "security" or "safety" in Defendants' brief is their statement that they redacted social security numbers.  Doc. 53-1 at 22.  Yet, the Magistrate Judge stated that they did make this argument and relied on this non-existent argument that the redacted information "implicates institutional safety and security" in making her ruling.  Doc. 71 at 13; *see also id*. at 1.  This was clear error.

Additionally, the Magistrate Judge failed to accord deference to Defendants' professional judgment of whether the redacted information implicates security and safety concerns.  Courts "accord substantial deference to the professional judgment of prison administrators," particularly around issues of institutional security.  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Pesce v. Coppinger*, 355 F. Supp. 3d 35, 49 (D. Mass. 2018).

In the instant case, Defendants made judgments about the security impact of providing responsive documents, and those judgments are reflected in Defendants' responses to Plaintiffs' Requests for Production of Documents.  *See* Ex. A (Excerpts of Defendants' Responses to

---

[27] None of the numerous declarations and other items of supporting evidence submitted by Defendants referenced any security or safety concerns either.  *See* Docs. 53-2 – 53-9, 54 – 54-3.

Plaintiffs First Set of Requests for Production of Documents).[28]   In their original responses,

Defendants asserted a general objection on security grounds:

> The State DOC Defendants have documents in its possession, custody, or control
> that contain security information, information necessary and effective management
> of a correctional facility or other confidential information, which they are
> withholding until a Protective Order is in place. The State DOC Defendants and
> Plaintiffs have attempted to negotiate a protective order but have been unable to
> reach agreement. The District Court has been advised and has provided instructions
> to the parties.

Ex. C at General Objection No. 3.[29]   Thus, at the time Defendants' objections were due,

Defendants' judgment was that documents that implicated security concerns were discoverable,

under a protective order.

In response to three Requests (Nos. 1, 2, and 58), only two of which were at issue in the

motion regarding redactions,[30] Defendants made an objection on security grounds.  Ex. C at

Responses to Request Nos. 1, 2, and 58.  They did not make a security objection to Request Nos.

12, 57, 59, 70, or 74, other than referring to General Objection No. 3.  *Id*. at Responses to Request

Nos. 12, 57, 59, 70 and 74.  When they responded to the Second Set of Requests for Production of

Documents, they did not did not raise a security concern regarding Request No. 102, the only

request from the second set at issue in the motion regarding redactions, other than referring to the

same general objection.  Doc. 53-3 at 29-30.  Further, as discussed above, Defendants did not refer

to any security or safety concerns in their brief or the supporting documents.

---

[28] Defendants submitted their supplemental responses to the requests, which purport to include the original responses
for each of the responses that are being updated.  *See* Doc. 53-3.  However, in the supplemental responses to Request
No. 59, Defendants added a security-based objection and made other changes, revising what purported to be the
original responses.  *Compare* Doc. 53-3 at 41-42 *with* Ex. A at Response to Request No. 59.  Because security was
not raised as an issue in any of the briefing and thus the change, while improper, was not of any importance to the
issues before the Court, Plaintiffs did not submit the original responses to the Magistrate Judge.

[29] A protective order is now in place.  Doc. 30.

[30] Documents responsive to Request No. 58 were and remain at issue.  Doc. 43-1 at 4.  Documents responsive to
Request No. 2 were at issue, but are no longer.  Doc. 43-1 at 3; Doc. 71 at 7 n.4.

Contrary to Defendants' stated positions in their objections that what security concerns existed were adequately addressed through the entry of a protective order and there were no specific security concerns with regard to the production of documents responsive to Request Nos. 12, 57, 59, 70, 74, and 102, and their decision not to raise any security or safety concerns in their brief, the Magistrate Judge ruled that the information in documents responsive to these requests could be withheld due in part to security concerns.   By injecting her own concerns about security into an area where Defendants did not have concerns about security, the Magistrate Judge failed to accord deference to Defendants' professional judgment.  In so doing, the Magistrate Judge acted contrary to law.  *Overton*, 539 U.S. at 132.

Additionally, even while exercising deference to prison administrators' judgment, a court must also protect the rights of incarcerated people.   *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 571-72 (6th Cir. 2013); *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1162 (M.D. Ala. 2016).

Here, the Magistrate Judge also failed to protect the rights of Plaintiffs in the discovery process with regard to the objection that information would implicate security concerns.  Where, as here, an objection is not made at the time of the response to a discovery request, it is waived. *Amica Mut. Ins. Co. v. Whois Priv. Prot. Serv., Inc.*, No. CA 11-70 L, 2012 WL 12838308, at *1 (D.R.I. Feb. 3, 2012); R.I. Local Civ. R. 34(b) ("Any ground not stated in an objection shall be deemed waived."); *see also* Fed. R. Civ. P. 34(b)(2)(B) (requiring that all objections be stated with specificity at the time of the response).   As stated above, Defendants did not make a safety or security objection to any of the requests at issue, except Request No. 58, which sought documents relating to the use of force on the Individual Plaintiffs.  Defendants did reference their general objection about security in the objections to the other document requests at issue, but even if this

41

were sufficient to preserve an objection,[31] the objection merely stated that documents for which this general objection applied were being withheld until there was a protective order in place. Ex. C at General Objection No. 3. Because there is a protective order in place (Doc. 30), this general objection has been fully resolved. Thus, safety and security concerns were not a valid basis for Defendants to make any of the redactions other than those in documents responsive to Request No. 58, nor for the Magistrate Judge to allow them to remain.

