UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHARLENE LIBERTY; JOHN DAPONTE; JOHN DAVIS; DUANE GOMES; ADAM HANRAHAN; and CHARLES KENNER, on behalf of themselves and all others similarly situated; and DISABILITY RIGHTS RHODE ISLAND, on behalf of its constituents,<br>    Plaintiffs,<br><br>v.<br><br>RHODE ISLAND DEPARTMENT OF CORRECTIONS; PATRICIA COYNE-FAGUE, in her official capacity as the Director of the Rhode Island Department of Corrections; MATTHEW KETTLE, in his official capacity as the Assistant Director of Institutions and Operations at the Rhode Island Department of Corrections; and BARRY WEINER, in his official capacity as the Assistant Director of Rehabilitation Services at the Rhode Island Department of Corrections,<br>    Defendants. | C.A. No. 19-573-JJM-PAS |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Filed on October 25, 2019, this putative class action seeks injunctive and declaratory relief to ameliorate alleged violations of constitutional and federal statutory limitations on the use of restrictive housing by the Rhode Island Department of Corrections ("RIDOC") to sanction and manage prisoners who have been identified as suffering from serious and persistent mental illness ("SPMI"). See ECF No. 1; Liberty v. Rhode Island Dep't of Corr., C.A. No. 19-573JJM, 2022 WL 1224448, at *1 (D.R.I. Apr. 26, 2022).

Now before the Court on referral to me for determination[1] is RIDOC's motion to stay the matter pending "discussions about moving towards a resolution." ECF No. 123. While the parties agree that there should be a stay, particularly in light of the Court's recent appointment of an independent mental-health expert pursuant to Fed. R. Evid. 706 ("Rule 706 Expert") to provide professional opinions to the Court in connection with "ongoing mediation proceedings," they disagree vehemently on the scope of the stay. ECF No. 126; see also ECF Nos. 123; 128; 129; 132. Except for certain outstanding discovery, which it has agreed to complete, RIDOC asks for a temporary (ninety days with the option for the Court to continue the stay on the motion of either party) buffer from all litigation proceedings, including discovery, during this critical phase. ECF Nos. 123; 123-1. By contrast, Plaintiffs state that they are willing to agree to a ninety-day stay only of "discovery" (except for the agreed-upon completion of outstanding discovery) renewable only with their consent, with the representation that they intend to use the stay period to file significant motions,[2] most importantly their motion for class certification. ECF No. 128 at 1-2. Plaintiffs also argue that the stay is premature because of the outstanding discovery.[3]

I. BACKGROUND

The Liberty complaint is narrowly focused on a "limited issue": whether RIDOC has systemically placed inmates known to be suffering from SPMI in restrictive housing in violation

---

[1] A motion to stay is nondispositive and should be determined pursuant to 28 U.S.C. § 636(b)(1)(A). Powershare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010).

[2] Plaintiffs also plan to file a motion regarding the complaint's definition of restrictive housing; pertaining to that proposed motion, they state correctly that, at a recent discovery conference, the Court "has already agreed" that they may file it during the stay. ECF No. 128 at 2.

[3] Plaintiffs' surreply appears to ask the Court to delay entering any stay until this production is complete. ECF No. 132.

of the Eighth and Fourteenth Amendments of the United States Constitution.[4]  Liberty, 2022 WL 1224448, at *1.  As pertinent to the stay motion, this issue is also before the Court in three cases that preceded Liberty:

- Morris v. Travisono, 69-cv-4192-JJM ("Morris");
- Paiva v. RIDOC, 17-mc-14-JJM ("Paiva");[5] and
- Diaz v. Wall, 17-cv-94-JJM ("Diaz").

Because ongoing court-annexed mediation proceedings in these three cases is a critical part of the foundation underpinning the Court's exercise of its discretion to enter a time-limited stay of all proceedings in Liberty, and not just a limited discovery stay, some background regarding these cases is necessary.

### A.   Morris/Paiva

Morris is a 1969 class action in which the Court certified the class of all current and future inmates of the Adult Correction Institutions with a subclass of inmates at the Behavioral Correctional Unit.  Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991); Morris v. Travisono, 310 F. Supp. 857 (D.R.I. 1970).  In 1972, the Morris Court entered an injunction that has come to be known as the Morris Rules, which broadly addressed, *inter alia*, inmate classification and the use and indicia of restrictive housing for all inmates, including those suffering from what has since come to be called SPMI, as well as any mental illness.  See Morris v. Travisono, 499 F. Supp. 149, 151-53 & 151 n.1 (D.R.I. 1980).