Moreover, Defendants, as the party resisting discovery of the redacted material, bear the burden of justifying each basis for withholding information. Doc. 57 at 6; Fed. R. Civ. P. 34(b)(2)(B); *Torres*, 2018 WL 4054904 at *2; *Aronstein*, 2017 WL 2818993 at *2; *Cont'l W. Ins. Co.*, 2016 WL 1642626 at *1. The Magistrate Judge's order states that "Defendants contend that the redactions are appropriately based on substantial privacy and institutional safety and security concerns." Doc. 71 at 1; *see also id.* at 11 ("[Defendants] ask the Court to find that their redactions are appropriately based on the irrelevancy or marginal relevancy of what is private and often intensely confidential information, much of which also implicates institutional safety and security."). But Defendants did not contend safety and security concerns justify the redactions. *See* Docs. 53, 53-1.

By relying on an objection that Defendants did not make or justify although they had the burden to do so, the Magistrate Judge's order disregarded the rights of Plaintiffs in the discovery process and is contrary to law.

In reaching her ruling, the Magistrate Judge relied primarily on *Walker*, a case in which the court was presented with security concerns in a prison and decided that withholding was

---

[31] General objections are inadequate to preserve objections. *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-cv-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021); Fed. R. Civ. P. 34(b)(2)(B); R.I. Local Civ. R. 34(b).

appropriate.  Doc. 71 at 12, 15.  But *Walker* is not persuasive for the issues before this Court.  First, as discussed above at 30-31, there is no indication that there was a protective order in that case. *See Walker*, 2010 WL 4903825 at *1-2.  Second, in Walker, it was not possible to use a protective order to guard against information getting into the prison population: *Walker* was a *pro se* case. *Id*. at *1.  Thus, there was no ability to limit the disclosure to "Attorneys' and Experts Only", as there is in this case; all documents produced would have to be produced to the *pro se* incarcerated person.  *Cf*. Doc. 30 at ¶ 3.e.  Moreover, defendants in *Walker* opposed the motion to compel disclosure "on the grounds that production of the same would compromise and jeopardize prison safety and security."  *Walker*, 2010 WL 4903825 at *1.  Here, Defendants did not.  *See generally* Doc. 53-1.  In *Walker*, the defendants sought to withhold two policies in their entirety.  *Walker*, 2010 WL 4903825 at *1.  Because defendants in *Walker* made the objection and the arguments about prison safety and security, the court was able to assess the specific aspects of the requested information that would implicate safety and security, and allowed for redaction of information from policies that

> would (i) allow an inmate to anticipate when a chemical agent would not be available; (ii) indicate where chemical agents should be stored; (iii) explain strategies for the use of chemical agents; (iv) refer to code language to be used among staff in potential situations that may warrant the initiation and use of agents; or (v) allow an inmate to more easily circumvent security procedures in any way.

*Id*. at *2.  The security concerns were articulated and evaluated.  Here, the Magistrate Judge's order includes no discussion at all of what the purported safety and security implications might be. *See generally* Doc. 71.

By creating a new objection and argument about security and safety, thus rejecting Defendants' judgment and disregarding Plaintiffs' discovery rights, the Magistrate Judge acted contrary to law.

### E.  Defendants Did Not Justify Withholding on Proportionality Grounds

The issue before the Court is whether documents that Defendants have already gathered should be re-produced without redactions.  *See generally* Doc. 43-1.  In their brief, Defendants did not make any factual assertions or argument about proportionality.  *See generally* Doc. 53-1. The only mention of proportionality in Defendants' brief is a block quote of Rule 26.  Doc. 53-1 at 4.  Defendants added emphasis to certain terms, but not to the word "proportional".  *Id*. Nonetheless, the Magistrate Judge asserted that Defendants had made arguments about proportionality.  Doc. 71 at 1, 11.  The Magistrate Judge appears to have based her ruling in part on this non-existent proportionality argument.  Doc. 71 at 2-3, 11, 14.

Defendants bore the burden of demonstrating that the requested information was not proportional to the needs of the case.  Doc. 57 at 6; Fed. R. Civ. P. 34(b)(2)(B); *Torres*, 2018 WL 4054904 at *2; *Aronstein*, 2017 WL 2818993 at *2; *Cont'l W. Ins. Co.*, 2016 WL 1642626 at *1. They did not address proportionality, thus they did not carry their burden.