The Morris Rules fell into disuse and the injunction was not enforced for many years until January 16, 2017, when Mr. Richard Paiva, proceeding *pro se*, initiated Paiva.  Paiva, 17-

---

[4] Plaintiffs also make claims pursuant to the Americans with Disabilities Act and § 504 of the Rehabilitation Act.

[5] Morris and Paiva are related and are collectively described as "Morris/Paiva."

3

mc-14-JJM, ECF No. 1 at 1.  After protracted activity involving several appeals, on December 21, 2018, the First Circuit found that the injunction remained in full force and effect and vacated the District Court's rejection of Mr. Paiva's attempt to revive the Morris Rules.  In re Paiva, No. 17-1511 (1st Cir. Dec. 21, 2018).  Paiva was remanded for further proceedings.  Id.

On December 18, 2019, the Court granted Mr. Paiva's motion to intervene in Morris and to be designated as successor class representative.  Paiva, 17-mc-14-JJM, Text Order of Dec. 18, 2019.  The Court appointed successor class counsel and, on February 7, 2020, ordered that all proceedings then pending in Morris be stayed pending further order of the Court.  Morris, 69-cv-4192-JJM, ECF No. 4.  On September 18, 2020, Morris/Paiva was referred to me for court-annexed mediation.  After eight mediation sessions, and with substantial input from all parties, the Court appointed a Rule 706 expert to be paid for by RIDOC for the purpose of obtaining expert opinions for guidance in connection with the ongoing mediation proceedings.  Morris, 69-cv-4192-JJM, ECF Nos. 18-20; Paiva, 17-mc-14-JJM, ECF Nos. 83-85.  Since the appointment of this Rule 706 expert, all parties in Morris/Paiva have engaged in court-annexed mediation in good faith.  There has been no need for court intervention arising from a breach by any party of the Order's mandate that each must cooperate with the Court's 706 expert.  See Morris, 69-cv-4192-JJM, ECF No. 19 at 2-3; Paiva, 17-mc-14-JJM, ECF No. 84 at 2-3.

With the Liberty mediation ongoing, and mindful that the Morris/Paiva certified class includes individuals with mental illness (including SPMI), the Court *sua sponte* raised with the Morris/Paiva parties whether the Court should add a second court-appointed independent expert – one with expertise in mental health – to the court-appointed expert team.  On December 8, 2022, in the interest of judicial efficiency, in furtherance of the Court's goal to facilitate RIDOC's good faith commitment to address all Morris/Paiva issues and following consultation

4

with the Morris/Paiva parties and the previously appointed Morris/Paiva Rule 706 expert, the Court appointed the same independent mental health expert who had been vetted and chosen as the Rule 706 Expert in Liberty.

### B. Diaz

On March 7, 2017, Mr. Samuel Diaz, proceeding *pro se*, filed a case with two loosely connected claims. As relevant here,[6] Diaz is based on the allegation that Mr. Diaz, an individual allegedly known by RIDOC to be suffering from mental illness, potentially SPMI, was repeatedly placed in disciplinary restrictive housing in violation of the Eighth Amendment. Diaz, 17-cv-94-JJM, ECF Nos. 1; 58. After this claim survived a motion to dismiss, Diaz v. Wall, C.A. No. 17-94 WES, 2018 WL 1224457 (D.R.I. Mar. 8, 2018), the Court granted a motion to appoint counsel from its *pro bono* panel, with the appointment limited to claims for injunctive and declaratory relief arising from Mr. Diaz's alleged excessive placement in restrictive housing. Diaz, 17-94-JJM, ECF No. 47. On December 21, 2018, this aspect of Diaz was referred to me for court-annexed mediation. While no formal stay has entered, Diaz has not been actively litigated at all while the mediation has been pending. In total, I have conducted almost thirty mediation sessions; all parties in Diaz have engaged in this court-annexed mediation in good faith. The pace of the Diaz mediation slowed in 2021, after the Court and RIDOC had begun to invest substantial resources in the Morris/Paiva mediation. Mr. Diaz has been, and continues to be, a member of the Morris/Paiva class.