Further, when analyzing proportionality, "[f]actors that must be considered … include 'the importance of the issues at stake in the action, the amount in controversy,[32] the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'"  *Smith v. Turbocombustor Tech., Inc*., 338 F.R.D. 174, 176 (D. Mass. 2021) (quoting Fed. R. Civ. P. 26(b)(1)).  None of this information was presented to the Magistrate Judge, and the only issues that she addressed were the issues at stake in the action, which she found to be "important", weighing in favor of a finding of proportionality and, in her consideration of

---

[32] Because this is a case for injunctive and declaratory relief, not damages, there was no need for the Court to consider this factor.  *Guadalupe v. City of New York*, No. 15 Civ. 0220 (CM)(JCF), 2016 WL 3570545, at *2 (S.D.N.Y. June 24, 2016) ("[N]ot all of the proportionality factors may be relevant in any particular dispute, and they certainly will not each carry the same relative weight in every context.").

relevance, she implicitly found that the discovery was not important for resolving issues in the case.  Doc. 71 at 2, 13-16.  At no point did she address the "burden or expense of the proposed discovery", the parties' resources, or the parties' relative access to relevant information.  *See Smith*, 388 F.R.D. at 176.  Nor could she have, because this information was not provided to her, because Defendants did not make a proportionality argument.

Also, neither Defendants nor the Magistrate Judge's Order explain the burden of producing, without redaction, documents Defendants have already gathered and reviewed.  During the hearing on the motion, after the Magistrate Judge stated that her concern was proportionality (Ex. B at 5:1-12, 7:16-8:4), Defendants did make some arguments about proportionality.  However, the arguments appeared to be about whether other documents Plaintiffs might request in the future as a result of learning some information currently concealed by the redactions would be proportional.  *See id*. at 58:9-60:20.   This also seemed to be the focus of the Magistrate Judge. *Id*. at 7:16-8:4. The potential disproportionality of some theoretical, undrafted, unserved discovery request is not one of the factors courts consider in assessing proportionality of a request before them.  *See Smith*, 338 F.R.D. at 176 (quoting Fed. R. Civ. P. 26(b)(1)).   Neither Defendants nor the Magistrate Judge's order cite any law suggesting that a concern about future discovery requests is a basis for considering current discovery requests to be disproportionate.

To the extent the Magistrate Judge's ruling is based on lack of proportionality, it is contrary to law as (1) the issue was not before her and (2) her analysis was untethered to the factors a court considers when analyzing proportionality.

## CONCLUSION

Because Plaintiff DRRI brought claims on behalf of people with an SPMI, not just those designated by RIDOC as having an SPMI, and because the Magistrate Judge does not have

45

authority in this case to dismiss claims, the Magistrate Judge's finding that there are not claims on behalf of people with an SPMI was erroneous and should be vacated.

Because the Magistrate Judge's findings regarding relevance, confidentiality and security concerns, and proportionality were each clearly erroneous, contrary to law, or both, the Magistrate Judge's order that redactions were proper should be overruled and Defendants should be ordered to remove the redactions.

Dated: May 9, 2022                                    Respectfully submitted,

                                                      By their attorneys,

                                                      /s/*Maria V. Morris*
                                                      Maria V. Morris (D.C. Bar No. 1697904)
                                                      Admitted Pro Hac Vice
                                                      Tammie Gregg (MN Bar No. 262420)
                                                      Admitted Pro Hac Vice
                                                      ACLU NATIONAL PRISON PROJECT
                                                      915 15th Street, N.W., 7th Floor
                                                      Washington, D.C. 20005-2302
                                                      Telephone: (202) 548-6618
                                                      Facsimile: (202) 393-4931
                                                      Email: mmorris@aclu.org
                                                              tgregg@aclu.org


                                                      /s/*David A. Boyer*
                                                      David A. Boyer
                                                      Admitted Pro Hac Vice
                                                      Brian Adae (RI Bar No. 2536)
                                                      DISABILITY RIGHTS RHODE ISLAND
                                                      33 Broad St., Suite 601
                                                      Providence, RI 02903
                                                      Telephone: (401) 831-3150
                                                      Facsimile: (401) 274-5568
                                                      Email:  dboyer@drri.org
                                                              badae@drri.org


                                                      /s/ *Patrick T. Uiterwyk*
                                                      Patrick T. Uiterwyk (RI Bar No. 7461)
                                                      James S. Rollins (MA Bar No. 569422)
                                                      Admitted Pro Hac Vice
                                                      NELSON, MULLINS, RILEY &

SCARBOROUGH LLP
One Financial Center, Suite 3500
Boston, MA 02111
Telephone: (617) 417-4700
Facsimile: (617) 217-4751 Email:
Patrick.uiterwyk@nelsonmullins.com
James.rollins@nelsonmullins.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2022, the foregoing Plaintiffs' was sent electronically to counsel of record at the following addresses:

Brenda Baum
Assistant Attorney General
Rhode Island Department of Attorney General
150 South Main Street
Providence, RI 02903
Email: bbaum@riag.ri.gov

Rebecca Partington
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
Email: rebecca@desistolaw.com

Marc DeSisto
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
Email: marc@desistolaw.com

By: /s/ *Maria V. Morris*