### C. Liberty

With the Diaz mediation ongoing, and with Morris/Paiva reactivated as a class action by the First Circuit with a new class representative and newly court-appointed class counsel, Liberty

---

[6] Mr. Diaz's unrelated claim ultimately was severed and proceeded separately as Diaz v. Wall, 21-cv-241JJM.

was filed on October 25, 2019. ECF No. 1. Cast as a putative class action, Liberty seeks only injunctive and declaratory relief. Id. at 56-58. All of the putative class members in Liberty are members of the certified class in Morris/Paiva. The Liberty claims are narrower than, but substantially overlap with the injunctive relief claims in Diaz; further, they fall within the broad scope of what is in issue in Morris/Paiva.

Liberty names five[7] individuals as putative class representatives; each claims to have been known by RIDOC to be suffering from SPMI while in its custody yet to have been placed in restrictive housing in violation of the Eighth and Fourteenth Amendments. Liberty, 2022 WL 1224448, at *2. Also joined as a Liberty plaintiff is a not-for-profit Rhode Island corporation known as Disability Rights Rhode Island ("DRRI"). Id. DRRI's statutory authority to bring this legal action requires it to mediate before resorting to litigation and is therefore pertinent to the stay motion. See ECF No. 1 ¶¶ 30-37; 42 U.S.C. § 10807(a). In that regard, while DRRI is designated by federal law to pursue legal remedies "to ensure that the rights of individuals with mental illness are protected," 42 U.S.C. § 10801(b)(1), its authorization to pursue legal actions requires that, "[p]rior to instituting any legal action in a Federal or State court on behalf of a[n] individual with mental illness, an eligible system . . . shall exhaust in a timely manner all administrative remedies where appropriate." 42 U.S.C. § 10807(a). The legislative history of § 10807(a) makes clear that Congress intended entities such as DRRI to be guided by the principle that "conciliation, negotiation, mediation and other administrative procedures can work effectively in providing protection and advocacy of the mentally ill, especially because litigation in most instances is costly and time consuming." Dunn v. Dunn, 219 F. Supp. 3d 1163, 1173 (M.D. Ala. 2016) (internal quotation marks omitted); see Prot. & Advoc., Inc. v. Murphy, No. 90

---

[7] The case originally had six plaintiffs. Liberty, 2022 WL 1224448, at *2. The lead plaintiff, Charlene Liberty, is deceased and was terminated as a plaintiff in June of 2022. Text Order of June 23, 2022.


C 569, 1992 WL 59100, at *12 (N.D. Ill. Mar. 16, 1992) (while Congress expanded use of litigation as advocacy for those with mental illness, it did so voicing its "antipathy toward the unfettered use of litigation" and making clear that "litigation in state and federal courts is available only as a remedy of last resort"); Gonzalez v. Martinez, 756 F. Supp. 1533, 1537 (S.D. Fla. 1991) ("whenever possible there should be timely and reasonable attempts made to mediate and negotiate appropriate administrative remedies").

On July 6, 2020, the Court referred Liberty to me for court-annexed mediation. However, despite this mediation referral, Plaintiffs did not agree to any respite from aggressive discovery and litigation. By contrast with the mediations in Morris/Paiva and Diaz, and despite DRRI's statutory duty to mediate, this phase of the Liberty mediation petered out after approximately ten sessions. Throughout and following this mediation effort, litigation continued unabated requiring repeated court intervention to address the parties' many disputes.

In June 2022, at Plaintiffs' request, the Court discussed with the parties the possibility of resuming mediation. On July 21, 2022, Plaintiffs indicated that they would agree to the Court's engagement of a Rule 706 mental health expert similar to the engagement in Morris/Paiva, with a time-limited stay of discovery. RIDOC indicated its agreement to a Rule 706 expert that it would pay for, provided that the time-limited stay would stop all proceedings, including discovery, to allow it to focus on the mediation. On November 16, 2022, Plaintiffs advised the Court [in mediation] that they would agree to a ninety-day discovery stay, finite but renewable, provided that RIDOC would complete production of certain documents (to which RIDOC had agreed) and that Plaintiffs could proceed with a discovery motion to define "restrictive housing"

7

as used in their complaint. Plaintiffs did not advise the Court (or RIDOC, see ECF No. 129 at 2) that they planned to use the stay-based hiatus to file their motion for class certification.[8]

On November 29, 2022, RIDOC filed the instant motion for a stay. ECF No. 123. On December 8, 2022, the Court appointed the same mental health Rule 706 Expert in both Morris/Paiva and Liberty. On the same day, Plaintiffs filed their opposition to the stay motion.

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

A district court "has broad discretion to stay proceedings" in its own court. Clinton v. Jones, 520 U.S. 681, 706 (1997). This includes the inherent power to enter a stay for prudential reasons as appropriate, for example, to avoid an enormous duplication of effort and waste of judicial resources or when management of its docket reasonably requires such intervention. Microfinancial, Inc. v. Premier Holidays Intern., Inc., 385 F.3d 72, 77 (1st Cir. 2004); Cardelli v. DAE Aviation Enterprises, Corp., Civil No. 2:11-cv-217-NT, 2012 WL 983584, at *1 (D. Me. Mar. 22, 2012); Walcon Corp. v. D.J. MacKenzie Associates, Inc., 620 F. Supp. 89, 89-90 (D. Me. 1985). A stay cannot be cavalierly dispensed: there must be good cause for its issuance; it must be reasonable in duration; and the Court must ensure that competing equities are weighed and balanced. Marquis v. F.D.I.C., 965 F.2d 1148, 1155 (1st Cir. 1992).

Consistent with these principles, a stay may be entered *sua sponte*. Broidy Cap. Mgmt. LLC v. Muzin, No. 19-cv-150 (DLF), 2022 WL 2157047, at *2 n.1 (D.D.C. June 15, 2022)

---

[8] In general, the parties' mediation communications are confidential pursuant to the Court's Alternative Dispute Resolution Plan. United States District of Rhode Island Alternative Dispute Resolution Plan § VIII at 6 (Mar. 1, 2006) (https://www.rid.uscourts.gov/sites/rid/files/documents/adr/ADRPlan-030106.pdf). However, to avoid manifest injustice, the Court may find that confidentiality no longer protects such of the content of mediation communications as are necessary to the Court's determination of a pending issue. Abdullah v. Evolve Bank & Tr., No. CA 14-131 S, 2015 WL 4603229, at *2 & *2 n.5 (D.R.I. July 29, 2015); see In re Anonymous, 283 F.3d 627, 640 (4th Cir. 2002) (mediator may disclose such confidential information when mandated by manifest injustice as is indispensable to resolution of an important subsequent dispute, and not going to damage mediation program). The paragraph above references mediation communications based on what is strictly necessary to the Court's determination of the stay motion.

(court could issue a stay *sua sponte*; it is not bound by parties' request); Amadi v. McManus, Civil Action No. 16-11901-NMG, 2017 WL 11509440, at *1 (D. Mass. June 15, 2017) (court exercises power to order *sua sponte* stay based on proceedings in related case). Thus, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Backowski v. PeopleConnect, Inc., Case No. C21-0115RAJ, 2022 WL 1092519, at *2 (W.D. Wash. Apr. 12, 2022) (internal quotation marks omitted). Similarly, a time-limited stay that delays the court's consideration of class certification is appropriate when implemented for the purpose of preserving the status quo heading into mediation. Swearingen v. Amazon.com Servs., Inc., 3:19-cv-1156-JR, 3:20-cv-1751-JR, 2021 WL 602711, at *1-3 (D. Or. Feb. 16, 2021) ("A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants"; with parties agreeing to mediate but disagreeing whether to stay class certification until after mediation, court grants motion to stay) (internal quotation marks omitted).

### III.   ANALYSIS

In these four cases – Liberty, Morris/Paiva and Diaz – with the good-faith participation of RIDOC, this Court has invested substantial judicial resources in ongoing mediation. That effort is now supported by two Rule 706 experts in Morris/Paiva, the case with a certified class and class counsel, one of whom is also the independent mental health Rule 706 Expert in Liberty. The Court appointed its Liberty Rule 706 Expert with the understanding that there would be a halt to aggressive and time-consuming litigation to facilitate mediation similar to what has been ongoing since 2020 in Morris/Paiva and consistent with DRRI's statutory obligation. Because the parties in Liberty have been unable to agree on the precise scope of the stay, the Court now

9

exercises its discretion to adopt a stay that is based on the parties' agreement (as far as it went), but that, considering all of the equities, is framed to protect the integrity of the court-annexed mediation in all four cases and to facilitate the work of the court-appointed Rule 706 Expert not just in Liberty but also in Morris/Paiva.

In exercising this discretion, the Court has considered the substantial burden that litigation of the class certification motion in Liberty will impose on the Court and the parties because of the factually and legally difficult issues that it will present. The breadth of the burden is well illustrated by a decision in a case with similar issues, Sabata v. Nebraska Dept. of Correctional Servs., 337 F.R.D. 215 (D. Neb. 2020), in which the briefing of class certification and related motions comprised more than 16,000 pages of argument, exhibits and reports. Id. at 223-24. The Sabata court ultimately denied certification of a putative class of prisoners with mental and other health issues where the evidence established prison policies that provided for access to healthcare despite placement in restrictive housing, the use of restrictive housing as a last resort, and a multidisciplinary team making final placement decisions; plaintiffs' expert conceded during testimony that to further fix the alleged negative impact of restrictive housing on mental health would require individualized solutions. Id. at 223-28, 246-72; see Parent/Pro. Advoc. League v. City of Springfield, Mass., 934 F.3d 13, 31 (1st Cir. 2019) (denying class certification for lack of commonality because matter in issue "is likely to yield individualized rather than common answers").[9] Further, while it is true that, over the more than three years that Liberty has been pending, the Court had repeatedly (as Plaintiffs acknowledge) inquired of Plaintiffs about class certification, the Court did not – and would never – suggest that the right

---

[9] Exacerbating the complexity of the legal issues to be faced by this Court in connection with class certification is the First Circuit's questioning in Parent/Pro. Advoc. League whether an entity like DRRI is "authoriz[ed] . . . to bring suits like this one on behalf of hundreds of individuals." 934 F.3d at 35 n.2.

10

timing for class certification would be during a time-limited stay entered to facilitate court-annexed mediation, particularly where the Court has appointed a Rule 706 Expert (paid for by RIDOC) to support the mediation.

Based on the foregoing, the Court finds that litigation of class certification during this first phase of Rule 706 Expert's appointment would significantly and potentially catastrophically interfere with the ongoing mediations and the work of the Rule 706 Expert in both Morris/Paiva and Liberty. The Court further finds that a delay of a few months will inflict no prejudice on the putative Liberty class, especially where all of the Liberty putative class members are already members of a certified class in Morris/Paiva, in which the same Rule 706 Expert is also appointed. Relatedly, the Court finds that the limited stay as advocated for by Plaintiffs' counsel would likely be more harmful to the true interests of the putative Liberty class because it would further delay solutions that RIDOC was already working toward before Liberty was filed. Mindful of RIDOC's willingness to mediate, as demonstrated in Diaz and Morris/Paiva, the Court also finds that the stay is consistent with DRRI's statutory obligation to mediate and to litigate as a last resort.

As to timing, as cabined by the Court's further instructions to the Rule 706 Expert, entered under seal in both Liberty (ECF No. 127) and Morris/Paiva (ECF Nos. 25 & 98 respectively), the first phase of the Rule 706 Expert's work will be completed by April 7, 2023. Accordingly, instead of ninety days as the parties agreed, this stay shall remain in full force and effect until April 21, 2023, to allow Rule 706 Expert's work in both Morris/Paiva and Liberty to proceed unimpeded. On April 21, 2023, the Court will determine whether (and, if necessary, with what limitations) the stay should continue. The parties shall provide the Court with their positions regarding any such continuation in filings that are due no later than April 11, 2023.

Regarding RIDOC's obligation to continue litigation-based document production, the Court orders that RIDOC shall comply with its agreement to complete production of certain documents during the stay, provided that RIDOC's duty to cooperate with the Rule 706 Expert and to focus on the mediation in both <u>Liberty</u> and <u>Morris/Paiva</u> shall have priority during the period of the stay. Finally, prior to the appointment of the <u>Liberty</u> Rule 706 Expert, when the Court was focused on the <u>Liberty</u> mediation only, and with the parties seemingly near agreement regarding the scope of the stay, the Court indicated that a motion for clarification of the term "restrictive housing," as it is used in the <u>Liberty</u> complaint, could be filed during the stay. Because the Court now is considering not just <u>Liberty</u>, but also <u>Morris/Paiva</u>, as well as because the now-entered Order of appointment of the Court's Rule 706 Expert provides that her access to information is not limited by any such definition, the Court finds that it is not necessary for this term to be defined during the period of the stay. Therefore, the Court further orders that this stay bars Plaintiffs from filing their "restrictive housing" discovery motion.

## IV.     CONCLUSION

Based on the foregoing, RIDOC's motion for stay is granted. Acting pursuant to its inherent power, the Court orders that this matter is hereby stayed for all purposes until April 21, 2023, with the exception of the ongoing completion of certain discovery as outlined above. Relatedly, the Court hereby cancels its previously scheduled quarterly discovery status conferences and vacates its Orders requiring the parties to file status conference reports, pending further Order of the Court.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 30, 2022